1           UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

   UNITED STATES OF AMERICA,        )  CR-15-00226 EJD
6                                    )
                   PLAINTIFF,        )  SAN JOSE, CALIFORNIA
7                                    )
              VS.                    )  AUGUST 4, 2015
8                                    )
   DOUGLAS YORK,                     )  PAGES 1-80
9                                    )
                   DEFENDANT.        )
10  _____    )

11

12            TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE EDWARD J. DAVILA
13            UNITED STATES DISTRICT JUDGE

14

15  A P P E A R A N C E S:

16  FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                          BY:  JEFFREY B. SCHENK
17                            BRIANNA L. PENNA
                          150 ALMADEN BOULEVARD, SUITE 900
18                        SAN JOSE, CALIFORNIA  95113

19  FOR THE DEFENDANT:    FEDERAL PUBLIC DEFENDER'S OFFICE
                          BY:  GRAHAM E. ARCHER
20                        55 SOUTH MARKET STREET, SUITE 820
                          SAN JOSE, CALIFORNIA  95113

21

22

23  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

```
 1      SAN JOSE, CALIFORNIA                    AUGUST 4, 2015

 2                      P R O C E E D I N G S

 3          (COURT CONVENED AT 9:24 A.M.)

 4              THE CLERK:  CALLING CASE NUMBER 15-226, UNITED STATES

 5      VERSUS DOUGLAS YORK.

 6              MR. ARCHER:  YOUR HONOR, WOULD THE COURT PREFER US TO

 7      ARGUE FROM COUNSEL TABLE OR AT THE PODIUM?

 8              THE COURT:  WELL, I SEE YOU HAVE THINGS SPREAD OUT.

 9      I DON'T WANT TO DISRUPT YOUR ORGANIZATION.  IF YOU NEED TO STAY

10      AT THE TABLE, THAT'S FINE.

11          TYPICALLY WE HAVE PEOPLE COME TO THE LECTERN.  THAT'S

12      PROBABLY EASIER.  BUT I DON'T WANT TO DISRUPT YOUR -- IT LOOKS

13      LIKE --

14              MR. ARCHER:  I'M HAPPY TO COME TO THE LECTERN.

15              THE COURT:  OKAY.  THANK YOU.

16          (PAUSE IN PROCEEDINGS.)

17              MS. PENNA:  GOOD MORNING, YOUR HONOR.  BRIANNA PENNA

18      FOR THE UNITED STATES.

19              THE COURT:  THANK YOU.

20              MR. SCHENK:  AND JEFF SCHENK FOR THE UNITED STATES.

21      GOOD MORNING.

22              THE COURT:  THANK YOU.  GOOD MORNING.

23              MR. ARCHER:  GOOD MORNING, YOUR HONOR.  GRAHAM ARCHER

24      FOR MR. YORK, WHO'S PRESENT BEFORE THE COURT OUT OF CUSTODY.

25              THE COURT:  THANK YOU.
```

1          GOOD MORNING, SIR.

2          THIS MATTER, HAVING BEEN REASSIGNED TO THIS COURT FOR

3     TRIAL, APPEARS THIS MORNING FOR I BELIEVE OUR PRETRIAL

4     CONFERENCE, AND I JUST WANTED TO GO OVER SOME THINGS WITH YOU.

5          FIRST OF ALL, LET'S UNDERSTAND THAT I BELIEVE WE'RE GOING

6     TO START TRIAL -- FIRST OF ALL, LET ME ASK THE TIMING OF THE

7     CASE.

8          I UNDERSTAND THERE MIGHT BE A TIMING ISSUE HERE.

9          MS. PENNA:  I BELIEVE WE THOUGHT THREE DAYS WOULD BE

10    AN ACCURATE --

11          THE COURT:  OKAY.  THREE DAYS TOTAL FOR THE CASE?

12          MS. PENNA:  FOR EVERYTHING.

13          MR. ARCHER:  I THINK SO.  THAT'S WHAT WE DISCUSSED

14    LAST WEEK.

15          THE COURT:  OKAY.  WHAT ABOUT OUR STATUTE FOR TIME?

16    CAN YOU TELL ME WHEN THE CASE MUST BEGIN SO WE -- TO AVOID ANY

17    TIMING ISSUES ON THAT?

18          MR. ARCHER:  THE DEFENSE'S CALCULATION AT THE LAST

19    COURT DATE WAS THAT PRIOR TO THAT DATE, WE HAD EXHAUSTED 35

20    DAYS OFF OF THE SPEEDY TRIAL CALENDAR.  MY CALCULATION WAS

21    SEPTEMBER 3RD WAS THE LAST DAY TO BEGIN TRIAL.

22          THE COURT:  OKAY.  THANK YOU FOR THAT.

23          WELL, LET ME TELL YOU INITIALLY WHAT I HAVE IDENTIFIED FOR

24    TRIAL FOR YOU.

25          WE COULD BEGIN TRIAL ON THE 25TH OF AUGUST, AND THAT WOULD

```
1    BE JURY SELECTION IN THE MORNING AT 9:00 O'CLOCK.  WE -- I JUST

2    WANT TO OFFER THIS SCHEDULE.  IT SEEMS LIKE THIS SCHEDULE WOULD

3    BEST FIT THE TIMING REQUIREMENTS.

4         WE WOULD HAVE ALL DAY THE 25TH, THAT IS, MORNING AND

5    AFTERNOON, JURY SELECTION IN THE MORNING, AND ASSUMING WE

6    SECURE A JURY IN THE MORNING, THEN WE'D BEGIN WITH OPENING

7    STATEMENTS AND EVIDENCE IN THE AFTERNOON.

8         UNFORTUNATELY, I DO HAVE A -- THE 26TH WILL BE OCCUPIED

9    WITH A CIVIL CASE.

10        THE 27TH, IN THE MORNING AT LEAST, I HAVE A CIVIL

11   CALENDAR.  I'M LOOKING AT THAT NOW TO SEE IF WE CAN SOMEHOW

12   TAKE CARE OF THOSE CIVIL MATTERS SUCH THAT WE DON'T NEED THE

13   PARTIES TO COME IN.

14        I ALSO NOTE THAT AT 1:30, THERE'S A SENTENCING IN A

15   CRIMINAL CASE AND I JUST -- I'LL LOOK AT THE TIMING OF THAT.  I

16   DON'T KNOW HOW MUCH TIME THAT'S GOING TO TAKE, AND I APOLOGIZE

17   I DON'T HAVE THAT INFORMATION FOR US TODAY.

18        I WORRY ABOUT BRINGING THE JURY IN FOR AN OR TWO'S WORTH

19   OF EVIDENCE IN THE AFTERNOON, WHETHER THAT'S REALLY

20   APPROPRIATE.

21        WE WOULD HAVE THE 28TH, ALL DAY THE 28TH, WHICH IS THE

22   FRIDAY.

23        SO ON THE 27TH, I WOULD SAY PROBABLY NOT.  WE WOULDN'T BE

24   MEETING.  WE CERTAINLY WOULD NOT BE MEETING ON THE 26TH.

25        WE'D HAVE THE 25TH ALL DAY; WE'D HAVE THE 28TH ALL DAY;
```

1    AND THEN WE'D HAVE THE MORNING OF THE 31ST; AND THEN ALL DAY

2    TUESDAY, THE 1ST; WEDNESDAY, THE 2ND; AND I THINK THAT FITS

3    WITH THE TIMELINE THAT YOU HAVE INDICATED.

4           MR. ARCHER:  IT DOES FROM THE DEFENSE'S PERSPECTIVE,

5    YOUR HONOR.

6           THE COURT:  SO THAT'S THE SCHEDULE I'D LIKE TO OFFER

7    YOU FOR THE TRIAL, AND I THINK THAT THEN WOULD COMPORT WITH THE

8    SPEEDY TRIAL STATUTE AND ALL THE REQUIREMENTS.

9           SO LET ME JUST GO THROUGH MY CHECKLIST, MY PRETRIAL

10   CHECKLIST BEFORE WE MOVE INTO IN LIMINE MOTIONS, BECAUSE I KNOW

11   THERE'S SOME IN LIMINE MOTIONS THAT YOU'D LIKE TO DISCUSS.

12          WE'LL TRY TO DO WHAT'S COLLOQUIALLY CALLED A SIX-PACK.

13   WE'LL TRY TO PUT SOME SEATS IN FRONT HERE FOR JURY SELECTION SO

14   WE CAN CAPTURE AS MANY FOLKS AS WE CAN.

15          DURING -- I'M JUST GOING THROUGH MY LIST.  I WILL CONDUCT

16   A GENERAL VOIR DIRE, AND I KNOW ONE OF YOUR IN LIMINE MOTIONS

17   ASKS FOR ATTORNEY VOIR DIRE, AND I ALWAYS HAVE ALLOWED ATTORNEY

18   VOIR DIRE.  I THINK THAT'S AN IMPORTANT COMPONENT OF THE CASE,

19   SO I WILL PERMIT SOME VOIR DIRE.

20          I HAVE RECEIVED THE JOINT VOIR DIRE QUESTIONS, PROPOSED

21   QUESTIONS FROM COUNSEL.  AND I, IN MY VOIR DIRE, I MAY

22   INCORPORATE MANY OF THOSE QUESTIONS.  MAYBE SOME I WON'T.  YOU

23   CAN FOLLOW UP WITH THE QUESTIONS THAT I'VE ASKED AND MAYBE ASK

24   SOME OF THE QUESTIONS THAT I DON'T FROM YOUR QUESTIONNAIRE IF

25   YOU'D LIKE.

1        ALSO, IF THERE ARE ADDITIONAL QUESTIONS THAT YOU WOULD

2   LIKE ME TO ASK, THAT YOU WOULD PREFER THE COURT ASK AS OPPOSED

3   TO COUNSEL ASKING, PLEASE LET ME KNOW.  SUBMIT THOSE QUESTIONS

4   TO ME ALSO AND I'LL LOOK AT THOSE AND SEE IF I FEEL THEY'RE

5   APPROPRIATE TO ASK.  SOMETIMES COUNSEL HAVE GREATER COMFORT

6   HAVING THE COURT ASK A QUESTION THAT MIGHT BE NUANCED OR THAT

7   TALKS ABOUT CERTAIN THINGS.  I'M HAPPY TO ENTERTAIN THOSE

8   QUESTIONS AS WELL.

9        MY EXPERIENCE, COUNSEL, IS THAT TYPICALLY 15 TO 20 MINUTES

10  OF VOIR DIRE IS WHAT'S HAPPENED.  I DON'T LIKE TO PUT TIME

11  LIMITS ON VOIR DIRE.

12       ON THE OTHER HAND, I EQUALLY DON'T LIKE TO INTERRUPT

13  COUNSEL IN THE MIDDLE OF THEIR VOIR DIRE TO TELL THEM THAT

14  THAT'S ENOUGH.

15       BUT I THINK COUNSEL HAVE BEEN VERY GOOD IN MY EXPERIENCE

16  HERE ABOUT MEASURING THE NEEDS OF THINGS.

17       I SHOULD TELL YOU THIS:  THERE WAS A CASE RECENTLY WHERE I

18  SAID THE SAME THING AND THE LAWYER STARTED WITH JUROR NUMBER 1

19  AND SAW FIT TO SPEAK TO EVERY JUROR AND ASKED THEIR NAMES AND

20  SAID HELLO, AND THAT WAS THE EXTENT OF THE QUESTIONS.  SO I

21  DON'T KNOW WHAT THAT ATTORNEY DERIVED FROM THAT QUESTIONING,

22  BUT IT TOOK A LOT OF TIME.

23       SO I WILL -- YOU WILL HAVE AN OPPORTUNITY TO ADDRESS AND

24  ASK FOLLOW-UP QUESTIONS FOLLOWING THE COURT'S VOIR DIRE.

25       ANY CAUSE CHALLENGES WILL BE CONDUCTED AT SIDE-BAR.  I'LL

1    ASK COUNSEL, DO YOU PASS FOR CAUSE?  IF THERE'S A CAUSE

2    CHALLENGE, THEN THE REQUEST WOULD BE TO SPEAK AT SIDE-BAR AND

3    THEN WE'LL COME TO SIDE-BAR OVER HERE ON THE SIDE.  THERE'S A

4    LITTLE MICROPHONE THERE THAT IS USUALLY OPERATIONAL AND SO

5    WE'LL SPEAK INTO THE MICROPHONE AND WE'LL HAVE THAT DISCUSSION

6    AT SIDE-BAR.

7         DO COUNSEL HAVE A QUESTIONNAIRE THAT YOU'RE GOING TO

8    SUBMIT IN THIS CASE?

9              MR. SCHENK:  NO, YOUR HONOR.

10             MR. ARCHER:  NO, YOUR HONOR.

11             THE COURT:  OKAY.  I THINK WE HAVE -- DO WE HAVE A

12    SAMPLE COPY OF THE QUESTIONS?

13        THE JURORS WILL FILL OUT A QUESTIONNAIRE FOR US.  IT'S A

14    ONE-PAGE, VERY BRIEF BACKGROUND INFORMATIONAL QUESTIONNAIRE.

15    WE'LL GIVE EACH OF YOU A COPY OF IT NOW.

16        THE JURORS WILL COME IN IN THE MORNING DOWNSTAIRS IN THE

17    JURY ASSEMBLY ROOM.  THEY'LL BE PROVIDED THIS ONE-PAGE FORM.

18    YOU WILL HAVE BENEFIT OF THAT FORM.  WE'LL GIVE YOU THOSE FORMS

19    WHEN WE GET THEM.  THEY USUALLY COME UP WITH THE JURY, SO YOU

20    WON'T HAVE A LOT OF TIME TO DIGEST THE INFORMATION, BUT WE WILL

21    PROVIDE THAT TO YOU.  IT HAS NAMES AND EMPLOYMENT, INDIVIDUALS

22    WHO LIVE IN THEIR HOUSEHOLD, THOSE KINDS OF VERY BASIC

23    QUESTIONS, BUT I THINK IT'S HELPFUL FOR YOU TO HAVE.  WE'LL

24    GIVE YOU THAT.

25        I WILL ALSO PROVIDE YOU THE JUDGE'S LIST, IF YOU WILL, I

1    THINK THEY CALL IT, THE LIST OF PROSPECTIVE JURORS.  IT'S NOT

2    ALPHABETIZED.  IT'S LISTED AS THE JURORS ARE GOING TO BE

3    CALLED, SO YOU'LL HAVE BENEFIT OF THAT.

4         ONE THING I WOULD LIKE COUNSEL TO DO, I TYPICALLY ASK

5    COUNSEL TO PREPARE A JOINT NEUTRAL STATEMENT ABOUT THE CASE,

6    AND I WONDER IF I COULD RECEIVE THAT BY -- WE'RE GIVING YOU

7    THOSE BLANK QUESTIONNAIRE FORMS, SO YOU'LL HAVE THOSE FROM OUR

8    PROSPECTIVE JURORS.

9         A JOINT NEUTRAL STATEMENT, IF I COULD RECEIVE THAT NO

10   LATER THAN AUGUST 14TH, AND THAT IS A STATEMENT -- THE PURPOSE

11   OF THE STATEMENT IS TO ALLOW ME TO INTRODUCE THIS CASE TO THE

12   PROSPECTIVE JURORS.

13        THE PANEL WILL COME IN EN MASS, MS. GARCIA WILL SWEAR

14   THEM, AND THEY'LL BE SEATED.  I'LL THEN WELCOME THEM AND I WILL

15   TELL THEM, ALL OF THEM, BEFORE WE PUT ANY IN THE BOX, I'LL READ

16   THE STATEMENT AND TELL THEM WHAT THIS CASE IS ALL ABOUT JUST TO

17   GIVE THEM SOME INTRODUCTION.

18        SO I ALLOW COUNSEL AN OPPORTUNITY, IF THEY CAN, TO PREPARE

19   A JOINT NEUTRAL STATEMENT ABOUT THE CASE.  I'LL LOOK AT IT AND

20   EDIT IT AS I FEEL APPROPRIATE.

21        IF YOU CAN'T ARRIVE AT A JOINT STATEMENT, THEN I INTEND TO

22   READ THE INDICTMENT, THE SUPERSEDING INDICTMENT TO THE

23   PROSPECTIVE JURORS.

24        I DON'T ALLOW QUESTIONS FROM JURORS DURING THE TRIAL.

25        AND LET ME ASK, ARE THERE ANY SPECIAL WITNESS NEEDS OR

```
 1    ISSUES, INTERPRETERS, ANY WITNESS SPECIAL NEEDS THAT WE --

 2    ACCOMMODATIONS THAT WE MIGHT NEED FOR ANY OF THE WITNESSES?

 3            MS. PENNA:  NOT THAT I KNOW OF AT THIS TIME.

 4            THE COURT:  MR. ARCHER, TO YOUR KNOWLEDGE?

 5            MR. ARCHER:  NO, YOUR HONOR.

 6            THE COURT:  OKAY.  COURTROOM TECHNOLOGY IS ANOTHER

 7    THING I WANT TO TALK ABOUT.

 8        OUR TECHNOLOGY IS THE SCREEN THAT COMES DOWN TO MY LEFT,

 9    AND IF YOU HAVE A WISH TO USE ANY PROJECTORS OR THINGS, YOU

10    SHOULD TALK TO MS. GARCIA AND SHE WILL COORDINATE WITH OUR I.T.

11    PERSON ABOUT THOSE THINGS.

12        WHAT I LIKE TO ASK COUNSEL TO DO, AND COUNSEL HAVE BEEN

13    VERY GOOD ABOUT THIS, IS TO INFORM EACH OTHER ABOUT YOUR NEXT

14    DAY'S WITNESSES, TYPICALLY AT THE END OF THE DAY, THE PRECEDING

15    DAY.

16        COUNSEL SHOULD ALSO PROVIDE EACH OTHER AND THE CLERK WITH

17    A LIST OF EXHIBITS THAT YOU INTEND TO USE.  EXCHANGE THAT.

18        AND I THINK I'VE GIVEN YOU, PROVIDED YOU AN EXHIBIT LIST,

19    OR MS. GARCIA WILL IF SHE HADN'T ALREADY, A TEMPLATE THAT I

20    LIKE TO USE FOR EXHIBITS.

21        MS. GARCIA, IF YOU CAN PROVIDE THAT TEMPLATE TO COUNSEL.

22        I NOTE THAT -- I'M AHEAD OF MYSELF HERE, BUT I NOTE IN

23    DEFENSE IN LIMINE NUMBER 6, THERE'S A REQUEST TO EXCLUDE

24    WITNESSES, I BELIEVE.  IS THAT RIGHT, MR. ARCHER?

25            MR. ARCHER:  YES, YOUR HONOR.
```

1          THE COURT:  WITNESSES WILL BE EXCLUDED.  I WILL GRANT

2     THAT REQUEST AND EXCLUDE WITNESSES IN THIS CASE.  WITNESSES

3     WILL BE EXCLUDED AND THEY WILL BE ORDERED NOT TO DISCUSS THEIR

4     TESTIMONY WITH EACH OTHER OR ANYONE.

5          THEY MAY DISCUSS THEIR TESTIMONY WITH COUNSEL IF THEY

6     WISH, BUT THEY'RE NOT TO DISCUSS THEIR TESTIMONY WITH EACH

7     OTHER UNTIL THE CASE IS CONCLUDED.  AND I TRUST THAT ALL

8     COUNSEL CAN INFORM THEIR WITNESSES ABOUT THAT.

9          I'M HAPPY TO ADVISE THEM ALSO ABOUT THE ORDER OF THE

10    COURT, MR. ARCHER, IF YOU FEEL IT NECESSARY.

11          MR. ARCHER:  AT THE CONCLUSION OF EACH WITNESS'S

12    TESTIMONY, THAT WOULD BE THE DEFENSE PREFERENCE -- SORRY.  IN

13    BREAKS IN TESTIMONY IS WHAT I MEAN.

14          THE COURT:  OKAY.  ANYTHING FROM THE GOVERNMENT?

15          MR. SCHENK:  IS THE CASE AGENT AN EXCEPTION TO THAT

16    RULE?

17          THE COURT:  THE CASE AGENT IS AN EXCEPTION.

18          MR. SCHENK:  THANK YOU.

19          THE COURT:  AND SHE OR HE MAY REMAIN IN THE

20    COURTROOM.

21          LET'S SEE.  AND PROPOSED JURY INSTRUCTIONS, I SUPPOSE

22    WE'LL -- BECAUSE OF THE SHORT PERIOD OF TIME, RELATIVELY SHORT

23    PERIOD OF TIME OF EVIDENCE, WE'LL HAVE TO SCHEDULE IN THIS

24    SCHEDULE SOME TIME TO HAVE AN INSTRUCTION CONFERENCE.  WE CAN

25    LOOK AND SEE WHEN THAT IS.

```
 1          IT MAY BE THAT YOU HAVE A PRETTY GOOD IDEA OF WHAT THE
 2     INSTRUCTIONS, OR PROPOSED INSTRUCTIONS MIGHT BE.  IF YOU DO,
 3     YOU CAN SUBMIT THOSE TO THE COURT.  I'D LIKE TO SEE THEM,
 4     OBVIOUSLY, SOONER RATHER THAN LATER, BUT, AGAIN, BECAUSE OF THE
 5     SHORT TIME PERIOD --
 6          MS. PENNA:  I BELIEVE WE'VE ALREADY FILED JOINT
 7     INSTRUCTIONS.
 8          THE COURT:  OKAY.
 9          MS. PENNA:  BUT WE DO NEED TO FILE SOME UPDATED
10     FILINGS BECAUSE THE DATE THAT WE DID THE INITIAL FILINGS WAS
11     THE SAME DAY THAT WE SUPERSEDED THE INDICTMENT.
12          THE COURT:  RIGHT.
13          MS. PENNA:  SO THERE WILL BE SOME CHANGES.
14          THE COURT:  THAT'S WHAT I ANTICIPATED, THAT BECAUSE
15     OF THE SUPERSEDING INDICTMENT, THERE MIGHT BE SOME CHANGES.
16          SO -- AND WE'LL LOOK AT THAT A LITTLE MORE AS WE GET
17     CLOSER TO THE START DATE.
18          THE OTHER ITEM I HAVE ON MY CHECKLIST THAT I ALWAYS ASK IN
19     EVERY CASE, CRIMINAL AND CIVIL, IS SETTLEMENT.  I'M NOT GOING
20     TO GET INTO RULE 11 DISCUSSIONS, BUT I'M JUST GOING TO ASK THE
21     QUESTION WHETHER OR NOT THERE'S ANY POSSIBILITY OF SETTLEMENT
22     IN THE CASE AND WHETHER OR NOT, IF YOU WERE PROVIDED SOME
23     ADDITIONAL TIME, THAT MIGHT BE OF SOME BENEFIT.
24          MR. ARCHER:  I DON'T THINK ADDITIONAL TIME WOULD AID
25     THE PARTIES.
```

```
 1              THE COURT:  OKAY.

 2              MR. SCHENK:  WE AGREE.

 3              THE COURT:  OKAY.  THE JURY SELECTION PROCESS -- I

 4    KNOW MR. ARCHER HAS BEEN IN TRIAL IN FRONT OF THIS COURT

 5    PREVIOUSLY.  MS. PENNA, I DON'T BELIEVE YOU HAVE.

 6         WE'LL GIVE YOU A LIST FOR WHEN IT COMES TIME TO EXERCISE

 7    YOUR CHALLENGES AND YOU'LL JUST EXCHANGE THE LIST BACK AND

 8    FORTH.

 9         AND, MS. GARCIA, IF YOU HAVE A SAMPLE OF THAT, WE SHOULD

10    GIVE THAT ALSO TO COUNSEL.

11         WHEN YOU BEGIN YOUR CHALLENGES, THERE ARE -- I THINK OUR

12    NUMBER 1 WILL BE THE FAR CORNER, AND YOUR FIRST CHALLENGES WILL

13    BE FROM -- ASSUMING THE FIRST 12 PEOPLE ARE SEATED IN THE BOX,

14    SO ANY CHALLENGES YOU HAVE WILL COME FROM THAT FIRST 12.  IN

15    OTHER WORDS, YOU CAN'T CHALLENGE NUMBER 23 OR SOMEBODY WHO'S

16    SITTING DOWN THERE.  SO THE FIRST 12 IS THE UNIVERSE OF YOUR

17    SELECTION.

18         NOW, WHAT HAPPENS IS -- IN MY EXPERIENCE WHAT HAPPENS IS

19    THERE MIGHT BE CHALLENGES AMONGST THOSE 12, AND IN THE OLDEN

20    DAYS, WHENEVER THOSE WERE, SOMETIMES JUDGES WOULD PLAY MUSICAL

21    CHAIRS AND HAVE ALL THE JURORS MOVE OVER TO FILL IN.

22         BECAUSE WE'RE IN SILICON VALLEY, I THINK WE CAN RELY ON

23    COUNSEL TO HAVE A VIRTUAL IDEA OF WHO'S MOVING WHERE TO FILL IN

24    THOSE SEATS.  THAT'S THE WAY I WOULD EXPECT IT TO BE DONE.

25         BUT LET ME START WITH MR. ARCHER.  MAY I ASK IF HE FEELS
```

```
1      THAT HE'S UP TO THAT TASK?

2                  MR. ARCHER:  I THINK I AM, YOUR HONOR.

3                  THE COURT:  ALL RIGHT.

4                  MS. PENNA:  I THINK WE ARE, TOO.

5                  THE COURT:  OKAY, GREAT.  GREAT.  SO WE'LL LOOK AT

6      THAT.

7           AT SOME POINT IT MAY BE THAT WE WILL -- WE'LL RUN OUT OF

8      JURORS AND WE'LL NEED TO RECHARGE THE BOX.  WHEN THAT HAPPENS,

9      THEN WE'LL HAVE A DISCUSSION ABOUT HOW THAT SHOULD BE DONE,

10     BECAUSE IF THERE ARE VIRTUAL HOLES, WHERE SHOULD THE NEW JURORS

11     BE SEATED, IF THAT MAKES SENSE TO YOU.  SHOULD THEY BE FILLED

12     IN OR SHOULD THEY COME AT THE END?

13          YOU SHOULD GIVE SOME THOUGHT TO THAT.  WE DON'T HAVE TO

14     HAVE THAT DISCUSSION TODAY, BUT THAT DOES COME UP, AND IF WE

15     GET AGREEMENT ON IT, THAT'S FINE.

16          LET'S SEE.  I THINK THAT EXHAUSTS MY LIST.

17          OH, HOW MANY -- HOW MANY -- LET'S SEE.  OUR JURY --

18     ALTERNATE JURORS.  HOW MANY ALTERNATE JURORS DO YOU THINK WE

19     SHOULD HAVE FOR THIS TRIAL?  IT'S A BRIEF TRIAL.

20                 MR. ARCHER:  EITHER ONE OR TWO I THINK WOULD SUFFICE,

21     YOUR HONOR.

22                 MR. SCHENK:  WE AGREE.  I SUPPOSE IT'S ALWAYS SAFER

23     TO PICK TWO, EVEN THOUGH IT'S --

24                 THE COURT:  I GUESS IT IS PROBABLY.  EVEN THOUGH IT'S

25     A SHORT TRIAL, A BRIEF, RELATIVELY BRIEF TRIAL, ANYTHING CAN
```

1    HAPPEN.

2         AND WE'RE GOING TO START THIS CASE AROUND THE TIME THAT

3    SCHOOL BEGINS AND THERE MAY BE PARENTS WHO HAVE SCHOOLING

4    ISSUES FOR THEIR CHILDREN.  YOU JUST NEVER KNOW.

5         SO LET'S TAKE TWO ALTERNATES THEN.  AND BECAUSE IT'S SUCH

6    A BRIEF TRIAL, I THINK TWO WILL BE FINE.  SO WE'LL HAVE TWO

7    ALTERNATES.

8         ANY OTHER QUESTIONS?  ANYTHING COUNSEL WANTS TO BRING UP

9    BEFORE WE MOVE INTO THE IN LIMINE MOTIONS?

10             MR. ARCHER:  NO, YOUR HONOR.

11             MS. PENNA:  NOTHING, YOUR HONOR.

12             THE COURT:  OKAY.  SO TIMING.  WE TYPICALLY WILL

13    START AT 9:00 O'CLOCK -- EXCUSE ME -- AND GO ALL DAY AS I

14    MENTIONED, USUALLY UNTIL 5:00.  I DO LIKE TO LET THE JURORS GO

15    BEFORE 5:00 IF I CAN JUST TO GIVE THEM A LITTLE HEAD START ON

16    PARKING LOT ISSUES AND TRANSPORTATION ISSUES.

17         HOWEVER, I'M ALSO AMENABLE TO -- MY COLLEAGUE AND OUR DEAR

18    FRIEND JUDGE ALSUP SOMETIMES BEGINS HIS TRIALS AT 7:30 A.M.,

19    AND I'M HAPPY TO HEAR IF YOU WOULD LIKE TO ENGAGE IN THAT.

20             MR. ARCHER:  MR. SCHENK -- I THINK EVERYBODY IS

21    TRAVELLING MORE THAN A COUPLE MILES TO COURT IN THE MORNING.  I

22    CAN'T IMAGINE THAT'S A PREFERENCE OF THE PARTIES.

23             THE COURT:  ALL RIGHT.  WE COULD START AT 8:30 IF WE

24    NEED TO AS WELL, IF THAT'S OF BENEFIT.

25         AND LET ME INDICATE, IF WE NEED TO MEET FOR ANY REASON

1    ABOUT AN EVIDENTIARY ISSUE OR SOMETHING ELSE, WE CAN ALWAYS

2    MEET AT 8:30 BEFORE WE START.  SO I'LL MAKE THAT AVAILABLE TO

3    YOU SHOULD THAT BECOME NECESSARY.

4         SO WE'LL START -- OUR TYPICAL HOURS ARE 9:00 TO, AS I

5    SAID, 5:00.  WE USUALLY HAVE THE TYPICAL NOON TO 1:30 LUNCH,

6    ALTHOUGH I'M HAPPY TO ADJUST THAT ALSO AS NEEDED BECAUSE

7    SOMETIMES IN A CASE WE'LL HAVE A ONE HOUR LUNCH DEPENDING ON

8    WITNESS NEEDS AND THE EVIDENCE.  SO THAT'S AVAILABLE ALSO.

9         IF COUNSEL WISH TO AUGMENT OR CHANGE THAT SCHEDULE, PLEASE

10   LET ME KNOW AND I'M HAPPY TO DISCUSS THAT.

11        OKAY.  I THINK THAT'S EVERYTHING ON MY CHECKLIST FOR A

12   PRETRIAL.

13        LET'S MOVE THEN TO IN LIMINE MOTIONS.

14        AND THE DEFENSE 1 IS DOCKET 15, AND THAT IS THE DEFENSE

15   MOTION PRECLUDING SENDING THE INDICTMENT INTO THE JURY ROOM.

16        I DON'T THINK THERE WAS OPPOSITION, SPECIFIC OPPOSITION

17   FILED, BUT I'M HAPPY TO HEAR FROM THE PARTIES.

18        ANYTHING FURTHER AS TO YOUR MOTION, MR. ARCHER?

19             MR. ARCHER:  NO, YOUR HONOR.

20             THE COURT:  FROM THE GOVERNMENT?

21             MS. PENNA:  NOTHING.

22             THE COURT:  ALL RIGHT.  I'LL GRANT THE MOTION,

23   RECOGNIZING THAT THE JOINT STATEMENT WILL BE READ, YOUR JOINT

24   STATEMENT WILL BE READ OR, IN THE ALTERNATIVE, THE INDICTMENT

25   WILL BE READ AT THE BEGINNING OF THE CASE.

1           THE VERDICT FORM ALSO BEARS SOME DISCUSSION HERE ALSO, AND

2      I KNOW -- I THINK YOU'VE SUPPLIED COMPETING VERDICT FORMS AND I

3      THINK I'VE SEEN THOSE.

4           MR. ARCHER:  WE HAVE, YOUR HONOR.  I THINK I -- THE

5      DEFENSE'S DOESN'T HAVE THE SECOND COUNT ON IT.

6           THE COURT:  RIGHT.

7           MR. ARCHER:  SO THAT NEEDS TO BE UPDATED.

8           THE COURT:  SO --

9           MR. ARCHER:  ONE QUICK QUESTION, YOUR HONOR, ABOUT

10     THE JOINT STATEMENT OR INDICTMENT.  THE DEFENSE'S PREFERENCE IS

11     IF WE DON'T END UP -- I ANTICIPATE THAT WE'LL BE ABLE TO COME

12     UP WITH A JOINT STATEMENT, BUT IF WE DON'T, JUST THAT THE

13     COURT'S READING OF THE INDICTMENT NOT BE IDENTIFIED AS AN

14     INDICTMENT, BECAUSE THE DEFENSE PERSPECTIVE IS THAT IT RAISES

15     THE SAME CONCERNS ABOUT THE INDICTMENT GOING BACK AND THAT THIS

16     HAS BEEN ENDORSED BY A GRAND JURY.  SOME OF THE MEMBERS OF THE

17     JURY MAY UNDERSTAND, YOU KNOW, WHAT THE PROCESS IS IN RETURNING

18     IN AN INDICTMENT.

19          BUT I THINK IT POTENTIALLY PREJUDICES THE DEFENSE TO HAVE

20     WHAT THE COURT'S DESCRIBING BE DESCRIBED AS AN INDICTMENT

21     RETURN BY A GRAND JURY.

22          THE COURT:  SO ONE THING THAT I DO SAY -- THANK YOU

23     FOR THAT.

24          ONE THING THAT I DO SAY IN MY STANDARD VOIR DIRE IN

25     CRIMINAL CASES, I DO INDICATE THE INDICTMENT -- I'M SORRY, I

1    DON'T HAVE IT AT MY FINGERTIPS JUST NOW -- BUT I DO TELL THE

2    PROSPECTIVE PANEL THAT THE INDICTMENT IS NOT EVIDENCE AND IT IS

3    MERELY THE ACCUSATION, THE CHARGING DOCUMENT THAT RELATES TO

4    THESE CHARGES; THAT THE DEFENDANT HAS ENTERED PLEAS OF NOT

5    GUILTY, WHICH IS AN ABSOLUTE DENIAL OF THE CHARGES; AND THEN I

6    GO INTO THE BURDENS ON THE GOVERNMENT AND TALK ABOUT THE

7    PRESUMPTION OF INNOCENCE AND THE BURDEN OF PROOF BEYOND A

8    REASONABLE DOUBT.

9        WE'LL LOOK AT THAT ALSO WHEN WE GET TO THE INSTRUCTIONS AS

10   TO HOW THE INSTRUCTIONS SHOULD FRAME THE CHARGE TO THE JURORS.

11       BUT INITIALLY IT SOUNDS, MR. ARCHER, YOU WOULD LIKE -- IN

12   YOUR JOINT STATEMENT, YOU'LL WORK OUT SOME LANGUAGE, BUT YOU

13   WOULD LIKE THE COURT TO INDICATE THAT -- IT SOUNDS LIKE TO

14   ELIMINATE THE WORDS "GRAND JURY HAS FOUND" AS OPPOSED TO "AN

15   INDICTMENT."

16       MR. ARCHER:  INDEED.  AND THAT'S ONLY IN THE EVENT

17   THAT WE DON'T ACTUALLY COME UP WITH A JOINT STATEMENT, WHICH

18   I'M HOPEFUL WE WILL.

19       THE COURT:  OKAY.

20       MR. ARCHER:  I HAVEN'T HAD TROUBLE IN THE PAST.

21       THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

22   ANYTHING FURTHER ON THAT, MS. PENNA?

23       MS. PENNA:  NOTHING FURTHER.

24       THE COURT:  ALL RIGHT.  THANK YOU.

25   LET'S SEE HERE.  DEFENSE 2 IS DOCKET 16, TO PERMIT VOIR

```
1      DIRE.  THAT'S GRANTED.  I THINK I TALKED ABOUT THAT ALREADY.

2           AND I WILL USE YOUR SUBMITTED PROPOSED VOIR DIRE.  AGAIN,

3      IF YOU HAVE ANY ADDITIONAL QUESTIONS THAT YOU WOULD LIKE THE

4      COURT TO ASK, PLEASE PROVIDE THOSE TO ME AND I'LL LOOK AT

5      THOSE.  IF YOU CAN GET THOSE TO ME BY THE 14TH ALSO, THAT WOULD

6      BE HELPFUL.

7           DEFENSE 3 IS DOCKET 17, AND THAT'S A REQUEST TO PRODUCE

8      THE GRAND JURY TRANSCRIPTS.  PERHAPS I SHOULD ASK THE

9      GOVERNMENT THEIR POSITION ON THIS.

10           MS. PENNA:  YOUR HONOR, WE ALREADY HAVE PRODUCED THE

11      GRAND JURY TRANSCRIPTS.

12           THE COURT:  OH.

13           MR. ARCHER:  MY UNDERSTANDING IS THAT THE --

14      IS IT CORRECT THAT THE LAST ROUND CAME BACK YESTERDAY?

15           MS. PENNA:  YES.

16           THE COURT:  OKAY.  SO THIS IS MOOT.

17           DEFENSE 4 IS DOCKET 18, AND I THINK THIS IS -- WHAT SHOULD

18      I CALL THIS -- PRECLUDE THE GOVERNMENT AND ITS WITNESSES FROM

19      VOUCHING.

20           AND LET ME ASK MS. PENNA, DO YOU INTEND TO ASK YOUR

21      WITNESSES TO VOUCH, MS. PENNA?

22           MS. PENNA:  I DO NOT.

23           THE COURT:  ALL RIGHT.

24      MR. ARCHER, ANYTHING FURTHER ON THIS?

25           MR. ARCHER:  NO, YOUR HONOR.
```

1              THE COURT:  LET ME JUST INDICATE THE COURT

2      UNDERSTANDS, AS ALL COUNSEL DO, THE ISSUE OF, QUOTE-UNQUOTE,

3      "VOUCHING," AND THE COURT DOESN'T PERMIT VOUCHING FROM ANY

4      PARTY AND I EXPECT ALL COUNSEL WILL FOLLOW ACCORDINGLY.

5              D5 IS DOCKET 19, OPPOSITION IS DOCKET 35, AND THIS IS TO

6      DESIGNATE ALL GOVERNMENT WITNESSES UNDER DEFENSE SUBPOENA

7      UNLESS RELEASED.

8              AND LET ME ASK MR. ARCHER ABOUT THIS.  ONE THING THAT I DO

9      WHEN A WITNESS TESTIFIES IS I ASK BOTH COUNSEL IF THE WITNESS

10     CAN BE EXCUSED.  IF THERE IS -- IF ONE PARTY FEELS LIKE THE

11     ANSWER TO THAT QUESTION SHOULD BE NO, THEN I TELL THE WITNESS,

12     "YOU'RE NOT EXCUSED AND YOU MAY BE SUBJECT TO RECALL BY EITHER

13     PARTY FOR ADDITIONAL TESTIMONY OR EVIDENCE."

14             I HOPE THAT PROVIDES YOU, MR. ARCHER, SOME SECURITY, AND

15     IF IT DOES, THEN I GUESS THE QUESTION COMES TO OTHER WITNESSES

16     WHO ARE NOT CALLED THEN TO TESTIFY.

17               MR. ARCHER:  INDEED.

18             THE COURT:  AND THAT'S WHAT THE BALANCE OF YOUR

19     MOTION I JUST SUPPOSE WOULD GO TO.

20               MR. ARCHER:  I GUESS MY ONLY QUESTION FOR THE COURT

21     IS PRESUMABLY THE COURT'S REQUEST THAT THE WITNESS STAY IS

22     ADEQUATE AS A DIRECT COURT ORDER TO THE WITNESS WITH THE SAME

23     POWER AS A SUBPOENA.  IS THAT --

24             THE COURT:  RIGHT, RIGHT.  IF I TELL THE WITNESS,

25     "YOU'RE NOT RELEASED AND YOU MAY BE CALLED TO GIVE FURTHER

1    EVIDENCE, SO YOU MUST RECOGNIZE" -- I GUESS IMPLICIT IN THAT IS

2    THAT WITNESS HAS TO BE AVAILABLE FOR RECALL.

3         AND I SUPPOSE THE PARTY, THE GOVERNMENT IF IT'S A

4    GOVERNMENT WITNESS, IF YOU COULD ADVISE YOUR WITNESSES THAT IF

5    THEY ARE PUT IN THAT SITUATION, IN OTHER WORDS, IF THE COURT

6    TELLS THEM, "YOU'RE SUBJECT TO RECALL," THEY NEED TO BE

7    AVAILABLE WITH THE SAME CONTACT INFORMATION, AND NOT THAT

8    MR. ARCHER HAS TO HAVE THAT CONTACT INFORMATION IF YOU CHOOSE

9    NOT TO PROVIDE IT, BUT WHEN ASKED, YOU SHOULD BE ABLE TO

10   CONTACT THE WITNESS SUCH THAT SHE OR HE COULD COME BACK.

11              MS. PENNA:  ALL RIGHT.

12              THE COURT:  ALL RIGHT.  DO WE ALL UNDERSTAND THAT?

13   ANY OTHER QUESTIONS ABOUT THAT?

14              MR. ARCHER:  NO, YOUR HONOR.

15              THE COURT:  ANYTHING FURTHER ON THAT THEN?

16   MR. ARCHER?

17              MR. SCHENK:  THE ONLY ISSUE THAT'S LEFT IS IF THE

18   GOVERNMENT DOESN'T CALL A WITNESS, THEN IS THAT WITNESS, IN

19   THEORY, SUBJECT TO BEING CALLED BY THE DEFENSE?

20              THE COURT:  WELL, THAT WAS THE QUESTION I WAS KIND OF

21   INFERRING AND IMPLYING.

22              MR. ARCHER:  AND I GUESS THE DEFENSE'S REQUEST IS

23   BASED ON MR. YORK'S INDIGENCE AND WHETHER IT'S A GOOD USE OF

24   RESOURCES TO HAVE THE DEFENSE HAVE TO INDEPENDENTLY SUBPOENA

25   EVERY SINGLE ONE OF THE GOVERNMENT WITNESSES WHO ARE PRESUMABLY

1    UNDER GOVERNMENT SUBPOENA.  I -- WE CAN CERTAINLY DO THAT IF

2    THAT IS THE COURT'S PREFERENCE.

3         OUR REQUEST HERE WAS THAT THE GOVERNMENT SUBPOENAS

4    EFFECTIVELY BE MADE THE EQUIVALENT OF DEFENSE SUBPOENAS AND

5    THERE BE SOME CONSULTATION WITH THE DEFENSE BEFORE ANY OF THE

6    WITNESSES IDENTIFIED ON THE WITNESS LIST BE RELEASED FROM

7    SUBPOENA.

8         THE COURT:  WELL, I SUPPOSE I COULD ASK THE

9    GOVERNMENT TO IDENTIFY WHO THEY'RE GOING TO CALL IN THE CASE,

10   AND I THINK WE HAVE THAT WITNESS LIST THERE AND THOSE ARE THE

11   WITNESSES THAT AT LEAST HAVE BEEN PROVIDED TO THE COURT AND TO

12   COUNSEL AS WITNESSES WHO WILL TESTIFY.

13        NOW, IF THE GOVERNMENT CHOOSES NOT TO CALL A WITNESS IN

14   THE CASE, IN THIS CASE, I GUESS THAT MY QUESTION TO YOU WOULD

15   BE, WHEN DO YOU THINK YOU WOULD HAVE A DECISION MADE AS TO

16   WHETHER OR NOT YOU MIGHT CALL THAT PARTICULAR WITNESS, OR DO

17   YOU CARE TO IDENTIFY A WITNESS LIST TODAY?

18        I THINK I LOOKED IN YOUR PRETRIAL FILING AND YOU INDICATED

19   THAT AS TO WITNESSES, THE CASE WAS GOING TO BE -- IT SOUNDS

20   LIKE YOU'RE GOING TO RELY ON THE EVIDENCE FROM THE GOVERNMENT

21   AND TEST THE QUALITY OF THAT EVIDENCE.

22        MR. ARCHER:  THE POTENTIAL WITNESS LIST THAT WAS

23   SUBMITTED INCLUDES DOUG COLE, AN INVESTIGATOR IN OUR OFFICE, AS

24   WELL AS MR. YORK AS A WITNESS.

25        THE COURT:  RIGHT.

1          MR. ARCHER:  THE RETENTION OF THE GOVERNMENT

2     WITNESSES WOULD BE FOR A DEFENSE REBUTTAL CASE.

3          THE COURT:  OKAY.

4          MR. ARCHER:  WHICH I CERTAINLY COULD NOT SAY STANDING

5     HERE TODAY WHETHER -- I WOULD ANTICIPATE THAT THAT DECISION

6     WOULD BE MADE AT THE CLOSE OF THE GOVERNMENT'S CASE.

7          THE COURT:  MS. PENNA, CAN YOU NOTE TODAY WHETHER OR

8     NOT YOU'RE GOING TO CALL EACH AND EVERY WITNESS YOU HAVE ON

9     YOUR WITNESS LIST?

10          MS. PENNA:  NOT DEFINITIVELY.  WE'RE STILL DECIDING.

11          AND WE WILL ALSO BE FILING AN UPDATED LIST, AND IF THERE'S

12     A CERTAIN DATE THAT YOU'D LIKE THAT BY --

13          THE COURT:  WE SHOULD PROBABLY -- CAN YOU HAVE THAT

14     BY THE 14TH AS WELL?

15          MS. PENNA:  YES.

16          THE COURT:  GREAT.

17          AND THEN, MR. ARCHER, YOU CAN LOOK AT THAT AND THEN

18     PERHAPS WE'LL HAVE ANOTHER DISCUSSION, PROBABLY EARLY THE

19     MORNING OF THE 24TH BEFORE WE START, AS TO ANY UPDATES OR

20     CHANGES.

21          MR. ARCHER:  THE 24TH OR 25TH, YOUR HONOR?

22          THE COURT:  THE 25TH.

23          DOES THAT GIVE YOU ENOUGH CLARITY ON D5?

24          MR. ARCHER:  IT DOES, YOUR HONOR.

25          MR. SCHENK:  YOUR HONOR, WHILE WE'RE ON THAT TOPIC,

 1          WE HAVEN'T RECEIVED ANY DISCOVERY REGARDING MR. COLE'S REPORTS

 2     OR STATEMENTS.

 3               THE COURT:  OH.

 4               MR. SCHENK:  SO WE WOULD ASK THE SAME REQUEST THAT'S

 5     MADE OF THE GOVERNMENT APPLY TO THE DEFENSE, AND THAT IF HE'S

 6     APPEARING ON A WITNESS LIST, THE GOVERNMENT IS ENTITLED TO

 7     DISCOVERY.

 8               THE COURT:  MR. ARCHER.

 9               MR. ARCHER:  UNDERSTOOD, YOUR HONOR.  THE DEFENSE HAS

10     COMPLIED WITH ITS OBLIGATIONS UNDER RULE 16 AND WILL CONTINUE

11     TO DO SO.

12               THE COURT:  OKAY.  CAN WE USE THE 14TH AS A TARGET

13     DATE FOR ANY OTHER INFORMATION TO BE EXCHANGED?

14               MR. ARCHER:  YES, YOUR HONOR.

15               THE COURT:  OKAY, GREAT.  THANK YOU.

16          LET'S MOVE TO D6, WHICH IS DOCUMENT 20, AND, AGAIN, THE

17     OPPOSITION IS 35.

18          AND THIS, MR. ARCHER, IS THE DEFENDANT'S MOTION TO EXCLUDE

19     GOVERNMENT WITNESSES AND REQUIRE THE CASE AGENT TO TESTIFY

20     FIRST.

21          I THINK THE GRAVAMEN OF THIS IS TO REQUIRE THE CASE AGENT

22     TO TESTIFY FIRST, AS I'VE GRANTED THE MOTION TO EXCLUDE

23     WITNESSES.

24          SO WHAT WOULD YOU LIKE ME TO KNOW ABOUT THAT?

25               MR. ARCHER:  FROM THE DEFENSE'S PERSPECTIVE, YOUR

1    HONOR, AS THE MOVING PARTY, WE THINK IT'S AN APPROPRIATE

2    EXERCISE OF THE COURT'S DISCRETION AND POWERS IN ORDERING THE

3    SEQUENCING OF WITNESSES IN THIS WAY BECAUSE THE IDEA OF

4    DESIGNATING THE CASE AGENT AS SOMEONE WHO IS PERMITTED TO BE AN

5    EXCEPTION TO THE EXCLUSION OF WITNESSES IS NOT TO ALLOW THE

6    CASE AGENT TO SORT OF BAT CLEANUP AND ACT AS A SUMMARY OF OTHER

7    TESTIMONY AND FILL IN GAPS.

8        THE REASON THE CASE AGENT IS SUPPOSED TO BE THERE IS

9    BECAUSE HE'S THE MOST KNOWLEDGEABLE PERSON, IN THEORY, ABOUT

10   THE CASE AND IS THERE TO PROVIDE VALUABLE ASSISTANCE TO THE

11   GOVERNMENT IN RESPONDING TO THINGS THAT COME UP DURING TRIAL,

12   NOT IN THE FORM OF GETTING UP AND TESTIFYING IN A SUMMARY

13   FASHION.

14       IN FACT, THAT'S EXACTLY WHAT THE EXCLUSION OF WITNESSES IS

15   TO PROHIBIT.

16       SO THERE'S NOTHING THAT WOULD PREJUDICE THE GOVERNMENT IN

17   AN IMPERMISSIBLE WAY BY HAVING THE CASE AGENT BE FORCED TO

18   TESTIFY FIRST.

19       IN FACT, A LOT OF CASE AGENTS SORT OF BAT CLEANUP AFTER

20   HAVING HEARD ALL THE OTHER TESTIMONY.  IT DOESN'T DO ANYTHING

21   TO ADVANCE THE PURPOSES OF THE EXCEPTION TO THE EXCLUSIONARY

22   RULE IN THAT THE CASE AGENT, IF TESTIFYING FIRST, WOULD STILL

23   BE PRESENT, COULD INFORM THE GOVERNMENT OF ANY ISSUES THAT

24   WOULD COME UP AND AID THE GOVERNMENT IN THEIR EXAMINATION OF

25   OTHER WITNESSES WITHOUT THE SORT OF IMPERMISSIBLE SUMMARY

1      TESTIMONY OF THE CASE AGENT.

2            I DON'T KNOW THAT IT WOULD BE ANY PREJUDICE TO THE

3      GOVERNMENT TO HAVE THE CASE AGENT TESTIFY FIRST, AND IT WOULD

4      COMPORT WITH THE SPIRIT AND INTENT OF THE EXCLUSIONARY RULE.

5            THE COURT:  OKAY.  THANK YOU.

6         MS. PENNA.

7            MS. PENNA:  YOUR HONOR, IT'S OUR POSITION THAT THIS

8      WOULD ESSENTIALLY BE INTERFERING WITH THE GOVERNMENT'S TRIAL

9      STRATEGY, AND FORCING US TO MAKE A CASE AGENT TESTIFY FIRST

10     WOULD INTERFERE WITH OUR ABILITY TO DEFINE OUR OWN TRIAL

11     STRATEGY.

12           THE ORDER AND THE PRESENTATION OF OUR EVIDENCE SHOULDN'T

13     BE DICTATED BY THE DEFENSE IN THIS CASE.

14           MR. ARCHER:  YOUR HONOR, THE PERSON -- THE CASE AGENT

15     IS TO -- THE COMMENTARY TO THE RULE DISCUSSES THE PURPOSE BEING

16     SOMEONE WHO'S THERE BECAUSE THE GOVERNMENT PROSECUTORS CAN'T BE

17     EXPECTED TO HAVE EVERYTHING AT THEIR FINGERTIPS AT ALL TIMES.

18           THIS IS A VERY LIMITED SCOPE OF CASE, ONE THAT MIGHT EVEN

19     FALL UNDER THE DEFINITION OF NOT NEEDING A CASE AGENT.  WE HAVE

20     AN EXHIBIT LIST NOW OF, I THINK, SIX OR SEVEN THINGS ON THE

21     LIST AND FIVE OR SIX WITNESSES THAT WOULD BE CALLED.

22           WE'RE NOT OBJECTING TO THE CASE AGENT BEING PRESENT AS AN

23     EXCEPTION, THOUGH I THINK IT'S A BORDERLINE CASE IN THAT.

24           BUT IT'S -- THE GOVERNMENT'S PRESENTATION OF EVIDENCE HAS

25     TO COMPORT WITH THE EXCLUSIONARY RULES HERE, AND THE EXCEPTION

1    DOESN'T SAY THAT THE GOVERNMENT GETS TO CALL THE CASE AGENT AS

2    SOMEONE WHO GETS TO CLEAN UP AFTER ALL THE OTHER TESTIMONY IS

3    DONE.

4         THAT'S THE DEFENSE'S CONCERN.

5              THE COURT:  I APPRECIATE THAT.  I DO THINK THAT TO

6    GRANT THE MOTION WHOLESALE, AS YOU'VE SUGGESTED, DOES INTERFERE

7    WITH THE GOVERNMENT'S OPPORTUNITY TO PRESENT THEIR CASE AS THEY

8    SEE FIT.

9         I AM GOING TO DENY THIS REQUEST, WITH THE CAVEAT -- AND I

10   THINK MS. PENNA AND MR. SCHENK RECOGNIZE THIS -- THAT WHAT

11   HAPPENS IN CASES WHERE THE CASE AGENT IS CALLED AND HE

12   TESTIFIES AS A CLEANUP BATTER TO CLEAR UP ANY, ANY AMBIGUITIES,

13   ET CETERA, AS OPPOSED TO PROVIDING DIRECT EVIDENCE THEMSELVES,

14   I'VE SEEN VERY EFFECTIVELY IN CLOSING ARGUMENT THE DEFENSE

15   COUNSEL COMMENT ON THE FACT THAT THAT REALLY WASN'T A CASE

16   AGENT, THAT WAS A CLEANUP BATTER THAT WAS CALLED IN AND ALL

17   THAT.

18        I CAN APPRECIATE THAT'S HOW THAT COMES OUT, AND THAT'S

19   WHAT HAPPENS AND THAT'S ONE OF THE, I SUPPOSE, REMEDIES OR

20   BYPRODUCTS OF HAVING THE AGENT TESTIFY IN THAT CAPACITY AS

21   OPPOSED TO PURELY AS A CASE AGENT PROVIDING HER TESTIMONY AND

22   HER KNOWLEDGE OF THE CASE.  I GUESS THAT'S JUST THE WAY TRIALS

23   GO SOMETIMES.

24        SO I DO THINK -- I RECOGNIZE THE DIFFICULTY IT PRESENTS TO

25   THE DEFENSE.

1      IT ALSO PROVIDES AN OPPORTUNITY FOR THE DEFENSE IN A SMALL

2   CASE WHERE THE EVIDENCE MIGHT BE, PERHAPS -- I DON'T KNOW WHAT

3   THE EVIDENCE IS, THE STRENGTH OF THE EVIDENCE, AND THAT'S

4   CERTAINLY GOING TO BE TESTED BY THE DEFENSE HERE -- BUT IT DOES

5   PROVIDE AN OPPORTUNITY TO MAKE A CREATIVE CLOSING ARGUMENT IN

6   THAT REGARD.

7      SO I SUPPOSE THE PARTIES PROCEED AT THEIR OWN PERIL.

8      SO I'LL DENY THAT MOTION.

9      LET'S MOVE TO 7, AND DEFENSE 7 IS TO EXCLUDE ANY EVIDENCE

10  OFFERED BY THE GOVERNMENT THAT WAS NOT PRODUCED PRIOR TO TRIAL.

11     I THINK I UNDERSTAND THE MOTION, MR. ARCHER.

12     MR. ARCHER:  YES, YOUR HONOR.  AND IT'S SORT OF -- IT

13  BLEEDS A LITTLE BIT INTO SOME OF THE 404(B) ISSUES, TOO.

14     THE COURT:  I GUESS SO.

15     MR. ARCHER:  BECAUSE I DON'T KNOW -- SO THE

16  GOVERNMENT HAS PROVIDED AN EXHIBIT LIST, WHICH I DON'T KNOW IF

17  THE GOVERNMENT INTENDS TO UPDATE THAT OR NOT, BUT IF THE COURT

18  HAS IT BEFORE YOUR HONOR RIGHT NOW, THE DEFENSE'S PRIMARY

19  CONCERNS ARE -- AND THIS IS ALSO OUTLINED IN THE GOVERNMENT'S

20  404(B) MOTION -- BUT ON THE GOVERNMENT'S EXHIBIT LIST, NUMBER 4

21  AND NUMBER 5 LIST THAT THEY INTEND TO INTRODUCE RESTRAINING

22  ORDERS THAT WERE IMPOSED AGAINST THE DEFENDANT, AS WELL AS

23  CONVICTION EVIDENCE, AND IT'S JUST SORT OF -- IT'S VERY BROAD.

24  IT'S A LAUNDRY LIST OF -- NOT A LAUNDRY LIST, I GUESS.

25     THE ISSUE FOR THE DEFENSE IS THAT I DON'T KNOW WHETHER ALL

1    OF THOSE THINGS HAVE BEEN PRODUCED BECAUSE THEY'RE NOT

2    IDENTIFIED SPECIFICALLY IN THIS EXHIBIT LIST.  SO WE HAVE AN

3    ISSUE, AND IT'S PROBABLY BEST RAISED IN A 404(B) CONTEXT, BUT I

4    THINK IT'S AN ISSUE AS TO WHAT THE GOVERNMENT INTENDS TO

5    INTRODUCE HERE.

6         BUT AS TO THE CONTEXT OF IN LIMINE NUMBER 7, WE WOULD JUST

7    ASK THAT THE COURT LIMIT THE PRODUCTION, OR THE INTRODUCTION OF

8    EVIDENCE TO ANYTHING THAT'S BEEN PRODUCED.

9              THE COURT:  OKAY.

10        MS. PENNA.

11             MS. PENNA:  AS FOR THE MOTION IN LIMINE IN GENERAL,

12   WE DON'T OBJECT TO THE EXCLUSION OF EVIDENCE NOT PRODUCED PRIOR

13   TO TRIAL.

14        IN THESE SPECIFIC CASES, WE HAVE PRODUCED THE RESTRAINING

15   ORDERS IN THE DISCOVERY.  WE CAN CERTAINLY, IN OUR UPDATED

16   FILING, SPECIFY THE DATES OF THOSE IF YOU WANTED.

17        AS FOR THE PRIOR CONVICTIONS, WE PROVIDED A RAP SHEET, BUT

18   WE ARE STILL WAITING ON SOME POLICE RECORDS.  I'M NOT SURE OF

19   THE TIMELINE ON THAT.  WE'VE BEEN INDICATED THAT THEY WERE

20   COMING MUCH SOONER, SO I CAN'T SPEAK TO THAT DEFINITIVELY.

21        BUT -- YES.

22             THE COURT:  OKAY.  WELL, I THINK THE SPIRIT -- AND I

23   APPRECIATE, MS. PENNA, YOU RECOGNIZING THAT THE SPIRIT OF THE

24   MOTION IS THE EVIDENCE THAT HASN'T BEEN DISCLOSED CERTAINLY

25   SHOULD NOT BE PERMITTED, AND WON'T BE PERMITTED TO BE ADMITTED

1    IF THERE'S A RULE 16 IMPROPRIETY AS TO THAT INFORMATION.  TO

2    THAT EXTENT, I'LL GRANT THE MOTION.

3         AS TO THE SPECIFIC EVIDENCE, I THINK YOU'RE RIGHT,

4    MR. ARCHER, THAT'S PROBABLY TAKEN UP UNDER THE GOVERNMENT'S 1

5    AND 2 DISCUSSION REGARDING 404(B) EVIDENCE AND THE OTHER

6    EVIDENCE, SO LET'S DEFER THOSE SPECIFIC ITEMS TO THOSE IN

7    LIMINE MOTIONS.

8         DEFENSE 8 THEN IS -- SO 7, PARDON ME, WOULD BE GRANTED AS

9    INDICATED.

10        DEFENSE 8 IS DOCKET 22 AND, AGAIN, OPPOSITION IS 35.  IT

11   IS TO PRECLUDE THE GOVERNMENT FROM CROSS-EXAMINING DEFENSE

12   WITNESSES WITH GUILT ASSUMING QUESTIONS AND HYPOTHETICALS.

13        MR. ARCHER.

14        MR. ARCHER:  YES, YOUR HONOR.

15        THE DEFENSE'S CONCERN, AS LAID OUT IN THE MOTION, IS THAT

16   THERE'S A SORT OF ATTACK ON DEFENSE WITNESSES SAYING, "WOULD

17   YOU STILL FEEL THE SAME WAY ABOUT THIS IF YOU'D HAVE KNOWN THAT

18   HE ENGAGED IN SOME PATTERN OF HARASSMENT AGAINST HIS SOON-TO-BE

19   EX-WIFE AND HER NEW BOYFRIEND?"

20        WE THINK THOSE ARE IMPROPER QUESTIONS AND THEY WOULD BE

21   OBJECTIONABLE AND WE THINK THAT AN ADMONISHMENT AT THIS STAGE

22   IS AN APPROPRIATE BEGINNING TO THAT PROCESS.

23        THE COURT:  OKAY.  MS. PENNA, I KNOW YOUR OBJECTIONS,

24   AT LEAST IN YOUR PLEADINGS, ARE SUGGESTING THAT THE REQUEST IS

25   TOO BROAD AND THAT OBJECTIONS SHOULD BE MADE AT TRIAL.

1          MS. PENNA:  YES, YOUR HONOR.  WE FEEL THAT THAT'S THE

2     APPROPRIATE TIME FOR THIS ISSUE.

3          WE ALSO NOTE THAT THERE ARE NO CHARACTER WITNESSES ON THE

4     DEFENSE LIST, AND SO WE QUESTION WHY THIS WOULD BE RELEVANT.

5          THE COURT:  DO YOU WANT TO COMMENT ON THAT,

6     MR. ARCHER, OR NOT?

7          MR. ARCHER:  YES, YOUR HONOR.  I MEAN, THE ISSUE IS

8     THAT THERE MAY BE WITNESSES THAT WOULD BE RAISED IN A REBUTTAL

9     CASE.

10          THE COURT:  SURE.

11          MR. ARCHER:  AGAIN, THE DEFENSE DOES NOT HAVE A CLEAR

12     PICTURE AS TO WHAT THE GOVERNMENT'S PUTTING ON, AND SO HAS NO

13     REBUTTAL CASE PREPARED AT THE MOMENT.

14          THE COURT:  OKAY.  IN THEORY -- AND I THINK THE

15     OPPOSITION, 35, TOUCHED ON THAT AND RECOGNIZED THAT IN THEORY,

16     THE LIMITATION THAT YOU SUGGEST, MR. ARCHER, IS ONE THAT I

17     THINK THE GOVERNMENT UNDERSTANDS.

18          AM I CORRECT IN THAT, MS. PENNA?

19          MS. PENNA:  YES, YOUR HONOR.

20          THE COURT:  MY SENSE IS I THINK THAT THAT WAS

21     CAPTURED IN THE PLEADINGS, THAT THE GOVERNMENT UNDERSTANDS WHAT

22     THEY CAN AND CAN'T DO, ASK ANY QUESTION ABOUT, "WELL, WOULD IT

23     CHANGE YOUR OPINION IF YOU KNEW THAT THE INDIVIDUAL PUT KITTENS

24     IN A BAG AND THREW THEM IN A RIVER," SOMETHING LIKE THAT, WHEN

25     THERE'S NO EVIDENCE OF THAT.

1       OF COURSE THOSE QUESTIONS ARE OBJECTIONABLE UNLESS, IN

2    FACT, THERE WAS EVIDENCE THAT AN INDIVIDUAL DID THAT AND IT'S

3    OTHERWISE FOUNDATIONALLY RELEVANT.

4       BUT THOSE QUESTIONS ARE NOT PERMITTED.  I THINK,

5    MR. ARCHER, MS. PENNA, JUST FROM THE PLEADING AND FROM OUR

6    CONVERSATION THIS MORNING, UNDERSTANDS THE NATURE, THE

7    LIMITATIONS AND SCOPE OF THOSE TYPES OF QUESTIONS.

8       I APPRECIATE YOU BRINGING THAT OUT HERE.  IT'S IMPORTANT

9    THAT WE HAVE THIS DISCUSSION PRETRIAL.

10       SO RECOGNIZING THAT, I DO THINK THAT THIS IS AN AREA

11    THAT'S BEST TAKEN AT THE TIME OF EVIDENCE AND OBJECTIONS SHOULD

12    BE MADE.  IF YOU FEEL A QUESTION, MR. ARCHER, CROSSES THAT

13    LINE, JUST WHAT WE'VE DONE THIS MORNING -- I HOPE WHAT WE'VE

14    DONE THIS MORNING HAS ESTABLISHED A LINE AND RECOGNITION THAT

15    THOSE TYPES OF ISSUES ARE NOT NECESSARY IN A CASE LIKE THIS.

16         MR. ARCHER:  UNDERSTOOD.

17         THE COURT:  SO I APPRECIATE THAT.

18    LET'S MOVE -- ANYTHING FURTHER, THEN, ON DEFENSE IN LIMINE

19    MOTIONS?

20         MR. ARCHER:  NO, YOUR HONOR.

21         MS. PENNA:  NOTHING FURTHER.

22         THE COURT:  ALL RIGHT.  THANK YOU.

23    LET'S MOVE TO THE GOVERNMENT'S MOTIONS IN LIMINE, AND

24    GOVERNMENT NUMBER 1 IS FOUND AT DOCUMENT 23, THE OPPOSITION IS

25    DOCUMENT 31.

```
1        AND, MS. PENNA, THIS IS THE GOVERNMENT'S DESIRE TO ADMIT
2    404(B) EVIDENCE.
3        NOW, THERE'S BEEN -- MY SENSE IS -- THIS WAS FILED ON
4    JULY 2ND, 2015, AND MY SENSE IS THERE'S BEEN SOMEWHAT OF A
5    CHANGE IN THE CASE NOW BECAUSE OF THE SUPERSEDING INDICTMENT.
6        MS. PENNA:  YES, YOUR HONOR.  WE DID NOTE IN THE
7    ORIGINAL MOTION IN LIMINE ABOUT OUR DISCUSSION AND OUR
8    INTENTION TO SUPERSEDE THE INDICTMENT TO ADD THE COUNT OF
9    47 UNITED STATES CODE 223(A)(1)(C), AND THAT STATUTE INVOLVES
10   AN ELEMENT THAT IS GOING TO REQUIRE THE GOVERNMENT TO PROVE AN
11   INTENT TO HARASS AND, THEREFORE, THIS MOTION IN LIMINE IS, IN
12   OUR VIEW, MOOT BECAUSE THE DISCUSSED EVIDENCE THAT WOULD HAVE
13   PREVIOUSLY FALLEN UNDER 404(B) IS NOW DIRECTLY NEEDED TO PROVE
14   THAT ELEMENT OF INTENT TO HARASS.
15       THE COURT:  ALL RIGHT.
16   MR. ARCHER.
17       MR. ARCHER:  I DON'T THINK THE INQUIRY ENDS THERE AT
18   ALL.  THE GOVERNMENT'S PERSPECTIVE SEEMS TO BE NOW THAT WE'VE
19   ADDED A HARASSING PHONE CALLS COUNT, EVERYTHING THAT WE THINK
20   THAT MR. YORK HAS EVER DONE AND BEEN A JERK IN A HOTLY
21   CONTESTED CUSTODY AND DIVORCE PROCEEDING SHOULD ALL COME IN TO
22   SMEAR HIM AS PART OF THE GOVERNMENT'S THEORY.
23       THE COURT:  IS THAT WHAT YOU'RE GOING TO DO?
24       MS. PENNA:  NO, YOUR HONOR.
25       MR. ARCHER:  THAT'S EXACTLY WHAT'S --
```

1    MS. PENNA:  IT'S OUR POSITION THAT WE'VE LAID OUT

2    VERY SPECIFICALLY THE INSTANCES THAT WE ARE INTENDING TO BRING

3    IN.  WE CAN PROVIDE A DETAILED TIMELINE OF THE SMALL AMOUNT OF

4    TIME SPANS THAT WERE IN BETWEEN -- MOST OF THESE INSTANCES

5    HAPPENED WITHIN TWO MONTHS OF EACH OTHER, AND THEY'RE VERY

6    SPECIFIC.

7    WE AREN'T BRINGING IN EVERY INSTANCE OF MISCONDUCT BY ANY

8    MEANS BECAUSE THERE WAS A VERY LONG LIST THAT WE COULD HAVE

9    BROUGHT IN AND THESE WERE OUR SPECIFIC -- ARE SPECIFIC PIECES

10   OF EVIDENCE THAT WE FELT WERE BEST INDICATED AND WERE OUR

11   INTENTION OF BRINGING.

12   THE COURT:  SO MAYBE WHAT WE SHOULD DO IS TO PERHAPS

13   GO THROUGH THE LIST OF THESE TYPES OF EVENTS THAT YOU'RE

14   SEEKING TO ADMIT AS ELEMENTS OF THE OFFENSE AND/OR AS EVIDENCE

15   THAT MIGHT OTHERWISE BE INEXTRICABLY INTERTWINED WITH THE

16   OFFENSE, ALTHOUGH IT SOUNDS LIKE THAT MIGHT BE -- THAT SECOND

17   ANALYSIS IS NOT NECESSARY BECAUSE THE -- AT LEAST WHAT YOU'VE

18   INDICATED IS THIS IS EVIDENCE, OR ELEMENTS, OF THE SECOND

19   CHARGE.

20   MS. PENNA:  YES, YOUR HONOR.

21   THE COURT:  SO WHY DON'T YOU GO THROUGH THAT SO AT

22   LEAST I HAVE SOME KNOWLEDGE ABOUT WHAT THEY ARE.

23   SO WHAT WOULD BE THE FIRST PIECE OF EVIDENCE?

24   MS. PENNA:  THE FIRST PIECE OF EVIDENCE THAT WE

25   INTENDED WERE THE DEFENDANT'S PATTERN OF PHONE CALLS TO THE

```
 1    VICTIMS.

 2              THE COURT:  AND, LET'S SEE, CAN YOU TELL ME, WHERE --

 3    IS THIS IN --

 4              MS. PENNA:  IT'S IN OUR MOTION IN LIMINE.  PAGES 1

 5    AND 2 LAY OUT THE PIECES OF EVIDENCE.

 6              THE COURT:  AH, ALL RIGHT.  THANK YOU.  YES, I SEE

 7    IT.

 8              MR. ARCHER:  AND IF WE COULD REFERENCE THE EXHIBIT

 9    NUMBER ON THE EXHIBIT LIST THAT IS REFERENCED IN THIS.

10              THE COURT:  OKAY.  SO THE FIRST ONE, I'M AT LINE 27,

11    DOCKET 23, PAGE 1.  A, DEFENDANT'S PATTERN OF PHONE CALLS TO

12    THE VICTIMS.

13         MS. PENNA, WHY DON'T WE -- WE'LL GO THROUGH EACH OF THESE

14    AND TALK ABOUT THAT.

15              MS. PENNA:  SO THERE ARE TWO VICTIMS IN THIS CASE,

16    MR. HESSENFLOW AND ANDREA YORK, AND ANDREA YORK IS MR. YORK'S

17    ESTRANGED WIFE.

18         AND THE PHONE CALL -- THE PHONE CALL IN DIRECT RELEVANCE

19    HERE IS THE IRS PHONE CALL WHICH WAS MADE DIRECTLY TO

20    MR. HESSENFLOW.

21         THERE WAS EVIDENCE OF INCESSANT PHONE CALLS TO BOTH

22    MR. HESSENFLOW AND MS. YORK DURING THE SPAN OF TIME RELEVANT TO

23    THE CASE, AND THAT GOES TO HIS INTENT TO HARASS DUE TO THE

24    INCESSANT REPETITIVENESS OF THE PHONE CALLS, THE MESSAGING, THE

25    CONTACT AS WE CAN SHOW.
```

```
 1                THE COURT:  OKAY.  SO YOU'RE SEEKING TO ADMIT THE,
 2      I'LL CALL IT THE IRS PHONE CALL?
 3                MS. PENNA:  YES, AS WELL AS THE PATTERN OF THE
 4      REPETITIVE PHONE CALLS ALSO MADE.
 5                THE COURT:  OKAY.  SO THE IRS PHONE CALL SEEMS TO
 6      BE --
 7                MS. PENNA:  THE CENTRAL BONE.
 8                THE COURT:  -- THE BONE OF CONTENTION OF AT LEAST ONE
 9      OF THE OBJECTIONS.
10           ANY OBJECTION TO THAT?
11                MR. ARCHER:  YES, YOUR HONOR.  THE -- THE IRS PHONE
12      CALL IS THE ONLY THING LISTED IN THE INDICTMENT, PERIOD.  IT'S
13      NOT THAT -- THERE'S NOT LISTED A PATTERN OF HARASSMENT.  THAT'S
14      NOT WHAT THE INDICTMENT SAYS.  IT'S THAT THAT PHONE CALL
15      CONSTITUTED HARASSMENT.
16           THE PHONE CALL WAS ALSO THE ONLY BASIS FOR THE FIRST COUNT
17      AS WELL, THE IMPERSONATION OF A FEDERAL EMPLOYEE.
18                THE COURT:  SO SHOULD IT COME IN?  SHOULD THE
19      GOVERNMENT BE PERMITTED TO GET THAT, INTRODUCE THAT AS PART OF
20      THEIR CASE?
21                MR. ARCHER:  TWO QUESTIONS.  ONE IS, WHAT IS THAT?
22      IS IT -- IS THERE AN EXHIBIT THAT IS GOING IN HERE?  I MEAN, OR
23      IS IT A HYBRID OF WITNESS TESTIMONY AND IS THERE AN EXHIBIT
24      LISTED?  THERE'S VERIZON WIRELESS RECORDS LISTED, SO PRESUMABLY
25      THAT'S ONE POSSIBILITY.
```

1        ANDREA YORK IS NOT A VICTIM IN THE CHARGED CASE.  AS THE

2   GOVERNMENT HAS JUST NOTED, THE VOICEMAIL WAS LEFT FOR

3   ALLAN HESSENFLOW, SO I DON'T KNOW WHY SOME EVIDENCE OF

4   ANDREA YORK'S COMMUNICATIONS WITH MR. YORK WOULD BE RELEVANT AS

5   TO MR. HESSENFLOW'S RECEIPT OF THE SINGLE VOICEMAIL.

6        I UNDERSTAND THE GOVERNMENT'S INTEREST IN MULTIPLE PHONE

7   CALLS TO MR. HESSENFLOW, BUT WE WOULD OBJECT TO AN INTRODUCTION

8   OF PHONE CALLS TO MS. YORK.

9            THE COURT:  WELL, LET'S ASK ABOUT THE IRS CALL.

10           MS. PENNA:  YES.

11           THE COURT:  WHAT SPECIFIC TYPE OF EVIDENCE OF THAT

12   PHONE CALL WOULD YOU HAVE?

13           MS. PENNA:  WE HAVE SUBPOENAED RECORDS OF AUDIO

14   RECORDING FROM THE SERVICE PROVIDER CALLED SPOOFCARD, OR

15   TELTECH SYSTEMS, INCORPORATED.  THEY PROVIDED US AN AUDIO

16   RECORDING OF THE PHONE CALL.

17        WE ALSO HAVE A RECORDING FROM THE VICTIM, MR. HESSENFLOW,

18   THAT HE RECORDED FROM HIS END FROM THE RECEIPT OF THE PHONE

19   CALL.

20           THE COURT:  SO THERE ARE TWO RECORDINGS THAT YOU'RE

21   SEEKING TO INTRODUCE?

22           MS. PENNA:  YES.  AND WE ALSO HAVE TRANSCRIPTS

23   DETAILING THE CONTENT OF THE PHONE CALL.

24           THE COURT:  I SEE.

25        AS TO THOSE, MR. ARCHER, THAT IS, THE IRS CALL AS I'VE

1    DEFINED IT AND, IT LOOKS LIKE FROM THE EXHIBIT LIST EXHIBIT 1

2    AND 2 ARE SPOOF VOICE RECORDINGS.

3        EXCUSE ME.  VOICE RECORDINGS ARE EXHIBIT 1.

4        MR. ARCHER:  OKAY.  THE DEFENSE DOESN'T OBJECT TO THE

5    INTRODUCTION, ASSUMING IT'S PROPERLY AUTHENTICATED, OF THE

6    VOICEMAIL THAT'S LISTED IN THE INDICTMENT.

7        BUT WE WOULD MAINTAIN AN OBJECTION TO ANY OTHER

8    RECORDINGS.

9        THE COURT:  ALL RIGHT.  SO EXHIBITS 1 AND 2, THOSE

10   RELATE TO THE IRS PHONE CALL?

11       MS. PENNA:  YES, YOUR HONOR.

12       THE COURT:  OKAY.  ALL RIGHT.  SO THANK YOU,

13   MR. ARCHER.

14       SO THAT CALL IS DIRECTLY RELATING TO COUNT 1, IT SEEMS, OF

15   THE INDICTMENT.

16       THE OTHER CALLS, MS. PENNA, THESE ARE CALLS TO THE SPOUSE?

17       MS. PENNA:  YES, YOUR HONOR.  THE -- WELL, THE

18   VERIZON WIRELESS RECORDS ARE SPECIFICALLY TO ALLAN HESSENFLOW,

19   WHO WAS THE RECIPIENT OF THE IRS PHONE CALL, AND THOSE ARE

20   DIRECTLY RELEVANT TO THE CASE.

21       THE COURT:  OKAY.  THOSE GO TO COUNT 1?

22       MS. PENNA:  YES, AND ALSO TO COUNT 2.

23       THE COURT:  OH, ALL RIGHT.  AND WHO'S -- THIS IS --

24   EXHIBIT 3 IS FOR A SINGLE PHONE OR MULTIPLE PHONES?

25       MS. PENNA:  MULTIPLE PHONES BELONGING TO

1      MR. HESSENFLOW.

2                 THE COURT:  I SEE.  OKAY.

3          AND BEFORE WE MOVE TO EXHIBIT 4 ON THE LIST, SO THE OTHER

4      PHONE CALLS IN REGARDS TO THE SPOUSE, YOU'RE SEEKING TO

5      INTRODUCE THOSE AS WELL?

6                 MS. PENNA:  WE WOULD SEEK TO INTRODUCE THOSE THROUGH

7      TESTIMONY.

8                 THE COURT:  OKAY.  AND THAT'S, AGAIN, RETURNING TO A,

9      DEFENDANT'S PATTERN OF PHONE CALLS TO THE VICTIMS, SO --

10                MS. PENNA:  THAT'S CORRECT.

11                THE COURT:  -- I THINK WHAT I HEAR THE OBJECTION IS

12     WHAT IS THE RELEVANCE OF THE PHONE CALLS TO THE WIFE IF SHE'S

13     NOT A LISTED VICTIM IN THE INDICTMENT?

14                MS. PENNA:  IT PROVIDES A CONTEXT OF WHY THE

15     DEFENDANT WAS MAKING PHONE CALLS IN THE FIRST PLACE TO

16     MR. HESSENFLOW.  HIS CONNECTION AND HIS INTEREST IN

17     MR. HESSENFLOW WAS SOLELY HIS INTEREST IN MS. YORK, AND WITHOUT

18     HER, THERE WOULD BE A VOID IN THE STORY AS TO WHY THESE PHONE

19     CALLS WERE MADE, WHY HE WAS TARGETED.  THERE WOULD BE NO

20     CONTEXT.

21                THE COURT:  SO WHAT IS THE EXTENT OF THAT EVIDENCE,

22     THAT IS, THE PHONE CALLS TO THE SPOUSE?

23                MS. PENNA:  IT WOULD SIMPLY BE TESTIMONY ABOUT

24     THESE --

25                THE COURT:  FROM HER?

```
1              MS. PENNA:  YES.  OR FROM POSSIBLY FROM

2    MR. HESSENFLOW.

3              THE COURT:  AND THEY WOULD TESTIFY ABOUT RECEIVING

4    NUMEROUS PHONE CALLS FROM THE DEFENDANT OVER A DEFINED --

5              MS. PENNA:  PERIOD.

6              THE COURT:  -- PERIOD?  WOULD THEY BE -- ARE YOU

7    INTENDING TO ASK THEM, WHAT WERE THE MESSAGES?  WHAT WAS THE

8    CONTACT?

9              MS. PENNA:  I DON'T BELIEVE SO.

10             THE COURT:  OKAY.  IT'S JUST, WE KEPT GETTING CALLS

11   FROM THE DEFENDANT AND HE WOULD CALL AT -- WAS IT 24 HOURS?

12             MS. PENNA:  LATE TIMES, AS WELL AS INCESSANT TEXT

13   MESSAGES.

14             THE COURT:  OKAY.  OVER THE PERIOD OF TIME IN THE

15   CHARGING DOCUMENT OR BEFORE?

16             MS. PENNA:  OR AS DETAILED IN THE SPAN THAT WE WILL

17   BE DISCUSSING.  I DON'T THINK WE HAD INCLUDED A RANGE OF TIME

18   IN THE INDICTMENT, SO WE WILL BE DISCUSSING -- WE WILL LIMIT IT

19   TO A -- WE WON'T BE GOING BACK YEARS AND YEARS.  WE WILL BE

20   LIMITING IT TO A SPECIFIC AMOUNT OF TIME.

21             MR. ARCHER:  THE INDICTMENT SAYS FEBRUARY 23RD, 2012,

22   ON OR ABOUT.  THAT'S -- THAT IS THE SPAN OF TIME.

23        IT FLOWS INTO SOME OF OUR OTHER CONCERNS.  LATER ON WE'RE

24   TALKING ABOUT A 2001 D.V. CONVICTION THAT THE GOVERNMENT WANTS

25   TO INTRODUCE, BUT WE'LL GET TO THAT LATER.
```

1          I DON'T THINK IT'S APPROPRIATE TO DESCRIBE THE VICTIMS AS

2     PLURAL.  MR. HESSENFLOW -- THERE'S NOTHING IN THE INDICTMENT

3     THAT DESCRIBES ANYTHING OTHER THAN A VOICEMAIL BEING LEFT FOR

4     MR. HESSENFLOW, THAT VOICEMAIL BEING TRANSCRIBED IN COUNT 2 AND

5     DESCRIBED IN COUNT 1 AS BEING THE SOLE BASIS FOR THIS.

6               THE COURT:  SURE.

7               MR. ARCHER:  I UNDERSTAND THE GOVERNMENT HAS SOME

8     LATITUDE TO INTRODUCE AN INTENT TO HARASS EVIDENCE, BUT IT

9     SHOULD BE LIMITED TO THINGS THAT ARE ON OR ABOUT FEBRUARY 23RD.

10         I DON'T THINK THE GOVERNMENT SHOULD HAVE LATITUDE TO

11    DISCUSS SOME BROADER TIME PERIOD, ESPECIALLY THINGS OCCURRING

12    AFTER THIS.

13              THE COURT:  I APPRECIATE THAT.  THANK YOU.

14         SO LET ME JUST STEP BACK JUST A MOMENT AND TAKE A 20,000

15    FOOT VIEW.  MY UNDERSTANDING, JUST FROM LOOKING AT THE

16    PLEADINGS HERE -- AND THAT'S ALL I REALLY KNOW ABOUT THIS CASE

17    IS FROM YOUR SUBMISSIONS HERE -- MY UNDERSTANDING IS THIS CASE,

18    THE GENESIS OF THIS CASE IS, SHALL I SAY, AN UNCOMFORTABLE

19    DISSOLUTION PROCESS.  IS THAT FAIR TO SAY?

20              MR. ARCHER:  THAT'S ACCURATE.

21              THE COURT:  OKAY.  AND WAS THAT IN SANTA CLARA

22    COUNTY, THE DISSOLUTION?

23              MR. ARCHER:  IT WAS.  AND IT WAS COMPLETED -- OR IT

24    WAS GOING ON IN 2012.

25              THE COURT:  DURING THIS TIME PERIOD?

1              MS. PENNA:  YES, YOUR HONOR.

2              MR. ARCHER:  YES.

3              THE COURT:  AND IT SOUNDS LIKE, FROM WHAT I'VE LOOKED

4     AT IN THE EXHIBIT LIST AND READ IN THE PLEADINGS, AGAIN, THE

5     INFORMATION I HAVE IS THAT THE GOVERNMENT MAY INTEND TO PROVIDE

6     EVIDENCE FOR THIS CASE, INCLUDING A CONVICTION RELATED TO

7     DOMESTIC VIOLENCE AND BATTERY, VIOLATION OF PROTECTIVE ORDERS

8     THAT MAY HAVE BEEN INTERPOSED BY THE FAMILY LAW COURT I EXPECT

9     FOR ANDREA, I'LL CALL HER BY HER FIRST NAME, ANDREA AND PERHAPS

10    ALLAN, THE NAMED VICTIM IN THE CASE.

11             MY SENSE ALSO IS THAT THE DEFENSE WOULD LIKE TO, AT SOME

12    POINT, ALSO BRING INTO EVIDENCE SOME EVIDENCE THAT THEY BELIEVE

13    IS EITHER IMPEACHMENT OR CHARACTER EVIDENCE OF SOME PART

14    INVOLVING ANDREA'S BEHAVIOR IN THE DISSOLUTION CASE.

15             AND I LOOKED AT THAT AND I THOUGHT, WELL, I'M NOT SURE

16    WE'RE GETTING TO THAT DISCUSSION.  I'M NOT SURE IF THAT

17    MEANS -- I'M NOT SURE WHAT THAT MEANS.

18             WE KNOW THAT DISSOLUTION CASES SOMETIMES, UNFORTUNATELY

19    MANY TIMES, CAN BECOME NASTY BUSINESS AND PERSONALITIES ARE

20    INFLAMED.  INDIVIDUALS CONDUCT THEMSELVES, EVEN IN COURT, IN

21    WAYS THAT ARE UNTOWARD AND REALLY EVEN INAPPROPRIATE, I KNOW

22    THAT.  AND THERE ARE MANY DISSOLUTIONS THAT ARE HANDLED CIVILLY

23    WITHOUT THOSE PROBLEMS.  BUT WE KNOW THAT HIGH TENSIONS AND

24    PERSONALITIES REALLY, REALLY COME TO BOIL IN FAMILY COURT.

25             HAVING SAID ALL THAT -- AND LET ME JUST SAY, THE LAST

 1     ASSIGNMENT I HAD BEFORE I GOT THIS JOB WAS IN FAMILY COURT.  I

 2     SAT THERE FOR FOUR YEARS.  SO I DON'T KNOW -- I SHOULD LOOK AND

 3     SEE WHETHER I WAS THE JUDGE IN THIS DISSOLUTION.  I DON'T

 4     RECALL THIS CHILD OR THIS FAMILY.

 5              MR. ARCHER:  WE -- THE DEFENSE HAS REVIEWED SOME

 6     RECORDS AND YOUR HONOR HAS NOT COME UP IN ANY OF THEM.

 7              THE COURT:  ALL RIGHT.  LOVELY.  I'M GLAD TO HEAR

 8     THAT.

 9         HAVING SAID THAT -- AND AGAIN, NOT THAT MY EXPERIENCE AND

10     BACKGROUND MEANS ANYTHING IN THIS CASE OTHER THAN WHAT I'VE

11     SAID, BUT I DO KNOW THAT EMOTIONS RUN HIGH AND PEOPLE SOMETIMES

12     ENGAGE, THE BEST PEOPLE -- I THINK THE PHRASE IS THE BEST

13     PEOPLE COME INTO FAMILY COURT AND ENGAGE IN THE WORST BEHAVIOR

14     IN FAMILY COURT.  WE SEE THAT ON BOTH SIDES.

15         I'M NOT MAKING ANY JUDGMENTS HERE AS TO THE PARTIES, BUT

16     THE OBSERVATION IS PEOPLE ACT VERY DIFFERENTLY IN FAMILY COURT,

17     IN COURT AND IN THEIR OUTSIDE ACTIVITIES RELATING TO

18     DISSOLUTIONS.  I KNOW THAT.

19         HAVING SAID THAT, I JUST WANT TO SAY THIS:  I HAVE NO, NO

20     DESIRE AND I AM NOT GOING TO HAVE THIS TRIAL, THIS CRIMINAL

21     TRIAL -- AND I KNOW YOU DON'T, EITHER, AND I'M POINTING TO BOTH

22     COUNSEL -- DEVOLVE INTO A FAMILY DISSOLUTION CASE.

23         SO --

24              MR. ARCHER:  YOUR HONOR, THE --

25              THE COURT:  A LOT OF THOSE ISSUES I DON'T THINK ARE

1    PARTICULARLY RELEVANT FOR, MAY NOT BE RELEVANT -- AND, AGAIN,

2    THIS IS MY 20,000 FOOT OBSERVATION -- I DON'T THINK THAT IT'S

3    APPROPRIATE FOR A CRIMINAL CASE TO GET INTO THE HE-SAID,

4    SHE-SAID TYPE THINGS THAT HAPPEN IN FAMILY LAW TYPICALLY, IF

5    THERE IS SUCH A FAMILY LAW CASE.

6         IF THERE ARE EVIDENTIARY -- IF THERE IS EVIDENCE THAT'S

7    RELEVANT TO THE CASE, WE'LL DISCUSS IT.  WE'LL LOOK AT IT.

8            MS. PENNA:  AND, YOUR HONOR, IT ISN'T OUR INTENTION

9    TO REHASH A DIVORCE IN A FAMILY LAW CASE IN ANYWAY.  WE -- AS

10   WE HAVE PROVIDED IN DISCOVERY, THERE'S A LONG LIST OF THE KIND

11   OF EVIDENCE THAT WOULD AMOUNT TO THE HE-SAID, SHE-SAID THAT WE

12   HAVE NO INTENTION OF BRINGING INTO THE COURT.

13        WE BELIEVE THAT OUR SPECIFIC INSTANCES THAT WE DO INTEND

14   TO BRING ARE BACKED UP BY EVIDENCE AND THEY ARE DIRECTLY

15   RELEVANT TO THIS CASE HERE AND IT IS IMPORTANT TO SHOW HIS

16   INTENT TO HARASS OR ABUSE.

17           THE COURT:  SO LET ME SAY -- THANK YOU, MS. PENNA.

18        SO LET ME SAY, IN THE CONTEXT OF WHAT BRINGS THIS CASE TO

19   THIS COURT, I THINK IT IS APPROPRIATE THAT THE JURY KNOW SOME

20   TYPE OF CONTEXT.  THIS DID COME FROM A DISSOLUTION AND I THINK

21   THE PARTIES WOULD BE PERMITTED TO SPEAK ABOUT THAT.  THAT'S THE

22   GENESIS OF THE ISSUES IN THIS CASE.  THERE WAS A DISSOLUTION

23   GOING ON.

24        NOW, YOU MAY -- I'LL ASK SOME VOIR DIRE QUESTIONS ABOUT

25   THAT BECAUSE MANY PEOPLE HAVE VERY STRONG OPINIONS ABOUT THAT

1    PROCESS.  MANY -- I THINK YOU'LL FIND MANY OF THE PROSPECTIVE

2    JURORS HAVE GONE THROUGH THAT PROCESS THEMSELVES AND MIGHT HAVE

3    STRONG OPINIONS ABOUT THE CASE BASED ON THAT.

4         SO TO THE -- TO THE EXTENT THAT THE JURY ASKS, WHY ARE WE

5    HERE AND WHY IS THIS CASE BEFORE US, THE CONTEXT IS APPROPRIATE

6    TO BE LAID -- I THINK THE GOVERNMENT WOULD BE PERMITTED TO SAY

7    THIS COMES FROM A DISSOLUTION CASE.

8         I THINK THAT'S IMPORTANT FOR THE DEFENSE, TOO.  IT'S A

9    DISSOLUTION CASE, AND I THINK IT'S COMMON KNOWLEDGE THAT PEOPLE

10   ACT VERY DIFFERENTLY WHEN THEY'RE ENGAGED IN THOSE -- CAN ACT

11   DIFFERENTLY WHEN THEY'RE ENGAGED IN THOSE TYPES OF CASES.

12        SO TO THE EXTENT THAT IT FRAMES THE NATURE OF THE CASE,

13   THE GOVERNMENT WOULD BE PERMITTED TO DESCRIBE IN THEIR OPENING

14   OR IN EVIDENCE THE FACT THAT THE PARTIES WERE MARRIED, THAT

15   THEY WERE ENGAGED IN A DISSOLUTION, DISSOLUTION LITIGATION.

16        NOW, HOW WOULD YOU DESCRIBE THAT?  IT WAS -- IT SOUNDS

17   LIKE IT WAS CONTESTED LITIGATION.

18            MR. ARCHER:  THAT'S KIND.

19            THE COURT:  I WANT TO DESCRIBE THAT IN SUCH A WAY SO

20   THAT YOU HAVE SOME GUIDANCE FROM THE COURT HOW TO BEST FRAME

21   THAT.  WAS IT HOTLY CONTESTED?  WAS IT BITTERLY CONTESTED?  WAS

22   IT CONTESTED?  I THINK IF YOU USE THE WORD -- I SUGGEST YOU USE

23   RESTRAINT IN THAT REGARD.

24            MR. ARCHER:  YOUR HONOR, THE DEFENSE'S CONCERN AS TO

25   MS. YORK'S TESTIMONY IS THAT IF SHE'S GOING TO BE TESTIFYING --

1        BASICALLY GETTING UP AND TESTIFYING TO A SERIES OF PHONE CALLS,

2        PRESUMABLY SHE'S GOING TO SAY, "HE WAS HARASSING ME THROUGH

3        THESE PHONE CALLS," AND AT LEAST FROM THE GOVERNMENT'S EXHIBIT

4        LIST SO FAR, THAT'S NOT SUPPORTED BY CALL RECORDS TO SUPPORT

5        THAT.  HER CREDIBILITY IS AT ISSUE.

6               THE COURT:  SURE.

7               MR. ARCHER:  AND MY CONCERN IS THAT HER TESTIMONY,

8        WHILE NOT VERY PROBATIVE -- MR. HESSENFLOW CAN TESTIFY ABOUT

9        HIS INTERACTIONS, WHICH APPARENTLY WERE NUMEROUS, WITH

10       MR. YORK.

11          MS. ANDREA -- ANDREA'S TESTIMONY THAT THERE WERE A BUNCH

12       OF PHONE CALLS SEEMS CUMULATIVE IN LIGHT OF WHAT THE

13       GOVERNMENT'S PROFFERED EVIDENCE IS WITH MR. YORK AND RISKS

14       OPENING THE DOOR TO WHAT I THINK WOULD BE APPROPRIATE

15       CROSS-EXAMINATION OF MS. YORK, WHICH IS ANY NUMBER OF FALSE

16       STATEMENTS THAT SHE MADE DURING THIS VERY NASTY DISSOLUTION

17       PROCESS AND CHILD CUSTODY DISPUTE.

18          AND SO I THINK THAT FOR THAT PURPOSE, HER TESTIMONY SHOULD

19       BE EXCLUDED.

20               THE COURT:  SO DID SHE RECEIVE PHONE CALLS HERSELF?

21               MS. PENNA:  YES.

22               MR. ARCHER:  YES.

23               THE COURT:  AND WAS SHE SOMEHOW A WITNESS TO THE

24       OTHER PHONE CALLS THAT WERE RECEIVED BY --

25               MS. PENNA:  SOME.  NOT ALL.

```
 1              THE COURT:  OKAY.  AND SO YOU WANT TO CALL HER TO THE
 2    STAND TO SAY DURING THIS TIME PERIOD, SHE WAS IN THE -- I'M NOT
 3    TELLING YOU WHAT TO SAY -- SHE WAS IN A DISSOLUTION PROCESS AND
 4    IT SOUNDS LIKE SHE WAS COHABITATING WITH ALLAN.  IS THAT FAIR
 5    TO SAY?
 6              MS. PENNA:  AT TIMES.
 7              THE COURT:  OKAY.  THEY WERE INVOLVED, AND AT CERTAIN
 8    TIMES SHE RECEIVED CALLS FROM THE DEFENDANT, MR. YORK, AND SHE
 9    WITNESSED CALLS BEING RECEIVED BY ALLAN AND THESE CALLS WERE
10    WHATEVER, AT 1:00 A.M., 3:00 A.M., THEY WERE CONTINUING.
11    YOU'RE NOT GOING TO ASK HER, WHAT DID HE SAY?
12              MS. PENNA:  NO.
13              THE COURT:  YOU'RE JUST GOING TO SAY THESE CALLS CAME
14    IN, AND YOU'LL HAVE RECORDS THAT SAY 3:00 A.M., 3:10 A.M.,
15    3:15, SOMETHING LIKE THAT?
16              MS. PENNA:  YES.
17              THE COURT:  OKAY.  HOW MANY OF THOSE CALLS -- OR HOW
18    LONG A PERIOD OF TIME DO YOU INTEND?
19              MS. PENNA:  IF -- I'M NOT SURE -- JUST TO GIVE YOU A
20    LITTLE BACKGROUND ON THE CASE, WE HAVE A DETAILED LOG THAT WAS
21    COMPILED BY THE VICTIM, ALLAN HESSENFLOW, AND THERE WERE
22    CONTEMPORANEOUS OBSERVATIONS OR -- HE BASICALLY MARKED DOWN
23    EVERY INSTANCE OF CONTACT THAT HE SPECIFICALLY, AS WELL AS
24    ANDREA, HAD WITH MR. YORK DURING A ONE YEAR SPAN OF TIME.
25         WE ALSO HAVE RECORDS CORROBORATING A LOT -- MOST OF WHAT
```

1   THAT WE INTEND TO BRING, AS WELL AS VERIZON RECORDS THAT ARE

2   SPANNING FOR A ONE MONTH SPAN OF TIME WHICH INCLUDE THAT IRS

3   PHONE CALL, BUT ALSO WOULD SHOW THAT PATTERN.

4           THE COURT:  OKAY.  AND YOU HAVE THOSE RECORDS,

5   MR. ARCHER?  YOU'VE REVIEWED THOSE?

6           MR. ARCHER:  I HAVE THE VERIZON WIRELESS RECORDS.  I

7   HAVE MR. HESSENFLOW'S LOG.

8       I DON'T KNOW THAT THERE ARE, OR HAVE BEEN TURNED OVER

9   RECORDS FROM MS. YORK RECEIVING, ANDREA YORK RECEIVING PHONE

10  CALLS UNLESS I'M MISTAKEN.

11          MS. PENNA:  YEAH, WE DO NOT HAVE THOSE RECORDS.

12          THE COURT:  HOW DO YOU -- WHAT'S THE FOUNDATION FOR

13  THOSE?  HER TESTIMONY?

14          MS. PENNA:  YES.

15          MR. ARCHER:  THAT'S THE REASON I RAISE IT, YOUR

16  HONOR, BECAUSE WE SORT OF GET INTO THIS -- OBVIOUSLY IT'S A

17  DEFENSE STRATEGIC DECISION AT THAT POINT WHETHER WE WANT TO GO

18  DOWN THAT PATH, BUT HER CREDIBILITY IS SOMETHING THAT'S AT

19  ISSUE.  I MEAN, IT WOULD BE AN ISSUE ANYWAY.

20      BUT AS TO THE NATURE OF THE CALLS AND THAT SORT OF THING,

21  IF THERE AREN'T PHONE RECORDS TO BACK IT UP, IT'S HER TESTIMONY

22  THAT SHE RECEIVED A PATTERN OF HARASSING PHONE CALLS.

23      SO THAT, FROM THE DEFENSE'S PERSPECTIVE, OPENS THE DOOR TO

24  QUITE A BIT OF NASTINESS, WHICH, AGAIN, IS NOT SOMETHING THAT

25  WE NECESSARILY WOULD DRAG OUT.

```
 1              THE COURT:  WELL, BEFORE WE TALK ABOUT THAT,

 2      CERTAINLY ANY WITNESS THAT TESTIFIES, THEIR CREDIBILITY IS ALSO

 3      AT ISSUE AND BOTH SIDES CAN TEST THAT CREDIBILITY ACCORDINGLY.

 4          SO IF SHE IS PERMITTED TO TESTIFY, I'M INCLINED TO ALLOW

 5      HER TO TESTIFY ABOUT CALLS THAT SHE DID RECEIVE IF THE

 6      GOVERNMENT WISHES TO PUT HER ON WITHOUT THE FOUNDATION EVIDENCE

 7      THAT YOU HAVE IN REGARDS TO ALLAN, AND MY SENSE IS SHE'S GOING

 8      TO TESTIFY ABOUT CALLS THAT SHE WITNESSED TO CORROBORATE, IF

 9      YOU WILL, ALLAN'S TESTIMONY.  AND SHE'LL SAY, "ME, TOO, I GOT A

10      LOT OF THESE CALLS, TOO, AND THEY WERE OVER THIS PERIOD OF

11      TIME," AND WHETHER SHE'S GOING TO SAY "I WAS ANNOYED BY THEM"

12      OR "THEY DIDN'T BOTHER ME THAT MUCH," OR WHATEVER SHE'S GOING

13      TO SAY, SHE'S GOING TO SAY.

14          I THINK THAT DOES THEN -- OF COURSE, SHE'S A WITNESS AND

15      THE DEFENSE IS ALLOWED TO ATTACK HER CREDIBILITY.

16          THAT'S, I GUESS, THE NEXT LEVEL AS TO HOW DEEP INTO THE

17      FAMILY LAW FILES -- I ASSUME THERE ARE MULTIPLE VOLUMES JUST

18      BASED ON WHAT I'VE HEARD, OF FAMILY LAW FILES -- HOW MUCH

19      YOU'LL BE ALLOWED TO GET INTO.

20          THAT'S NOT MY QUESTION TO YOU, MR. ARCHER.  BUT THE

21      QUESTION THAT THE COURT IS GOING TO HAVE TO DEAL WITH IS, WHAT

22      SPECIFICALLY ARE YOU GOING TO USE?

23          AND, AGAIN, JUST IMAGINING, YOU KNOW, ISN'T IT A FACT THAT

24      YOUR INCOME AND EXPENSE DECLARATION THAT YOU FILED, THAT YOU

25      WERE REQUIRED TO FILE WITH THE COURT, YOU SAID YOU MADE $3,000
```

```
1    A YEAR WHEN ACTUALLY YOU WERE MAKING $50,000 A YEAR AND YOU

2    LIED ON THAT FORM?  IS THAT SOMETHING THAT WE'RE GOING TO HAVE

3    TO DEAL WITH?  YOU SEE THOSE MINUTIA COME UP.

4         I'M NOT TRYING TO GIVE YOU IDEAS TO LOOK FOR, BUT -- IT

5    WAS -- AGAIN, DRAWING ON MY EXPERIENCE -- IT WAS VERY RARE FOR

6    ME TO FIND THAT AN EXPENSE DECLARATION WAS ACTUALLY ACCURATE.

7              MR. ARCHER:  I'D ASK THE COURT TO REFRAIN FROM

8    VOUCHING.

9         (LAUGHTER.)

10             THE COURT:  SO THAT IS THE DILEMMA THAT I THINK WE

11   COME UP WITH IN THESE CASES.

12        SO RECOGNIZING THAT, I WILL PERMIT HER TO TESTIFY, WITH

13   SOME LIMITS.

14        MS. PENNA, YOU CAN APPRECIATE THE CASE.  YOU KNOW, I DON'T

15   THINK SHE -- THE VALUE OF HER TESTIMONY IS TO SAY "I WAS IN THE

16   DISSOLUTION AND THIS WAS MY BOYFRIEND," OR WHATEVER, AND "I

17   WITNESSED SOME OF THE CALLS AND I RECEIVED SOME OF THE CALLS."

18   SO THAT'S IT, WITHOUT GOING INTO CONTENT.

19        AND THEN, MR. ARCHER, YOU WOULD BE PERMITTED TO TEST HER

20   CREDIBILITY.

21        I GUESS THE QUESTION IS GOING TO BE -- AND I'M NOT ASKING

22   YOU TO TELL US IN ADVANCE HOW YOU'RE GOING TO QUESTION HER,

23   THAT'S NOT PROPER -- BUT RECOGNIZING THAT THERE MIGHT BE SOME

24   LIMITATIONS AS TO BEYOND THE NORMAL CREDIBILITY ISSUES THAT

25   COME UP.
```

1        FAMILY LAW FILES PROVIDE FODDER FOR A LOT OF THINGS, AND

2    SOME OF THE THINGS MAY NOT BE MATERIAL I GUESS IS WHAT I'M

3    GOING TO SAY.  SOME MAY BE.  THERE ARE MANY THINGS THAT, YOU

4    KNOW, YOU SAID YOU WERE GOING TO BRING THE CHILD BY AT 3:00

5    O'CLOCK.  ISN'T IT THE FACT THAT YOU BROUGHT HER AT 3:30?

6    THAT'S SOMETHING THAT YOU SEE A LOT OF, BUT THAT PROBABLY WOULD

7    NOT BE VERY MATERIAL.

8        MR. ARCHER:  WE DO INTEND TO TRY TO STICK WITH

9    APPROXIMATELY THE TIME ESTIMATE OF THE TRIAL.

10        THE COURT:  OKAY.  THANK YOU.

11        ANYTHING FURTHER ON -- LET'S SEE.  WE'VE GOT A DONE.

12        LET'S MOVE TO B, RESTRAINING ORDER AGAINST THE DEFENDANT

13    PROHIBITING HIM FROM HAVING CONTACT WITH THE VICTIMS.  THIS IS

14    LINE 1 AGAIN, PAGE 2 OF DOCUMENT 23.

15        YOU WISH TO GET THE RESTRAINING ORDER, THE ACTUAL

16    RESTRAINING ORDER, THE FACT THAT A COURT ISSUED A RESTRAINING

17    ORDER IN?

18        MS. PENNA:  YES, YOUR HONOR.

19        THE COURT:  AND TELL ME THE REASON FOR THAT.

20        MS. PENNA:  YOUR HONOR, WE BELIEVE THAT FOR BOTH THE

21    RESTRAINING AND PROTECTIVE ORDERS, AND ALSO THE CONVICTIONS,

22    THEY REALLY SPEAK TO A FEW THINGS.

23        ONE, IT, AGAIN, PROVIDES THE CONTEXT OF EXACTLY WHAT

24    HAPPENED IN THIS CASE, THAT NOT ONLY -- THIS WASN'T JUST A

25    DIVORCE CASE.  THIS ESCALATED TO EXTREME FEAR, ENOUGH TO ENACT

1      MULTIPLE RESTRAINING ORDERS, AS WELL AS ACTUAL PHYSICAL

2      VIOLENCE.

3           AND OUR -- PART OF OUR CASE, AS WE'VE DISCUSSED AND WE

4      INTEND, IS TO TIE THIS TO THE ACTIONS DIRECTED TOWARDS

5      MR. HESSENFLOW.

6           AND ONE OF THOSE ELEMENTS WE HAVE TO PROVE IS THAT INTENT

7      TO HARASS, ABUSE, OR THREATEN, AND THIS -- THE PROTECTIVE

8      ORDERS, AS WELL AS THE CONVICTIONS, SHOW THAT THIS DEFENDANT IS

9      CAPABLE OF VIOLENCE, AND IT DIRECTLY SPEAKS TO HIS INTENT TO

10     ABUSE OR THREATEN OR HARASS MR. HESSENFLOW.

11          IT ALSO GOES TO MR. HESSENFLOW'S STATE OF MIND IN

12     RECEIVING THOSE PHONE CALLS.

13             THE COURT:  WAS THIS A MISDEMEANOR CONVICTION?  WAS

14      THERE A CONVICTION, I GUESS?

15             MS. PENNA:  YES, THERE WAS.  IT WAS A MISDEMEANOR.

16             THE COURT:  IT WAS A MISDEMEANOR.  AND THERE WAS SOME

17      TYPE OF A COURT ORDER ISSUED, A RESTRAINING ORDER WAS ISSUED?

18             MS. PENNA:  YES, YOUR HONOR.

19             THE COURT:  AS TO BOTH?

20             MS. PENNA:  BOTH, YES, MR. HESSENFLOW AND

21      ANDREA YORK, AS WELL AS THEIR CHILDREN.

22             THE COURT:  IS THAT STILL IN PLACE?

23             MS. PENNA:  YES, IT'S MY UNDERSTANDING THAT IT IS.

24             THE COURT:  OKAY.  JUST MOVING FOR JUST A SECOND, I

25      SUPPOSE HE'S NOT GOING TO BE PROSECUTED FOR VIOLATION OF A

1    COURT ORDER IF HE'S IN THIS COURT PROCESS.

2         MS. PENNA:  HE WILL NOT.

3         THE COURT:  WITH -- I'M SURE THERE'S 100 YARDS OR

4    300 YARDS OR SOMETHING LIKE THAT IN THE RESTRAINING ORDER, SO

5    HE'S NOT GOING TO BE SUBJECT TO PROSECUTION FOR BEING IN COURT.

6         MR. ARCHER:  I CAN'T SPEAK FOR THE SANTA CLARA COUNTY

7    D.A.'S OFFICE.  I DON'T KNOW THAT ANYONE HERE CAN.

8         THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

9       MR. ARCHER?

10        MR. ARCHER:  YOUR HONOR, THIS -- FIRST I GUESS MY

11   QUESTION IS, IS THE GOVERNMENT'S SUGGESTION THAT THERE WAS A

12   RESTRAINING ORDER IN PLACE AT THE TIME OF THE FEBRUARY 23RD,

13   2012, INCIDENT?

14        MS. PENNA:  I BELIEVE THAT THERE WAS A LAPSED ONE

15   THAT WAS THEN REENACTED.  BUT THERE HAD BEEN A SPAN OF A SERIES

16   OF PROTECTIVE ORDERS BEFORE AND AFTER THE INCIDENT INVOLVING

17   THE IRS PHONE CALL.

18        THE COURT:  WAS THERE -- WAS THERE A RESTRAINING

19   ORDER ISSUED AS A RESULT OF THE IRS PHONE CALLS OR ANY OF THE

20   PHONE CALLS?

21        MS. PENNA:  I DON'T THINK IT WAS IN THAT SPECIFIC

22   CONTEXT THAT IT WAS STATED IN THE RESTRAINING ORDER.  I'D HAVE

23   TO SPEAK TO THE VICTIMS.

24        THE COURT:  ALL RIGHT.

25        MR. ARCHER:  YOUR HONOR, I DON'T THINK THE RECORDS AT

1    TRIAL WOULD SHOW THAT -- FIRST OF ALL, I DON'T THINK THE

2    RECORDS AT TRIAL SHOULD HAVE ANY OF THIS IN THERE, BUT I DON'T

3    BELIEVE THERE WAS A RESTRAINING ORDER THAT LAPSED PRIOR TO

4    2012.  THERE WERE PROBLEMS, BUT I DON'T THINK THAT THERE WAS A

5    RESTRAINING ORDER.

6         AS MR. YORK -- AT LEAST, THE DEFENSE CERTAINLY DOES NOT

7    BELIEVE THAT THERE WAS ONE IN PLACE AT THE TIME.

8            THE COURT:  DID A RESTRAINING ORDER ISSUE BECAUSE OF

9    THE PHONE CALLS?

10           MS. PENNA:  YES, THERE WAS A RESTRAINING ORDER AFTER

11   THE PHONE CALLS.

12           MR. ARCHER:  I DON'T THINK THAT THE INTRODUCTION OF A

13   RESTRAINING ORDER -- I THINK IT'S INCREDIBLY PREJUDICIAL TO THE

14   DEFENDANT.  WHAT IT SAYS IS --

15           THE COURT:  I'M JUST ASKING THE TIMING THAT IT

16   HAPPENED.  GO AHEAD.

17           MR. ARCHER:  IT SAYS, IN A CIVIL PROCEEDING, THAT A

18   JUDGE FOUND THAT THE PERSON SHOULD BE RESTRAINED.

19        I MEAN, IT -- WHAT -- THERE'S AMPLE TESTIMONY FROM

20   MR. HESSENFLOW AND MS. YORK, APPARENTLY, THAT THERE WAS

21   HARASSMENT, ET CETERA.

22        SO TO THEN HAVE WHAT WOULD BE VIEWED BY A JUROR AS AN

23   ENDORSEMENT, OR A FINDING OF FACT BY A JURIST BASED ON SOME

24   HEARING THAT WE DON'T -- WE'RE NOT INTRODUCING A TRANSCRIPT OF

25   THAT HEARING AT THIS POINT.  WE'RE -- WE HAVE MINUTE ORDERS, I

1    BELIEVE, OF THE RESTRAINING ORDER BEING IMPOSED, BUT WE HAVEN'T

2    BEEN PROVIDED WITH A TRANSCRIPT FROM THAT HEARING WHERE THE

3    JUDGE SAYS, "I'M FINDING ON THE FOLLOWING GROUNDS."

4        TO THEN JUST INTRODUCE AN ORDER AND SAY TO THE JURY, "HEY,

5    SOME OTHER JUDGE THINKS THIS GUY IS GUILTY OF THIS, FEEL FREE

6    TO JOIN IN" IS NOT APPROPRIATE.  I THINK THAT'S INCREDIBLY

7    PREJUDICIAL.  IT'S NOT PROBATIVE OF ANYTHING THAT COULDN'T BE

8    PROVEN WITH DIRECT TESTIMONY.

9        SO I DON'T UNDERSTAND WHY IT WOULDN'T BE CUMULATIVE AND I

10   DON'T UNDERSTAND WHAT IT ADDS TO THE GOVERNMENT'S CASE, OTHER

11   THAN GIVING SOME SORT OF JUDICIAL BLESSING TO THEIR THEORY THAT

12   MR. YORK HARASSED MS. YORK AND MR. HESSENFLOW.

13       THE COURT:  THIS IS SOMEWHAT RELATED TO EXHIBIT 5.

14   WE'RE TALKING ABOUT EXHIBIT 4, THE RESTRAINING ORDER OR

15   PROTECTIVE ORDER THAT WAS ISSUED.

16       IT LOOKS LIKE EXHIBIT 5 IS THE CONVICTION DOCUMENTS,

17   POLICE REPORTS RELATED TO DOMESTIC VIOLENCE, BATTERY, OR

18   VIOLATION OF PROTECTIVE ORDERS.

19       I THINK THAT'S ENCOMPASSED IN BOTH OF THESE EXHIBITS.  IT

20   SEEMS TO ME OUR DISCUSSION IS RELATED TO BOTH OF THESE; RIGHT?

21       MS. PENNA:  YES, YOUR HONOR.

22       THE COURT:  MS. PENNA, ANYTHING FURTHER ON THIS?

23       MS. PENNA:  NOTHING.

24       THE COURT:  ALL RIGHT.  YOU KNOW, I READ THIS AND I

25   HAVE SOME CONCERN ABOUT THE PREJUDICIAL EFFECT OF INTRODUCING

1    THE DOMESTIC VIOLENCE CONVICTION, AND ALSO THE FACT THAT THERE

2    WAS A RESTRAINING ORDER ISSUED BY A SISTER COURT IN REGARDS TO

3    THIS CASE, AND I DO FEEL THAT TO ALLOW THAT EVIDENCE TO COME

4    IN, THAT IS, THE RESTRAINING ORDER OR PROTECTIVE ORDERS ISSUED,

5    INCLUDING THE POLICE REPORTS, PROTECTIVE ORDERS, DOES CREATE A

6    REAL, A REAL ISSUE OF UNFAIR PREJUDICE AS TO THE DEFENDANT.

7         I DO THINK A 403 ANALYSIS WOULD INDICATE THAT THE

8    PREJUDICIAL EFFECT OF THAT TESTIMONY IN THIS TYPE OF CASE

9    OUTWEIGHS ITS PROBATIVE VALUE AND I'M GOING TO NOT ALLOW,

10   MS. PENNA, THE GOVERNMENT TO INTRODUCE THE RESTRAINING ORDER,

11   THE PROTECTIVE ORDER, NOR THE CONVICTION DOCUMENTS, NOR THE

12   POLICE REPORTS RELATED TO THE DOMESTIC VIOLENCE, BATTERY, OR

13   VIOLATION OF PROTECTIVE ORDERS.

14        NOW, LET ME SAY, IF ANDREA TESTIFIES -- SHE'S NOT GOING TO

15   VOLUNTEER THIS INFORMATION, OBVIOUSLY.  AND YOU'LL SO INSTRUCT

16   AND ADVISE HER THAT SHE'S NOT GOING TO BE ASKED ABOUT THIS.

17        I SUPPOSE IT MAY BE THAT THIS COMES UP SOMEHOW, SOMEBODY

18   MAKES SOME COMMENT ABOUT THIS, IT MAY BE IN THROUGH A DEFENSE

19   WITNESS, AND WE'LL JUST HAVE TO SEE WHAT HAPPENS IN THAT

20   REGARD.

21        AND THE DOOR MAY BE OPENED, AND I GUESS WHAT I'M

22   SUGGESTING IS IF SOMEBODY OPENS THE DOOR, WE'LL DEAL WITH IT AT

23   THAT TIME.

24             MR. ARCHER:  JUST FOR CLARIFICATION PURPOSES, YOUR

25   HONOR, IS THE COURT'S ORDER THEN THAT NO WITNESSES ARE TO

1    TESTIFY ABOUT THESE?  THE COURT HAD DISCUSSED THE ACTUAL

2    DOCUMENTS NOT COMING IN, BUT IS IT THE COURT'S ORDER ALSO THAT

3    NO WITNESSES ARE TO TESTIFY ABOUT THIS?

4              THE COURT:  THEY'RE NOT TO BE ASKED ABOUT THIS,

5    RIGHT.

6         NOW, IF THE DOOR IS OPENED, THEN WE'LL DEAL WITH THAT

7    ISSUE IF IT COMES UP.

8              MR. ARCHER:  I UNDERSTAND THEY'RE NOT TO BE ASKED

9    ABOUT IT AS WELL, BUT IS THE COURT INSTRUCTING THE GOVERNMENT

10   TO INFORM THEM OF THE COURT'S IN LIMINE RULING THAT THIS IS NOT

11   EVIDENCE THAT IS INTENDED TO BE INTRODUCED?

12             THE COURT:  I THINK I JUST SUGGESTED THAT TO

13   MS. PENNA, THROUGH ADVICE.

14        AND I SAY THAT ONLY BECAUSE, AGAIN, THE CONTEXT OF THIS

15   CASE IS A FAMILY LAW DISSOLUTION CASE AND I KNOW EMOTIONS RUN

16   HIGH AND I DON'T WANT A WITNESS TO SAY SOMETHING INAPPROPRIATE

17   WITHOUT SUFFICIENT KNOWLEDGE ABOUT THE COURT'S ORDER.

18        SO MS. PENNA IS NODDING HER HEAD THAT SHE'S GOING TO TALK

19   TO HER WITNESSES ABOUT THAT.

20        LET'S MOVE TO C, THE DEFENDANT'S LISTING OF AN AD ON

21   CRAIG'S LIST OF A PORSCHE FOR SALE FOR $1 AT MR. HESSENFLOW'S

22   ADDRESS CAUSING UNWANTED BUYERS TO ARRIVE AT THE HOUSE.

23             MS. PENNA:  YES, YOUR HONOR.  I THINK WE CAN MAYBE

24   LUMP THESE, 6, 7, AND 8, PERHAPS TOGETHER.  ALL OF THEM ARE

25   INSTANCES OF DIRECT CONTACT FROM THE DEFENDANT TO

```
1        MR. HESSENFLOW --

2               THE COURT:  OKAY.

3               MS. PENNA:  -- THAT DEMONSTRATE DIRECTLY AN INTENT TO

4    HARASS.

5               THE COURT:  OKAY.  LET'S START WITH NUMBER 10.

6    THAT'S PROBABLY THE EASIEST ONE FOR ME, ANYWAY.  THAT'S

7    MR. HESSENFLOW'S PERSONAL LOG AND DOCUMENT OF CONTACT WITH THE

8    DEFENDANT.

9          ISN'T THAT THE EASIEST ONE, MR. ARCHER?

10              MR. ARCHER:  I THINK IT IS, YOUR HONOR.

11         I DON'T SEE ANY BASIS FOR THAT BEING ADMITTED WHEN HIS

12   DIRECT TESTIMONY IS AVAILABLE, AND IT'S NOT SOME -- IT'S NOT A

13   BUSINESS RECORD.  I DON'T SEE ANY SORT OF HEARSAY EXCEPTION.  I

14   DON'T THINK IT'S A PRESENT SENSE IMPRESSION --

15              THE COURT:  IF HE WROTE IT CONTEMPORANEOUSLY IN TIME

16   WITH THE EVENT AND IT'S HIS RECORD AND HE TESTIFIED THAT "I HAD

17   A LOT OF CONTACT WITH MR. YORK."

18         "AND HOW DO YOU KNOW THAT?"

19         "I KNOW BECAUSE, WELL, I HAD CONTACT WITH HIM AND I

20   DOCUMENTED IT IN MY JOURNAL.  I FELT THAT IT WAS IMPORTANT

21   ENOUGH AND THERE WERE SO MANY, I COULDN'T REMEMBER, I

22   DOCUMENTED IT, HERE'S WHAT THEY ARE."

23         "WELL, COULD YOU READ THEM?"

24              MR. ARCHER:  I THINK HE COULD TESTIFY TO IT.  I DON'T

25   THINK THAT IT WOULD BE APPROPRIATE --
```

```
1              THE COURT:  FOR THE DOCUMENT ITSELF?

2              MR. ARCHER:  THE DEFENSE INTENDS TO OBJECT TO THE

3    DOCUMENT ITSELF.

4              THE COURT:  BEING INTRODUCED?

5              MS. PENNA:  IT'S THE GOVERNMENT'S POSITION THAT THE

6    DOCUMENT IS VALUABLE AND IT'S ADMISSIBLE BECAUSE IT WAS

7    COMPLETED DIRECTLY AFTER EACH INSTANCE OF CONTACT.

8    MR. HESSENFLOW HAS INDICATED THAT HE DIRECTLY TRANSCRIBED

9    EXACTLY WHAT HAPPENED OR WHAT WAS SAID OR THE CONTENTS OF WHAT

10   HAPPENED DIRECTLY AFTER EACH INSTANCE.

11             THE COURT:  CAN YOU TELL ME, IS IT -- WHAT IS IT?

12             MS. PENNA:  IT'S A SPREADSHEET JUST DOCUMENTING

13   DATES, TIMES, AND CONTENT OF CONTACT.

14             THE COURT:  IS IT A COMPUTER SPREADSHEET?

15             MS. PENNA:  IT IS.

16             THE COURT:  SO HE CREATED A COMPUTER SPREADSHEET?

17             MS. PENNA:  YES.

18             THE COURT:  AN EXCEL SPREADSHEET OF SOME SORT?  AND

19   HE'LL TESTIFY TO THAT?

20             MS. PENNA:  HE CAN TESTIFY TO THAT.

21             THE COURT:  OKAY.  ALL RIGHT.  WELL, LET ME JUST SAY,

22   AT THIS POINT I'M INCLINED TO ALLOW -- CERTAINLY HE'LL BE

23   PERMITTED TO TESTIFY ABOUT PERSONAL CONTACT.

24        I'M INCLINED AT THIS POINT -- I HAVEN'T SEEN THE DOCUMENT

25   YET, BUT SUBJECT TO ANY FOUNDATIONAL ISSUES, I'D OTHERWISE
```

1    PERMIT THE GOVERNMENT TO ALLOW HIM TO TESTIFY ABOUT THE

2    DOCUMENT, AND THEN IF THE APPROPRIATE FOUNDATION IS LAID, TO

3    OTHERWISE ALLOW IT TO BE ADMITTED.  THAT WAS 10.

4        LET'S MOVE UP TO 8, A PHOTOGRAPH OF DEFENDANT'S FACEBOOK

5    PAGE.

6             MS. PENNA:  YES, YOUR HONOR.

7        THIS FACEBOOK PAGE, WHICH HAS BEEN PROVIDED IN DISCOVERY,

8    IS A PHOTOGRAPH OF DEFENDANT'S POSTING THAT HE MADE ON HIS

9    FACEBOOK PAGE WHICH MADE SOME ALLEGATIONS ABOUT MR. HESSENFLOW

10   AND WAS VIEWED BY HIM, AND WE ADMIT THAT THAT GOES DIRECTLY TO

11   HIS INTENT TO --

12            THE COURT:  WHAT DID IT SAY?

13            MS. PENNA:  IT IMPLIED THAT MR. YORK'S CHILDREN WERE

14   IN DANGER WITH -- BECAUSE THEY WERE IN MR. HESSENFLOW'S CARE,

15   AND IT LISTED MR. HESSENFLOW'S ADDRESS FOR OTHERS, BASICALLY

16   SEEKING HELP.

17            THE COURT:  DO YOU HAVE A COPY OF THAT?

18            MS. PENNA:  I DO.

19            THE COURT:  AND IT'S DATED -- THE DATE AND TIME

20   ARE --

21            MS. PENNA:  IT IS --

22            THE COURT:  -- WITHIN THE TIME OF THIS TIME SCOPE?

23            MS. PENNA:  YES, YOUR HONOR.  I BELIEVE IT WAS A WEEK

24   AFTER THE IRS PHONE CALL.

25            THE COURT:  OKAY.

1          MS. PENNA:  I HAVE THE EXACT DATES, BUT IT WAS --

2     YES, A FEW WEEKS AFTER ON MARCH 17TH.

3          THE COURT:  DO YOU HAVE THIS AS WELL, MR. ARCHER?

4          MR. ARCHER:  I DO, YOUR HONOR.

5     (PAUSE IN PROCEEDINGS.)

6          THE COURT:  OKAY.  THANK YOU.

7     SO I HAVE A ONE-PAGE DOCUMENT, AND COULD YOU IDENTIFY --

8     IS IT THE ENTIRE PAGE THAT YOU'RE SEEKING TO INTRODUCE?

9          MS. PENNA:  IT'S THE FIRST POST.

10          THE COURT:  FIRST POST.

11          MS. PENNA:  AT THE TOP.

12          THE COURT:  AND I'M JUST GOING TO READ THIS.  IT HAS

13     A -- I DON'T HAVE FACEBOOK, SO I -- IT'S KIND OF NEW TO ME.

14     BUT IT SAYS DOUG YORK IN BOLD LETTERS, AND THEN BELOW THAT IT

15     INDICATES -- IT LOOKS LIKE THERE'S A PHOTOGRAPH OF SOME SORT.

16          MS. PENNA:  YES.

17          THE COURT:  IS THAT MR. YORK?

18          MS. PENNA:  YES, I BELIEVE, WHICH -- YES, IT IS.

19          THE COURT:  OKAY.  IT THEN IDENTIFIES WHOSE ACCOUNT

20     IT IS.

21          MS. PENNA:  YES, AND WHO'S TYPING.

22          THE COURT:  OKAY.  THEN IT READS, "MY EX-WIFE'S

23     DUDE," IT LOOKS LIKE EXCLAMATION MARK, "TOOK MY GIRLS UP TO HIS

24     PLACE ON THE SUMMIT OFF OF HIGHWAY 17.  MY GIRLS SHOULD OF

25     CALLED ME.  EVERYTIME I CALL MY EX IT WAS RINGING THEM TO

1    V MAIL.  NOW JUST TO VOICEMAIL.  NO REPLY TO TEXTS OR CALLS.

2    HE ANSWERED THE HOUSE PHONE BURT," B-U-R-T, "HUNG UP WHEN I

3    ASKED FOR MY GIRLS," EXCLAMATION MARK.  "THEY," IT LOOKS LIKE

4    A-L-E-A-Y-S "CALL TO SAY GOOD NIGHT.  IF ANYONE IS BY

5    TRAILRIDGE DRIVE, THE ADDRESS IS 23097 SUMMIT RD, LOS GATOS."

6         AND THEN IT SAYS LIKE, COMMENT, 19 HOURS AGO, TWO PEOPLE

7    LIKE THIS.

8         AND THAT'S THE INFORMATION THAT YOU'D LIKE TO INTRODUCE?

9              MS. PENNA:  YES, YOUR HONOR.

10             THE COURT:  SO WOULD THE REST OF THIS PAGE SOMEHOW BE

11   SANITIZED?

12             MS. PENNA:  YEAH.  WE CAN BLOCK EVERYTHING ELSE OUT.

13             THE COURT:  ALL RIGHT.  AND IS THERE A DATE THAT

14   IDENTIFIES THIS POSTING?

15             MS. PENNA:  I BELIEVE THERE IS.  I'D HAVE TO LOOK

16   CLOSER AT IT, BUT --

17             THE COURT:  I SEE AT THE BOTTOM IT SAYS 3-17-2012.

18             MS. PENNA:  YES, THAT'S THE DATE.

19             THE COURT:  OKAY.

20             MR. ARCHER:  I DON'T KNOW THAT THAT'S THE DATE, YOUR

21   HONOR, BUT I'LL LEAVE THAT TO THE GOVERNMENT'S FOUNDATIONAL

22   ISSUES.

23             THE COURT:  ASSUMING THAT A FOUNDATION IS LAID THAT

24   THIS WAS -- THAT THIS POSTING, AND THERE'S -- IF MR. ZUCKERBERG

25   OR SOMEBODY LIKE HIM IS CALLED TO LAY A FOUNDATION FOR FACEBOOK

1 AND ALL OF THAT, AND ASSUMING THAT THE DATE IS IN RELATIVE

2 CLOSE PROXIMITY TO THE FEBRUARY DATES, WHAT DO YOU THINK,

3 MR. ARCHER?

4   MR. ARCHER:  WE WOULD SUBMIT.

5   THE COURT:  ALL RIGHT.  THANK YOU.

6  ASSUMING THAT THE FOUNDATION CAN BE LAID AS TO FACEBOOK

7 AND THE POSTING, WHAT IT IS AND HOW IT WORKS -- AND I GUESS

8 YOU'RE GOING TO HAVE SOME EVIDENCE OF SOME TYPE THAT IDENTIFIES

9 THIS AS HIS ACCOUNT AS OPPOSED TO SOME RANDOM PERSON WHO'S

10 IDENTIFYING THEMSELVES AS MR. YORK?

11   MR. SCHENK:  YOUR HONOR, THIS WAS SENT TO ALLAN,

12 ALLAN HESSENFLOW, AND THAT IS A PHOTOGRAPH.  SO OUR INTENT IS

13 TO INTRODUCE IT AS WE WOULD ANY EVIDENCE THAT IS A PHOTOGRAPH

14 AND NOT AS A BUSINESS RECORD OF FACEBOOK.

15   THE COURT:  OKAY.  THANK YOU.

16   MR. SCHENK:  MR. HESSENFLOW CAN PROVIDE THAT CONTEXT

17 OF HIS FAMILIARITY WITH IT, HOW HE RECEIVED IT, AND ITS

18 CONTENT.

19   THE COURT:  UNDERSTOOD.  NOW I THINK I UNDERSTAND HOW

20 THIS IS GOING TO COME IN.

21  ALL RIGHT.  THANK YOU.

22  IT DOES APPEAR THEN, ASSUMING THAT THE TIMES I MENTIONED,

23 TIME AND DATE RATHER, THAT I MENTIONED, IT SEEMS LIKE IT'S IN

24 CLOSE PROXIMITY, IT DOES MENTION SPECIFICALLY VOICEMAILS AND

25 TEXTS AND CALLS, AND I THINK I WOULD -- I WILL -- I SHOULD SAY

1    I WILL PERMIT THE GOVERNMENT TO INTRODUCE THIS IN A REDACTED

2    MANNER, THAT IS, THE BALANCE OF THE POSTINGS WOULD NOT BE

3    PERMITTED AND THESE ADS ON THE RIGHT SIDE WOULD NOT BE

4    PERMITTED.

5         SO YOU CAN CLEAN THIS UP IF YOU WOULD AND PROVIDE THE

6    SANITIZED COPY, IF YOU WOULD, MS. PENNA, TO MR. ARCHER --

7              MS. PENNA:  YES.

8              THE COURT:  -- SO HE CAN LODGE ANY OBJECTIONS THAT HE

9    WISHES BEFORE YOU INTRODUCE IT.

10        ALL RIGHT.  THANK YOU.

11             MR. ARCHER:  I THINK I'LL ARRANGE THIS WITH OPPOSING

12   COUNSEL, BUT I'D LIKE AN OPPORTUNITY TO REVIEW THE PHOTOGRAPH.

13   I THINK THAT'S CERTAINLY A NOVEL APPROACH TO GETTING IN HEARSAY

14   AND AUTHENTICATING A PHOTOGRAPH AS SOMETHING ELSE.  BUT I --

15             THE COURT:  OKAY.

16             MR. ARCHER:  WE'LL WORK THAT OUT.

17             THE COURT:  OKAY.  THANK YOU.

18        THE CRAIG'S LIST, THE $1 PORSCHE THING.

19             MS. PENNA:  YES, YOUR HONOR.  I WILL PROVIDE YOU A

20   COPY OF THE PRINTOUT.  WE DO HAVE SUBPOENAED RECORDS FOR THIS

21   POSTING WHICH LINK THEM TO MR. YORK.

22             THE COURT:  OKAY.  THIS READS PORSH-$1, LOS GATOS.

23   AND IT LOOKS LIKE IT'S 85 TARGA CONVERT, C-O-N-V, BLACK, COME

24   GET IT, DIVORCE PAYOUT FOR YOU, YOU MIGHT AS WELL GET IT BEFORE

25   THE EX GETS IT.  AND THEN HAS A 23097 SUMMIT ROAD, LOS GATOS.

```
 1            MR. ARCHER.

 2            MR. ARCHER:  WHILE AMUSING, I THINK IT'S PREJUDICIAL

 3   AND CUMULATIVE GIVEN MR. HESSENFLOW'S TESTIMONY ABOUT HIS

 4   ANNOYANCE WITH MR. YORK AND HARASSING PHONE CALLS, SO WE'D

 5   OBJECT ON THOSE GROUNDS.

 6            THE COURT:  COULD HE TESTIFY ABOUT THIS WITHOUT THE

 7   DOCUMENT, MR. ARCHER?

 8            MR. ARCHER:  I SUPPOSE HE COULD.  IT MAY BE SUBJECT

 9   TO AN OBJECTION FOR BEING CUMULATIVE, BUT --

10            THE COURT:  THIS HAS A DATE OF 2-24-2012.

11            MS. PENNA:  YES, YOUR HONOR.  AND THAT WAS ALSO

12   VERIFIED BY THE CRAIG'S LIST RECORDS.

13            THE COURT:  SO THE RELEVANCE OF THIS THEN, MS. PENNA?

14            MS. PENNA:  YES, YOUR HONOR.

15        WE THINK THAT THIS DOCUMENT CLEARLY SHOWS EVEN AN EXTRA

16   STEP THAT WAS TAKEN TO INVOLVE OUTSIDE PEOPLE THAT ULTIMATELY

17   WERE ABLE TO THEN HARASS MR. HESSENFLOW BY HAVING THEM SHOW UP

18   AT HIS PROPERTY.  THERE WAS NO WAY OF KNOWING HOW MANY PEOPLE

19   WERE GOING TO SEE THAT AD, HOW MANY PEOPLE WERE GOING TO SHOW

20   UP.

21        IT WAS, YOU KNOW, AN EXTRA STEP TAKEN IN THE SAME PATTERN

22   THAT WE'VE BEEN TALKING ABOUT THAT SHOWS -- AND PEOPLE DID SHOW

23   UP, AS WE CAN PROVE, AND --

24            THE COURT:  HE'LL TESTIFY TO THAT?

25            MS. PENNA:  YES.
```

1          THE COURT:  SO THIS IS NOT RELATED TO COUNT ONE IT

2     SOUNDS LIKE SPECIFICALLY.  IT'S NOT AN ELEMENT OF COUNT ONE.

3          MS. PENNA:  YES, IT WOULD GO TO COUNT TWO.

4          THE COURT:  IT WOULD RELATE TO COUNT TWO,

5     TELECOMMUNICATIONS DEVICE HARASSMENT?

6          MS. PENNA:  YES, YOUR HONOR.

7          THE COURT:  AND --

8          MS. PENNA:  AND IT WOULD PROVE THE INTENT TO HARASS.

9          THE COURT:  SO IS THIS ONE OF THE 404(B) TYPE OF

10    EVIDENCE?

11         MS. PENNA:  WE WOULD ARGUE THAT IT GOES DIRECTLY TO

12    THAT ELEMENT.

13         THE COURT:  FOR COUNT TWO?

14         MS. PENNA:  YES, YOUR HONOR, TO SHOW THAT INTENT TO

15    HARASS OR ABUSE.

16         THE COURT:  SO COUNT TWO IS DIRECTLY RELATED TO THE

17    TELEPHONE CALL?

18         MS. PENNA:  YES, YOUR HONOR.

19         THE COURT:  AND THE FACT THAT HE POSTED THIS AD, I

20    GUESS THAT'S THE NEXUS.  WHAT'S THE NEXUS BETWEEN THE AD AND

21    THE PHONE CALL?

22         MS. PENNA:  THAT IT WAS THIS ONGOING PATTERN OF

23    HARASSMENT AIMED AT THIS ONE VICTIM, MR. HESSENFLOW.

24         THE COURT:  IT SEEMS LIKE THIS PROBABLY WOULD BE --

25    IT SEEMS LIKE THIS IS MORE REQUIRED 404(B) TYPE ANALYSIS.

1        MS. PENNA:  YES.  IF WE WENT THROUGH THAT ANALYSIS,

2    WE WOULD ARGUE THAT IT WAS ALSO -- THAT IT WOULD BE RELEVANT

3    BECAUSE IT'S INTERTWINED ESSENTIALLY WITH THE PHONE CALL ITSELF

4    AND IT TELLS A STORY TO THE JURY IN WHOLE THAT THERE WAS --

5    THIS WASN'T JUST AN ISOLATED INCIDENT, THAT JUST ONE WEEK

6    LATER, THIS PATTERN CONTINUED AND THAT THE DEFENDANT CAUSED

7    MORE EXAMPLES OF HIS INTENT TO HARASS THE VICTIM.

8        THE COURT:  MR. ARCHER?

9        MR. ARCHER:  IT CERTAINLY IS PART OF THE GOVERNMENT'S

10   BODY OF DOUGLAS BEING A JERK EVIDENCE.

11       THE -- I JUST DON'T -- YOU KNOW, IT'S MADE AFTER THE PHONE

12   CALL.  I'M VERY CONCERNED THAT THE JURY IS GOING TO BE CONFUSED

13   THAT THIS IS SOMETHING THAT WAS -- YOU KNOW, THAT THAT IS

14   EVIDENCE THAT THEY CAN CONVICT HIM BASED ON.

15       THIS IS A HARASSING COMMUNICATION, THAT SORT OF THING.

16   IT'S NOT ALLEGED IN THE INDICTMENT AND IT'S -- I THINK IT'S

17   VERY LIKELY TO BE CONFUSING TO THE JURY.

18       IT'S NOT -- THE GOVERNMENT'S THEORY, UNLESS I'M MISSING

19   SOMETHING, IS NOT THAT HE'S GUILTY BY A PATTERN OF HARASSMENT

20   BECAUSE THAT, IN FACT, IS NOT WHAT'S ALLEGED HERE.  NONE OF THE

21   OTHER PHONE CALLS CONSTITUTE -- EVEN TAKEN ON THEIR FACE, COULD

22   POTENTIALLY CONSTITUTE A FEDERAL CRIME.

23       THE ELEMENT OF THE OTHER PHONE CALLS, ET CETERA, THE OTHER

24   CONTACTS, MIGHT HAVE BEEN FODDER FOR A STATE PROSECUTION AT

25   SOME POINT THAT HAS LONG PASSED GIVEN THAT THIS WAS ALL IN

1    2012.

2         BUT I THINK THAT THIS IS CONFUSING TO A JURY TO SUGGEST

3    THEN THAT THEY CAN CONSIDER THIS AS EVIDENCE POTENTIALLY OF

4    HARASSMENT.

5         I DON'T THINK IT SURVIVES A 403 ANALYSIS.  I DON'T THINK

6    IT SURVIVES A 404(B) ANALYSIS BECAUSE IT'S -- IT'S PREJUDICIAL

7    MAKING DOUG LOOK LIKE A JERK.  IT ISN'T OUTWEIGHED BY ANY --

8    THERE'S NO PROBATIVE VALUE.

9         MR. HESSENFLOW KEPT EXTENSIVE LOGS.  THE GOVERNMENT

10   INTENDS TO INTRODUCE A SPREADSHEET SAYING THAT "I GOT PHONE

11   CALLS AT ALL TIMES," ET CETERA.  HIS DIRECT TESTIMONY IS PLENTY

12   OF THAT.

13        GOING DEEPER INTO THE NASTINESS THAT OCCURRED DURING THIS

14   DISSOLUTION PREJUDICES MR. YORK WITHOUT ADDING MUCH, IF ANY, TO

15   THE GOVERNMENT'S SUGGESTION THAT THIS IS PART OF THE INTENT OF

16   THAT ONE PHONE CALL, NOT THE INTENT OF A BODY OF PHONE CALLS,

17   BUT THE INTENT OF THAT ONE PHONE CALL WAS TO HARASS.  BECAUSE,

18   AGAIN, THE ALLEGATION IS NOT THAT HE MADE A SERIES OF PHONE

19   CALLS, THE BALANCE OF WHICH HARASSED.

20        THE DEFENSE CERTAINLY HAS ITS CONCERNS THAT THE GOVERNMENT

21   IS GOING TO EFFECTIVELY BE ASKING THE JURY TO CONVICT FOR THIS

22   BODY OF WORK THAT MR. YORK IS ALLEGEDLY RESPONSIBLE FOR AT THIS

23   TIME BECAUSE THAT'S NOT A FEDERAL CRIME, AND THAT'S THE

24   DEFENSE'S CONCERN IS THAT THE ONLY THING ALLEGED HERE IS THERE

25   IS ONE SPECIFIC INTERSTATE AND IDENTITY CONCEALED ALLEGATION.

```
 1          AND SO I THINK THIS FEEDS INTO THE DEFENSE'S CONCERN THAT
 2     IT'S GOING TO POISON THE JURY'S MIND ABOUT MR. YORK AND
 3     ENCOURAGE THEM TO CONVICT HIM BASED ON A BUNCH OF OTHER JUNK
 4     THAT HE WAS DOING CONTEMPORANEOUS TO THE ONE ALLEGED ACT IN THE
 5     SECOND COUNT OF THE INDICTMENT.
 6          THE COURT:  WELL, THOSE POINTS ARE WELL TAKEN.
 7          THIS AD WAS INTRODUCED THE DAY AFTER THE PHONE CALL
 8     ALLEGED IN COUNT TWO.  UNDER A 404(B) ANALYSIS, IT DOES APPEAR
 9     TO THE COURT THAT IT COULD GO TO SHOW INTENT, AS TO THE INTENT
10     ISSUE IN COUNT TWO, AND I'M OTHERWISE GOING TO PERMIT -- AT
11     LEAST AT THIS POINT, I WILL PERMIT THE AD TO BE AT LEAST
12     DISPLAYED TO THE JURY.
13          I DON'T THINK THEY NEED IT IN EVIDENCE.  IT'S A
14     DEMONSTRATIVE FROM THAT STANDPOINT.
15          HE -- ALLAN WOULD TESTIFY, I THINK, AS EVEN MR. ARCHER
16     SUGGESTED, ABOUT THE AD.  THIS COULD BE USED AS A DEMONSTRATIVE
17     IN THE COURTROOM AND GIVEN AN INSTRUCTION, A LIMITING
18     INSTRUCTION AS TO THE TESTIMONY AND THAT IT'S A DEMONSTRATIVE.
19          IN OTHER WORDS, THAT THIS IS NOT -- THE LIMITED PURPOSE OF
20     THIS IS JUST FOR THE ISSUE OF INTENT.
21          MS. PENNA:  OKAY.
22          MR. SCHENK:  YOUR HONOR, THE GOVERNMENT INTENDED TO
23     CALL SOMEONE FROM CRAIG'S LIST TO AUTHENTICATE THE DOCUMENT FOR
24     ADMISSION PURPOSES, AND ALSO TO LINK THE I.P. ADDRESS THAT
25     POSTED THIS AD TO THE DEFENDANT'S I.P. ADDRESS.
```

1      IF THE COURT'S RULING, THOUGH, IS THE DOCUMENT IS A

2   DEMONSTRATIVE, NOT TO BE ADMITTED, WE DON'T NEED CRAIG'S LIST

3   TO LAY THE FOUNDATION, THOUGH I WONDER IF WE'RE STILL GOING TO

4   NEED TO CALL SOMEONE FROM CRAIG'S LIST TO SAY THE DEFENDANT

5   POSTED THIS.

6      I MEAN, MR. HESSENFLOW CAN SAY, "I SURE SUSPECTED IT WAS

7   HIM, IT WAS AT THAT TIME AND HE WAS THE ONLY ONE WHO WAS

8   HARASSING ME AND I WAS SO CONCERNED, LOOK AT THIS LOG I KEPT OF

9   ALL OF THE INSTANCES THAT THIS PERSON HARASSED ME."

10      BUT THE SPECIFIC TESTIMONY SAYING THE I.P. ADDRESS THAT

11   POSTED THAT IS THE DEFENDANT'S COMES FROM CRAIG'S LIST.

12      WE DON'T WANT TO WASTE COURT TIME CALLING A WITNESS TO LAY

13   A FOUNDATION FOR A DOCUMENT THE COURT DOESN'T INTEND TO AND THE

14   GOVERNMENT, THEREFORE, WOULDN'T INTEND TO INTRODUCE INTO

15   EVIDENCE.

16      BUT I'M NOT SURE THAT WE GET THE ULTIMATE LINK THAT THIS

17   IS THE DEFENDANT WITHOUT A CRAIG'S LIST WITNESS, UNLESS THE

18   DEFENDANT WOULD ADMIT TO IT.

19           THE COURT:  I UNDERSTAND THAT.

20      MR. ARCHER, DO YOU HAVE A COMMENT ON THAT LAST QUESTION?

21           MR. ARCHER:  I DON'T HAVE A COMMENT.

22           THE COURT:  THANK YOU.

23      SO MR. ALLAN WOULD TESTIFY THAT HE SAW THIS AD, HE HAD A

24   BUNCH OF PEOPLE COMING TO HIS HOUSE, AND AS A RESULT OF THIS

25   AD, I GUESS HE TOOK SOME ACTION TO HAVE THE AD TAKEN DOWN.

1          MS. PENNA:  YES, YOUR HONOR.

2          THE COURT:  AT LEAST, THAT'S WHAT HE WOULD TESTIFY

3     TO.

4          YOU KNOW, MR. ARCHER, IN ALL FAIRNESS, THIS IS AN

5     INTERESTING ISSUE BECAUSE I DON'T WANT THE JURY TO SPECULATE

6     ABOUT WHETHER YOUR CLIENT ACTUALLY DID THIS OR NOT.  THAT WOULD

7     BE -- I DON'T THINK THAT'S FAIR.

8          BUT PERHAPS IF THE CRAIG'S LIST PEOPLE CAME IN AND SAID,

9     "WE TRACED IT TO HIS I.P. ADDRESS," THAT'S EQUALLY PREJUDICIAL

10    FOR YOUR CLIENT.  IT OTHERWISE WOULD ALLOW THE DOCUMENT TO BE

11    INTRODUCED AS EVIDENCE.

12         WHEN I WAS SUGGESTING IT AS A DEMONSTRATIVE, I THINK IT

13    JUST INDICATES THIS IS THE EXPERIENCE THAT THIS WITNESS HAD.

14         I'M GOING TO ALLOW IT AS A DEMONSTRATIVE AND I THINK

15    THAT'S ENOUGH.

16         I THINK HE, ALLAN, CAN TESTIFY ABOUT THE AD HE DISCOVERED,

17    THE CALLS HE WAS GETTING, THE ACTION HE TOOK TO TAKE IT DOWN,

18    AND YOU CAN SHOW THIS AND I'LL TELL THE JURORS THAT IT'S

19    ADMITTED FOR 404(B) TYPE EVIDENCE.

20         LET ME RETRACT THAT.  IF IT'S GOING TO BE 404(B), THEN IT

21    REALLY DOES NEED TO BE RELATED TO THE DEFENDANT, SO I THINK YOU

22    BETTER CALL THE WITNESS.  OTHERWISE I DON'T THINK IT IS 404(B)

23    EVIDENCE.  THEN IT'S JUST SPECULATIVE.

24         SO IF IT'S GOING TO BE INTRODUCED, YOU'VE GOT TO CALL A

25    WITNESS TO LAY A PROPER FOUNDATION.  I THINK THAT'S THE BETTER

1     WAY TO DO IT.

2              AND THEN I'LL ADMONISH THE JURY, AGAIN, AS I SAID.

3              MS. PENNA:  OKAY.

4              THE COURT:  OKAY.  THANK YOU FOR THE COPY.

5              MS. PENNA:  THANK YOU.

6              THE COURT:  AND THIS IS OVER YOUR OBJECTION,

7     MR. ARCHER.  I'LL NOTE YOUR OBJECTION.

8              MR. ARCHER:  THANK YOU, YOUR HONOR.

9              THE COURT:  I THINK THE LAST ITEM, IS IT -- IS IT THE

10    SECURITY CAMERA, VIDEO FOOTAGE?

11             MS. PENNA:  YES, YOUR HONOR.

12       MR. HESSENFLOW HAD INSTALLED A SECURITY CAMERA BECAUSE OF

13    ALL OF THIS THAT WAS GOING ON AND HE FOUND THAT ON -- WHAT WAS

14    THE DATE? -- ON THE 26TH OF THAT SAME MONTH, FEBRUARY, HE SAW

15    FOOTAGE THAT IN THE MIDDLE OF THE NIGHT, SOMEONE WHO

16    MR. HESSENFLOW IDENTIFIED THAT HE RECOGNIZED TO BE MR. YORK WAS

17    PROWLING AROUND THE FRONT PORCH OF HIS HOUSE IN THE MIDDLE OF

18    THE NIGHT, AND IT'S OUR POSITION THAT THAT DIRECTLY ALSO GOES

19    TO HIS INTENT TO HARASS OR THREATEN MR. HESSENFLOW.

20             THE COURT:  THAT WAS ON THE 25TH OF FEBRUARY?

21             MS. PENNA:  26TH.

22             THE COURT:  OF 2012?

23             MS. PENNA:  YES.

24             THE COURT:  AND IS HE GOING TO TESTIFY -- YOU'RE

25    ASKING THAT HE, NUMBER ONE, BE PERMITTED TO TESTIFY ABOUT HIM

```
1        LOOKING AT VIDEO FOOTAGE AND HE IDENTIFIED --

2               MS. PENNA:  YES.

3               THE COURT:  -- MR. YORK.  ARE YOU GOING TO PLAY THE

4    VIDEO AS WELL?

5               MS. PENNA:  WE HAD INTENDED TO PLAY IT.

6               THE COURT:  OKAY.

7          HAVE YOU SEEN THE VIDEO?

8               MR. ARCHER:  I HAVE, YOUR HONOR.

9               THE COURT:  OKAY.  WHAT'S YOUR POSITION?

10              MR. ARCHER:  I DON'T THINK IT SHOULD BE ADMITTED.

11         BUT IT DOESN'T LOOK LIKE MR. YORK, EITHER, SO THEY'RE

12   WELCOME TO PLAY THE VIDEO.

13              THE COURT:  IT DOESN'T LOOK LIKE MR. YORK?

14              MR. ARCHER:  YOU CAN'T IDENTIFY WHO'S IN THE VIDEO.

15              THE COURT:  OKAY.

16              MR. ARCHER:  I MEAN, I'M --

17              THE COURT:  SO HE'S GOING TO TESTIFY, "SOMEBODY I

18   BELIEVE IS MR. YORK WAS" --

19              MS. PENNA:  YES.

20              THE COURT:  -- "CAPTURED ON A VIDEO CAMERA"?

21              MS. PENNA:  YES.

22              THE COURT:  ALL RIGHT.  AND HOW LONG IS THE -- WHAT

23   IS THIS, A FEW SECONDS?

24              MS. PENNA:  YEAH.  IT'S VERY SHORT.

25              MR. ARCHER:  NOTHING FURTHER TO ADD.
```

```
 1              THE COURT:  AND WHAT DOES THIS GO TO THEN, MS. PENNA?

 2              MS. PENNA:  TO HIS INTENT TO HARASS OR ABUSE.

 3              MR. ARCHER:  I GUESS I SHOULD ADD, THERE WASN'T ANY

 4      CONTACT SUGGESTED.  I DON'T THINK -- WHAT'S BEING PROFFERED IS

 5      NOT THAT MR. HESSENFLOW WILL SAY THAT THIS DOCUMENTED SOME

 6      KNOCKING ON WINDOWS OR CONTACT WITH MR. HESSENFLOW, SO I'M NOT

 7      SURE HOW IT'S HARASSMENT, EVEN ASSUMING THAT IT'S MR. YORK.

 8              THE COURT:  SO WHAT'S THE -- IS HE ON THE PORCH?

 9              MS. PENNA:  HE'S ON THE FRONT PORCH, AND I WOULD

10      ARGUE THAT SOMEONE SHOWING UP ON SOMEONE'S PORCH IN THE MIDDLE

11      OF THE NIGHT IS CLEARLY SHOWING AN INTENT TO HARASS.

12              THE COURT:  SO, YOU KNOW, I SHOULD -- ARE YOU GOING

13      TO INTRODUCE THIS ON YOUR FIRST DAY OF EVIDENCE?

14              MR. SCHENK:  YES.

15              THE COURT:  SO I SHOULD PROBABLY LOOK AT IT.

16              MS. PENNA:  OF COURSE.

17              THE COURT:  I'D LIKE TO LOOK AT IT AND SEE WHAT IT

18      IS, WHAT WE'RE TALKING ABOUT.

19              MS. PENNA:  OF COURSE.

20              THE COURT:  SO WE CAN DO THAT AT -- WE CAN DO THAT

21      THIS AFTERNOON IF YOU'D LIKE, OR TOMORROW.

22              MS. PENNA:  SURE.  COULD WE E-MAIL A COPY TO YOU?

23      WOULD THAT BE -- THAT'S PROBABLY THE QUICKEST WAY WE CAN GET IT

24      TO YOU.  IF NOT, I CAN GIVE YOU A CD, WHATEVER.

25              THE COURT:  NO, THAT'S FINE IF YOU E-MAIL IT TO ME.
```

```
1            YOU CAN DO THAT, THE JUDGE SAID?

2       (LAUGHTER.)

3            MR. ARCHER:  I HOPE OUR GOVERNMENT E-MAIL SYSTEM CAN

4    HANDLE IT.  WE'LL SEE.

5            MS. PENNA:  TRUE.

6            THE COURT:  THAT'S FINE.  WHY DON'T I RECEIVE IT AND

7    THEN WE CAN DISCUSS IT AT SOME FUTURE POINT?

8            MS. PENNA:  OKAY.

9            THE COURT:  PERHAPS THAT MORNING.

10           MS. PENNA:  OKAY.

11           THE COURT:  OKAY.  I THINK THAT IS ALSO ON THE LIST

12   OF EXHIBITS.

13           MS. PENNA:  YES, YOUR HONOR.

14           THE COURT:  LET'S SEE WHERE WE'RE AT HERE.

15       OKAY.  DOES THAT TAKE CARE OF GOVERNMENT'S NUMBER 1?

16           MS. PENNA:  YES, I BELIEVE SO.

17           THE COURT:  LET'S MOVE THEN -- THANK YOU.

18       ANYTHING FURTHER ON GOVERNMENT'S NUMBER 1, MR. ARCHER?

19           MR. ARCHER:  NO, YOUR HONOR.

20           THE COURT:  LET'S MOVE TO GOVERNMENT'S NUMBER 2,

21   WHICH IS PRECLUDING IMPROPER EVIDENCE AND ARGUMENT, VICTIM'S

22   BAD ACTS AND CHARACTER EVIDENCE FOR UNTRUTHFULNESS AND

23   PUNISHMENT.

24       SO LET'S TALK ABOUT PUNISHMENT FIRST BECAUSE I THINK

25   THAT'S THE EASY ONE.
```

1          MR. ARCHER.

2              MR. ARCHER:  I SUBMIT ON MY PAPERS.

3              THE COURT:  I DON'T THINK -- WELL, AND I ADMONISH THE

4      JURY, AND THERE'S A JURY INSTRUCTION IN THE CASE, AS COUNSEL IS

5      WELL AWARE, THAT THE JURY IS NOT TO CONSIDER PUNISHMENT IN

6      DELIBERATIONS.  IN MY VOIR DIRE I TELL THEM THAT ALSO, THAT

7      THEY'RE NOT TO CONSIDER PUNISHMENT IN ANY WAY IN THIS CASE.

8          AND CERTAINLY COUNSEL AREN'T PERMITTED TO TALK ABOUT

9      PUNISHMENT IN ANY WAY, ABOUT THE SPECIFIC PENALTIES AND THIS

10     AND THAT.

11         THE ISSUE THAT MR. ARCHER RAISED IN HIS PLEADINGS ARE

12     SOMETIMES COUNSEL TALK ABOUT THE DISTINCTION BETWEEN CIVIL AND

13     CRIMINAL AND THE BURDENS OF PROOF AND THAT'S A COMMON VOIR DIRE

14     TOPIC THAT IS PERMITTED.

15         AND THEN SOMETIMES COUNSEL FOR DEFENSE WILL SAY, "YOU

16     UNDERSTAND THAT THIS IS DIFFERENT THAN CIVIL, CIVIL IS ABOUT

17     MONEY AND THIS IS ABOUT LIBERTY."  THAT'S A PHRASE THAT'S

18     FREQUENTLY USED IN COURTS.

19         MOVING ANYTHING FURTHER FROM THAT CAN BE PROBLEMATIC, OF

20     COURSE, AND I DON'T THINK MR. ARCHER IS GOING TO SAY, "YOU

21     UNDERSTAND MY CLIENT COULD GO TO FEDERAL PRISON FOR 30 YEARS IF

22     YOU CONVICT HIM," OR WHATEVER IT IS.  THAT'S OBVIOUSLY NOT

23     COMING IN.

24         I THINK COUNSEL UNDERSTAND THE LIMITATIONS.  I HOPE THEY

25     DO UNDERSTAND THE LIMITATIONS OF THIS.  COUNSEL AREN'T

1        PERMITTED TO TALK ABOUT PUNISHMENT IN THE CASE IN ANY WAY.

2            THE DISTINCTION BETWEEN CIVIL AND CRIMINAL IS APPROPRIATE

3        GIVEN THE BURDEN OF PROOF, AND THAT'S FINE.

4            ANYTHING FURTHER THAT EVEN HINTS AT A SUGGESTION THAT

5        THERE MIGHT BE INCARCERATION OR WHAT THE PUNISHMENT MIGHT BE IS

6        INAPPROPRIATE AND NEITHER SIDE WILL BE PERMITTED TO DISCUSS

7        THAT.

8            LET'S MOVE TO THE VICTIM'S BAD ACTS AND CHARACTER FOR

9        UNTRUTHFULNESS.  THIS IS WHAT I WAS TALKING ABOUT EARLIER.

10           MR. ARCHER:  IT IS, YOUR HONOR.

11       IT'S ALSO THE SUBJECT OF SOME DEFENSE CONCERN.  WE HAVEN'T

12       RECEIVED ANY GIGLIO OR BRADY MATERIAL ABOUT --

13           (PHONE RINGING).

14           THE COURT:  YOU HAD SOME APPLAUSE FOR YOUR

15       PRESENTATION.

16           (LAUGHTER.)

17           MR. ARCHER:  SO I DON'T KNOW -- I WOULD LIKE TO

18       INQUIRE AS TO WHETHER THE GOVERNMENT HAS ANY INTENT TO TURN

19       OVER ANY INFORMATION REGARDING MR. HESSENFLOW OR MS. YORK.

20           THE COURT:  OKAY.

21           MR. ARCHER:  BECAUSE I THINK IT EXISTS.

22           THE COURT:  OKAY.

23           MR. SCHENK:  HE KNOWS IT EXISTS.  WE SENT HIM AN

24       E-MAIL OFFERING TO EXCHANGE THE INFORMATION SUBJECT TO AN

25       INFORMAL PROTECTIVE ORDER.

```
 1          WE THOUGHT IT WAS RESPONSIBLE TO DO IT ATTORNEYS' EYES
 2     ONLY BECAUSE IT HAD PERSONALLY IDENTIFYING INFORMATION FOR
 3     VICTIMS, AND WE NEVER HEARD BACK.
 4          THE COURT:  OH.
 5          MR. ARCHER:  I DON'T THINK IT'S APPROPRIATE TO BE
 6     SUBJECT TO A PROTECTIVE ORDER.  I DON'T SEE ANY REASON THAT I
 7     WOULDN'T BE ABLE TO SHARE IT WITH MY CLIENT IN PREPARATION FOR
 8     TRIAL.
 9          THE -- HE HAS NOT VIOLATED ANY OF THE RESTRAINING ORDERS.
10     HE'S -- THIS IS THREE YEARS AGO, SO I THINK IT SHOULD BE TURNED
11     OVER BEFORE TRIAL, OR IMMEDIATELY.
12          THE COURT:  I'M SORRY.  SO YOU OFFERED TO TURN OVER
13     THIS INFORMATION SUBJECT TO A PROTECTIVE ORDER?
14          MR. SCHENK:  YES.
15          THE COURT:  AND THE PROTECTIVE ORDER WAS?
16          MR. SCHENK:  BETWEEN A DEFENSE LAWYER OR DEFENSE
17     INVESTIGATOR, AND I HONESTLY DON'T REMEMBER IF WE OFFERED THE
18     DEFENDANT OR NOT.
19          BUT IT IS CERTAINLY REASONABLE -- THIS INFORMATION IS
20     ALWAYS TURNED OVER WHEN IT CONTAINS PERSONALLY IDENTIFYING
21     INFORMATION SUBJECT TO -- WE CAN DO A FORMAL PROTECTIVE ORDER.
22     I THOUGHT WE COULD SHORT CIRCUIT THE PROCESS AND NOT INVOLVE
23     THE COURT AND JUST HAVE THIS AGREEMENT.
24          THE COURT:  SO IT SOUNDS LIKE THE PERSONAL
25     IDENTIFIERS OF THE INFORMATION, AT LEAST AS TO YOUR CLIENT, ARE
```

```
1      WHAT MIGHT HAVE THE GOVERNMENT CONCERNED.  DO YOU HAVE ANY

2      PROBLEMS WITH THAT?

3              MR. ARCHER:  NO, YOUR HONOR.

4              THE COURT:  SO MAYBE YOU CAN WORK THIS OUT.  I'LL LET

5      YOU CONTINUE TO DISCUSS IT, AND IT SOUNDS LIKE THERE IS SOME

6      INFORMATION THAT YOU'LL HAVE.  CERTAINLY YOU CAN SHARE

7      INFORMATION WITH YOUR CLIENT.

8         THE PERSONAL AND CONFIDENTIAL INFORMATION, IT'S PROBABLY

9      NOT NECESSARY FOR THE CONTENT OF THE EVIDENCE THAT WOULD BE

10     REDACTED.

11             MR. ARCHER:  I DON'T -- WAS IT PROPOSED REDACTED

12     INFORMATION?

13             MR. SCHENK:  IT DEPENDS.  THEY DIDN'T RESPOND TO OUR

14     REQUEST.

15         WE WOULD BE HAPPY TO GIVE THEM UNREDACTED IF IT WAS

16     DEFENSE LAWYER AND INVESTIGATOR.

17         WE WOULD BE HAPPY TO GIVE THEM REDACTED IF THEY DON'T WANT

18     TO SIGN THE PROTECTIVE ORDER AND ARE ONLY WILLING TO ACCEPT

19     WHAT WE'RE WILLING TO SHARE AND WHAT EVENTUALLY COULD BECOME

20     PUBLIC.

21             THE COURT:  IT SOUNDS LIKE YOU NEED TO MEET AND

22     CONFER ABOUT THIS.

23             MR. ARCHER:  WE WILL.

24             THE COURT:  ALL RIGHT.  VICTIM'S BAD ACTS AND

25     CHARACTER UNTRUTHFULNESS, IS THIS PART OF THAT INFORMATION
```

```
1    THEN?
2              MR. SCHENK:  YES, WE THINK SO.
3              THE COURT:  OKAY.  IT SOUNDS LIKE YOU'RE GOING TO GET
4    SOME INFORMATION, AND THEN I GUESS THERE WOULD BE A QUESTION AS
5    TO WHAT YOU INTEND TO DO WITH IT AND WHETHER OR NOT THE
6    GOVERNMENT HAS CONCERNS ABOUT WHAT YOU INTEND TO DO WITH IT,
7    AND WE DON'T KNOW THAT TODAY.
8              MR. ARCHER:  THAT IS CORRECT.
9              THE COURT:  OKAY.  LET ME -- I KNOW WE'RE GOING TO
10   START ON THE 25TH FOR JURY SELECTION.  DO EITHER OF YOU HAVE AN
11   INTEREST IN MEETING ON THE 24TH IN THE MORNING?
12             MS. PENNA:  YES, YOUR HONOR, THAT WOULD BE HELPFUL.
13             THE COURT:  MAYBE WE SHOULD DO THAT TO CLEAR UP THESE
14   OTHER ISSUES, MR. ARCHER.
15             MR. ARCHER:  I AGREE, YOUR HONOR.
16             THE COURT:  LET'S DO THAT THEN.  SHOULD WE SCHEDULE
17   THAT FOR -- LET'S DO THAT AT 10:00 O'CLOCK, PLEASE, ON THE 24TH
18   FOR FURTHER DISCUSSION OF IN LIMINE ISSUES AND ANY OTHER ISSUES
19   RELATING TO THE TRIAL.
20         DOES THAT EXHAUST OUR CONVERSATION FOR THE MORNING?
21             MS. PENNA:  I THINK SO.
22             MR. ARCHER:  YES, YOUR HONOR.
23             MR. SCHENK:  YES.
24             THE COURT:  OKAY.
25             MR. SCHENK:  THANK YOU.
```

1          THE COURT:  GREAT, THANK YOU.  THANKS FOR YOUR

2    PATIENCE THIS MORNING.

3          AND, MS. PENNA, I'LL RETURN THE PORSCHE AD.

4          MS. PENNA:  THANK YOU.

5          MR. ARCHER:  THANK YOU.

6          MS. PENNA:  THANK YOU, YOUR HONOR.

7       (THE PROCEEDINGS WERE CONCLUDED AT 11:14 A.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18        DATED:  FEBRUARY 11, 2016

19

20

21

22

23

24

25