```
 1                    UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                         SAN JOSE DIVISION

 3
         UNITED STATES OF AMERICA,
 4
                   PLAINTIFF,              CASE NO.  CR-15-0226-EJD
 5
            VS.                            SAN JOSE, CALIFORNIA
 6
         DOUGLAS STROMS YORK,              AUGUST 24, 2015
 7
                   DEFENDANT.              PRETRIAL
 8
                                          PAGES 1 - 33
 9

10                      TRANSCRIPT OF PRETRIAL
                 BEFORE THE HONORABLE EDWARD J. DAVILA
11                   UNITED STATES DISTRICT JUDGE

12
                        A-P-P-E-A-R-A-N-C-E-S
13

14      FOR THE PLAINTIFF:    OFFICE OF THE UNITED STATES ATTORNEY
                              BY:   BRIANNA PENNA
15                                  JEFFREY SCHENK
                              50 ALMADEN BOULEVARD, SUITE 900
16                            SAN JOSE, CALIFORNIA 95113

17
        FOR THE DEFENDANT:    OFFICE OF THE FEDERAL PUBLIC DEFENDER
18                            BY:   GRAHAM ARCHER
                                    HEATHER ANGOVE
19                            55 S. MARKET STREET, SUITE 820
                              SAN JOSE, CALIFORNIA 95113
20

21      OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                    CERTIFICATE NUMBER 8074
22

23         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
        TRANSCRIPT PRODUCED WITH COMPUTER.
24

25
```

1

2                        INDEX OF PROCEEDINGS

3
                                IDENT.          EVIDENCE
4
        GOVERNMENT'S:
5
        2, 3 & 7                                   20
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    SAN JOSE, CALIFORNIA                    AUGUST 24, 2015

2                    P R O C E E D I N G S

3       (COURT CONVENED AT 10:06 A.M.)

4              THE COURT:  ALL RIGHT.  LET'S GO ON THE RECORD HERE

5    IN THE YORK MATTER.  COUNSEL ARE PRESENT.  WHY DON'T I HAVE

6    COUNSEL MAKE THEIR APPEARANCES, PLEASE.

7              MS. PENNA:  BRIANNA PENNA FOR THE UNITED STATES.

8    GOOD MORNING, YOUR HONOR.

9              THE COURT:  THANK YOU.  GOOD MORNING.

10             MR. SCHENK:  AND JEFF SCHENK FOR THE UNITED STATES.

11   GOOD MORNING.

12             THE COURT:  THANK YOU.  GOOD MORNING.

13             MR. ARCHER:  GOOD MORNING, YOUR HONOR.

14   GRAHAM ARCHER FOR MR. YORK WHO IS PRESENT BEFORE THE COURT OUT

15   OF CUSTODY, AND I'M JOINED WITH AMY SENIA FROM OUR OFFICE, A

16   PARALEGAL, AND HEATHER ANGOVE, WHO THE COURT IS FAMILIAR WITH.

17             THE COURT:  GOOD MORNING EVERYONE.  THIS IS A

18   CONTINUING, I THINK, A PRETRIAL CONFERENCE IN THIS MATTER.  AND

19   I THINK THERE WERE A COUPLE OF ISSUES THAT WERE REMAINING.

20       LET ME JUST GO THROUGH SOME RECENT FILINGS AND RECOGNIZE

21   THOSE.  LET'S SEE.  I HAVE RECEIVED DOCUMENT 54, WHICH IS THE

22   GOVERNMENT'S AMENDED EXHIBIT LIST; I'VE RECEIVED DOCUMENT 55,

23   WHICH IS THE GOVERNMENT'S AMENDED WITNESS LIST; AND

24   DOCUMENT 56, WHICH IS THE GOVERNMENT'S AMENDED JURY INSTRUCTION

25   IN REGARDS TO COUNT 2.
```

```
 1          I HAVE FROM THE DEFENSE RECEIVED DOCUMENT 57, WHICH IS THE

 2     DEFENSE PROPOSED JURY INSTRUCTION; DOCUMENT 58, WHICH IS A

 3     PROPOSED VERDICT FORM, DEFENSE PROPOSED VERDICT FORM.

 4          I THINK THAT'S EVERYTHING THAT I HAVE RECEIVED SO FAR THAT

 5     WE HAVEN'T TALKED ABOUT.

 6          ANYTHING ELSE THAT I SHOULD NOTE?

 7              MR. ARCHER:  NO, YOUR HONOR.

 8              MS. PENNA:  YOUR HONOR, WE HAVE A ONE -- ANOTHER

 9     COPY OF AN AMENDED WITNESS LIST.  IT JUST HAS TWO SHORT

10     ADDITIONS ON THERE BREAKING UP ONE OF THE EXHIBITS.  THE FIRST

11     EXHIBIT AND THE SECOND EXHIBIT WILL NOW INCLUDE A SUBSECTION A

12     THAT INCLUDES A WRITTEN TRANSCRIPT OF THE AUDIO RECORDING.

13              THE COURT:  OKAY.  ALL RIGHT.  WE CAN -- I SUPPOSE

14     YOU SHOULD FILE THAT ALSO.

15              MS. PENNA:  YES, YOUR HONOR.

16              THE COURT:  AND I'LL GET THAT.  AND THANK YOU FOR

17     THAT BREAKDOWN.

18          I DID HAVE A COUPLE OF QUESTIONS THAT I'D LIKE TO ASK THE

19     DEFENSE BEFORE I GO FURTHER.

20          IN THE WITNESS LIST -- AND I DO HAVE A COPY.  I THINK YOU

21     PROVIDED A WITNESS LIST, MR. ARCHER.  DID YOU WANT ME TO

22     INDICATE YOUR CLIENT'S NAME ON THE LIST OF WITNESSES?

23              MR. ARCHER:  IN TERMS OF THE POTENTIAL?

24              THE COURT:  WHEN I READ A WITNESS LIST TO THE -- TO

25     OUR PANEL, I INCLUDE THE SUBMITTED NAMES FROM BOTH PARTIES.
```

1    AND IF YOU'D LIKE ME TO INCLUDE YOUR CLIENT, I CAN.  IF YOU'D

2    LIKE ME NOT TO PUT HIM ON THAT LIST WHEN I READ IT, I WON'T.

3              MR. ARCHER:  SINCE -- MY UNDERSTANDING IS THAT THE

4    PURPOSE OF THAT IS TO MAKE SURE THAT NONE OF THE JURORS KNOW

5    ANY OF THE PARTICULAR WITNESSES.  HE'S BEING INTRODUCED ANYWAY

6    AS A DEFENDANT, AND SO I DON'T THINK IT'S NECESSARY.

7              THE COURT:  OKAY.  SO YOU'D LIKE ME TO STRIKE HIS

8    NAME WHEN I READ THE PROPOSED WITNESSES, WHICH IS "WITNESSES

9    YOU MAY HEAR ARE," AND THEN I'LL READ THE NAMES?

10             MR. ARCHER:  YES.

11             THE COURT:  YOU'D LIKE ME TO STRIKE HIS NAME.  ALL

12   RIGHT.  I'LL DO THAT.

13        I THINK THAT LEAVES ONE WITNESS ON YOUR LIST TO READ.

14             MR. ARCHER:  THAT'S OUR INVESTIGATOR, CORRECT,

15   MR. COLE.

16             THE COURT:  AND THE NEXT ISSUE I HAVE ON MY LIST

17   WHICH I'D LIKE YOU TO DISCUSS WITH YOUR CLIENT, WHETHER YOU

18   WOULD, IF THERE ARE SIDE-BAR CONFERENCES, WHETHER YOU WOULD

19   WAIVE YOUR CLIENT'S APPEARANCE AT THE SIDE-BAR CONFERENCE.

20        (DISCUSSION OFF THE RECORD.)

21             MR. ARCHER:  YES, YOUR HONOR.  YES, YOUR HONOR.  IT

22   WILL BE OUR INTENTION TO WAIVE HIS APPEARANCES AT SIDE-BAR.

23             THE COURT:  THANK YOU.  YOU JUST HAD A DISCUSSION

24   WITH YOUR CLIENT ABOUT THAT?

25             MR. ARCHER:  I HAVE.

```
1                    THE COURT:  ALL RIGHT.  THANK YOU.  AND WE'LL NOTE

2        THAT.

3             ALL RIGHT.  LET ME INDICATE THAT ONE OF THE ISSUES THAT I

4        RECALL REMAINING FROM OUR LAST CONVERSATION WAS THE VIDEO,

5        SECURITY VIDEO, I GUESS I'LL CALL IT, AND WHETHER OR NOT THAT

6        SHOULD BE ADMITTED.

7             AND I THINK THE GOVERNMENT PROVIDED ME A COPY OF THAT ON A

8        DVD FORM AND I HAVE REVIEWED THAT.

9             AND LET ME ASK THE GOVERNMENT'S POSITION ON THE DVD.

10                   MS. PENNA:  YES, YOUR HONOR.  AS WE DISCUSSED

11       BRIEFLY IN OUR LAST PRETRIAL CONFERENCE, WE BELIEVE THAT THE

12       VIDEO WILL SPEAK TO THE DEFENDANT'S INTENT TO HARASS, WHICH IS

13       AN ELEMENT OF THE COUNT 2 IN THIS CASE AND IS, THEREFORE,

14       DIRECTLY RELEVANT TO THE CHARGE.

15                   THE COURT:  SO WHAT IS THE -- WHAT IS THE

16       GOVERNMENT'S INTENT?  WHAT IS YOUR INTENT, THEN, IN REGARDS TO

17       THE VIDEO?  CAN YOU JUST GIVE ME A PREVIEW.  WILL YOU INTRODUCE

18       THIS AS A DVD TAKEN?

19                   MS. PENNA:  A SECURITY CAMERA VIDEO FROM THE

20       VICTIM'S FRONT PORCH.

21                   THE COURT:  AND IS IT YOUR POSITION THAT THIS

22       IDENTIFIES THIS DEFENDANT?

23                   MS. PENNA:  YES.

24                   THE COURT:  AND THAT YOU WOULD OFFER THIS VIDEO IN

25       SUPPORT OF?
```

1          MS. PENNA:  OF THE INTENT TO HARASS THE VICTIM.

2          THE COURT:  OKAY.  MR. ARCHER.

3          MR. ARCHER:  I'M A LITTLE -- I DON'T THINK IT'S

4    RELEVANT, AND, IF ANYTHING, IF THERE'S SOME RELEVANCE TO IT,

5    IT'S CERTAINLY CUMULATIVE.  IT DOESN'T APPEAR TO BE MY CLIENT.

6    FRANKLY, I CAN'T TELL FROM THE VIDEO.

7          THE COURT:  YOU HAVE SEEN THE VIDEO?

8          MR. ARCHER:  ABSOLUTELY.  I'VE REVIEWED THE VIDEO

9    AND IT'S DARK AND YOU CAN'T SEE THE PERSON'S FACE, AND I

10   DON'T -- I DON'T KNOW THAT THERE'S ANY EVIDENTIARY VALUE TO

11   HAVING MR. HESSENFLOW COMING IN AND SPECULATING THAT HE THINKS

12   THIS PERSON, BASED ON -- AND FROM THE REPORTS THAT I'VE READ,

13   THE BEST THAT THE WITNESSES CAN DO IS THAT, YOU KNOW, IT LOOKS

14   LIKE A -- IT LOOKS LIKE THE SAME BUILD AS THE PERSON ON THE

15   PORCH.

16      AND SO I'M A LITTLE CONFUSED AS TO WHY THAT WOULD BE

17   RELEVANT WITHOUT AN ACTUAL IDENTIFICATION OF THE DEFENDANT SO.

18          THE COURT:  OKAY.

19          MS. PENNA:  THE VICTIM WOULD TESTIFY TO THE REASON

20   THAT HE BELIEVES THAT THE VIDEO DOES PORTRAY THE DEFENDANT FOR

21   RECOGNITION PURPOSES OF HIS BODY STANCE AS WELL AS HE FOUND --

22   THE REASON HE WAS ALERTED TO THE PRESENCE OF SOMEONE ON HIS

23   FRONT PORCH IN THE FIRST PLACE IS BECAUSE THE VIDEO CAMERAS

24   WERE ROLLING ON AN ONGOING BASIS AND THE REASON HE WENT BACK TO

25   REVIEW THAT ON THAT MORNING THAT HE LATER FOUND THE FOOTAGE OF

```
1      SOMEONE ON THE FRONT PORCH IN THE MIDDLE OF THE NIGHT WAS

2      BECAUSE THERE WAS SOME SORT OF PIECE OF PAPER OR HANDKERCHIEF

3      LEFT ON THE FRONT PORCH AND THEY WERE ABLE TO IDENTIFY

4      MR. YORK'S HANDWRITING AND NAMES AND PHONE NUMBERS OF KNOWN

5      FRIENDS OF THE DEFENDANT, AND THAT WAS ANOTHER REASON WHY THE

6      VICTIM WAS ABLE TO IDENTIFY THAT PERSON AS THE DEFENDANT.

7              THE COURT:  BUT THERE WAS AN ACTUAL PIECE OF PAPER

8      THAT WAS FOUND THE NEXT MORNING?

9              MS. PENNA:  YES, YOUR HONOR.

10             THE COURT:  AND HAD THIS?

11             MS. PENNA:  HANDWRITING AND JUST SOME NOTES AND

12     NAMES.

13             THE COURT:  HANDWRITING.

14             MS. PENNA:  AND THAT WAS WHAT FIRST ALERTED HIM THAT

15     SOMEONE HAD BEEN THERE AND THAT'S WHY HE WENT BACK AND THEN

16     REVIEWED THOSE VIDEO CAMERAS AND WHERE HE WAS ABLE TO FIND THE

17     FOOTAGE THAT WAS THERE.

18             THE COURT:  I SEE.

19             MR. ARCHER:  SO THE -- THAT THESE NUMBERS ARE

20     ASSOCIATED WITH PEOPLE THAT MR. YORK KNOWS IS NEWS TO ME.

21         THE IDENTIFICATION OF THE HANDWRITING IS SOMETHING THAT I

22     GUESS MR. HESSENFLOW THEN ASKED MS. YORK WHETHER SHE RECOGNIZED

23     IT AND SO --

24             THE COURT:  I'M SORRY.  DID YOU SAY HE DID OR

25     DIDN'T?
```

1          MR. ARCHER:  OH, MR. HESSENFLOW ASKED MS. YORK

2     WHETHER SHE RECOGNIZED THE HANDWRITING AND SO I DON'T KNOW IF

3     IT'S THE GOVERNMENT'S INTENTION TO HAVE MR. HESSENFLOW TESTIFY

4     AS TO WHAT MS. YORK SAID ABOUT THE HANDWRITING IDENTIFICATION

5     FOR SOMETHING SCRIBBLED ON THE NAPKIN TO TRY TO SHOW THAT THIS

6     IS SOMEBODY STANDING ON THE FRONT PORCH.

7          MS. PENNA:  AND WE WOULD ARGUE IT'S NOT HEARSAY

8     BECAUSE WE'RE NOT HERE OFFERING IT FOR THE TRUTH OF THE

9     STATEMENTS ON THAT.

10          THE COURT:  OKAY.  SO I DID -- I REVIEWED THE VIDEO

11    A FEW TIMES AND I HAVE TO TELL YOU IT APPEARS -- IT'S BLACK AND

12    WHITE AND IT'S GRAINY, AS THESE THINGS ARE, IT'S NOT -- IT'S

13    RESIDENTIAL AND IT'S NOT COMMERCIAL.  AND THE FIGURE, IT

14    DEPICTS A FIGURE THAT LOOKS LIKE IN A JUMPSUIT OF SOME SORT AND

15    APPARENTLY THERE'S A LIGHTING -- SOME TYPE OF ILLUMINATED

16    DEVICE, FLASHLIGHT FLASHING AT THE CAMERA.  IT SOMEWHAT

17    OBSCURES.

18       YOU CAN'T REALLY -- I COULDN'T, AND I INVITE YOU TO

19    COMMENT -- COULDN'T MAKE OUT THE GENDER OF THE INDIVIDUAL.

20    WHEN I LOOKED AT IT, THE FLASHLIGHT WAS HELD IN SUCH A MANNER

21    THAT IT OBSCURED THINGS.  WHEN THE FLASHLIGHT WAS LOWERED,

22    THERE WERE TWO BRIGHT IMAGES WHERE I SUPPOSE EYES WOULD BE, AND

23    IF YOU'LL PARDON ME, I DON'T MEAN TO BE FLIP, BUT I LOOKED AT

24    IT AND I THOUGHT THIS REMINDS ME OF THE SAND PEOPLE FROM THE

25    "STAR WARS MOVIE" BECAUSE THERE ARE TWO EYES AND THEN THERE'S

1    COVERED HEADS AND THERE'S TWO ARMS, OF COURSE, AND LEGS, BUT I

2    COULDN'T REALLY DISCERN ANY OTHER HUMAN FEATURES.  IT ALMOST

3    LOOKS LIKE THE PERSON HAD A HOOD ON SAVE FOR MAYBE THEIR NIGHT

4    VISION GOGGLES, I DON'T KNOW WHAT THOSE LOOK LIKE.  AND I

5    APOLOGIZE.  THAT WAS THE, RATHER, FIRST THING THAT CAME TO MY

6    MIND, THESE ARE RATHER TALL PEOPLE, TALL SAND PEOPLE.

7         YOU CAN'T TELL THE DIGITS ON THE HANDS.  IT LOOKS LIKE THE

8    PERSON HAD GLOVES.

9         NOW, HAVING SAID THAT, IT'S CREEPY, TO USE A LEGAL TERM, I

10    SUPPOSE, IT'S A VERY DISTURBING, DISTURBING IMAGE, IF THE TIME

11    IS RIGHT AND IT WAS 2:18 IN THE MORNING, OR SOMETHING LIKE THAT

12    AS I RECALL, IT'S DISTURBING THAT THE VIDEO CAMERA WOULD

13    CAPTURE THIS INDIVIDUAL CLEARLY ON A PORCH, CLEARLY WITH NO

14    APPARENT BUSINESS THERE BECAUSE IT APPEARS THAT THERE IS KIND

15    OF MOVEMENT BACK AND FORTH IN A 5 FOOT AREA OR SOMETHING.

16         BUT IT'S DISTURBING.  BUT I DON'T THINK WE CAN MAKE -- I

17    COULDN'T MAKE THE IDENTIFICATION OF THE INDIVIDUAL, NUMBER ONE,

18    THE GENDER OF THE PERSON; AND, NUMBER TWO, WHETHER OR NOT IT

19    WAS THIS DEFENDANT OR SOMEONE ELSE.  SO THAT CAUSES ME CONCERN

20    ABOUT ADMITTING IT WITHOUT A PROPER OTHERWISE SOMEBODY SAYING

21    THIS IS -- THAT'S HIM AND I RECOGNIZE HIM.

22         BUT I OFFER THAT OBSERVATION TO YOU.

23              MS. PENNA:  AND WE UNDERSTAND THE COURT'S CONCERNS

24    AND ALTHOUGH THE WITNESS HAS AND WOULD TESTIFY THAT HE DOES

25    RECOGNIZE THE BODY STANCE OF THE DEFENDANT, WE DO UNDERSTAND

1    THE CONCERNS OF THE COURT AND THE VIDEO IS NOT THE BEST

2    QUALITY.

3        BUT WE WOULD ASK THAT IF THE COURT FEELS THAT IT SHOULD

4    NOT BE ADMITTED, THAT MR. HESSENFLOW WOULD BE ABLE TO TESTIFY

5    AS IN SOME OF THE OTHER INSTANCES OF CONTACT THAT HE HAD WITH

6    THE DEFENDANT THAT HE DOCUMENTED IN THIS LOG AS WE DISCUSSED

7    THAT HE WOULD BE ABLE TO DISCUSS THIS INSTANCE JUST ON THE

8    STAND WITHOUT BRINGING IN THE VIDEO.

9            THE COURT:  WELL, THAT WOULD ALLOW HIM -- YOU'RE

10   ASKING THAT HE BE ALLOWED TO SAY I ALSO TOOK -- SAW VIDEO

11   FOOTAGE AND I THINK IT'S HIM.

12           MS. PENNA:  YES, YOUR HONOR.

13           THE COURT:  IN ESSENCE IS THE BEST HE CAN DO I

14   SUPPOSE.

15           MR. ARCHER:  YOUR HONOR, I THINK THE COURT HAS

16   SUMMARIZED IT QUITE WELL.  IT OBVIOUSLY HAS NO PROBATIVE VALUE

17   BECAUSE IF IT'S INTENT TO HARASS, RIGHT, THERE'S NO INDICATION

18   THAT HE CAME IN CONTACT WITH MR. HESSENFLOW AT THAT POINT.

19       IN FACT, YOU KNOW, THE PROFFER FROM THE GOVERNMENT IS THAT

20   HE CAME BACK LATER ON AND REVIEWED FOOTAGE TO SEE THIS GUY

21   STANDING ON THE FRONT PORCH.  OBVIOUSLY I AGREE WITH THE COURT,

22   IT'S A CREEPY IMAGE AND DISTURBING THAT SOMEONE IS WALKING OUT

23   ON YOUR PORCH IN THE MIDDLE OF THE NIGHT.

24       BUT IN TERMS OF INTENT TO HARASS WITHOUT ANY

25   IDENTIFICATION OF THAT PERSON AND HAVING NO ACTUAL CONTACT, AND

```
1    IF THE PERSON IS BANGING ON THE WINDOWS AND THAT SORT OF THING,

2    I UNDERSTAND THERE WOULD BE A BETTER ARGUMENT FOR HARASSMENT

3    BUT WHAT MARGINAL ADDITIONAL INFORMATION IT PROVIDES THE JURY

4    ABOUT MR. YORK'S INTENT TO HARASS WHEN THERE'S GOING TO BE ALL

5    SORTS OF OTHER TESTIMONY ABOUT REPEATED PHONE CALLS AND TO SOME

6    EXTENT A DISSOLUTION AND HARASSMENT ON MR. YORK'S PART,

7    BALANCED AGAINST MR. HESSENFLOW'S, WHAT IS THE DEFENSE

8    PERSPECTIVE TO SCARE THE JURY AND IMAGINING MR. YORK STANDING

9    ON THE FRONT PORCH AT 2:00 IN THE MORNING, WHICH IS INCREDIBLY

10   DISTURBING -- NO OFFENSE TO YOU, DOUG -- BUT IT'S A DISTURBING

11   THING TO HAVE 12 JURORS TO BE CONSIDERING SOME STRANGER

12   STANDING ON A FRONT PORCH.

13        SO I THINK IT'S INCREDIBLY PREJUDICIAL AND DOESN'T ADD

14   ANYTHING TO WHAT WE'RE TALKING ABOUT HERE WHICH IS A VOICEMAIL

15   LEFT FOR MR. HESSENFLOW WHICH IS WHAT THE GOVERNMENT BELIEVES

16   MAKES THIS A FEDERAL CRIME SO.

17            MS. PENNA:  AND, YOUR HONOR, WE WOULD ARGUE THAT

18   THIS IS, YES, IT IS ABOUT A PHONE CALL BUT ONE OF THE ELEMENTS

19   OF THE CRIME IS THAT WE MUST PROVE INTENT TO HARASS THAT IS

20   SHOWN BY THIS SIMILAR PATTERN OF HARASSMENT AND THE ARGUMENTS

21   THAT THE DEFENSE IS MAKING, WE BELIEVE, THAT THEY CAN BE

22   PROPERLY PUT INTO THE CROSS-EXAMINATION OF THE WITNESS AT THAT

23   TIME AND THAT IT SHOULDN'T GO TO THE ADMISSIBILITY OF HIS

24   TESTIMONY.

25            THE COURT:  OKAY.  WELL, THANK YOU.
```

1      YOU KNOW, MS. PENNA, I THINK IT IS, LOOKING AT THIS FROM A

2   403 ANALYSIS, FIRST OF ALL, I DON'T THINK THERE'S BEEN

3   SUFFICIENT IDENTITY MADE AS TO WHETHER OR NOT THIS INDIVIDUAL

4   WAS THE DEFENDANT OR NOT.  SO I HAVE PROBLEMS ALLOWING SOMEONE

5   TO TESTIFY "I THINK IT'S HIM."

6      CIRCUMSTANTIALLY, OF COURSE, AN ARGUMENT CAN BE MADE THAT

7   THERE WAS AT LEAST A BRIEF HISTORY OF CONTACT AND WHO ELSE

8   WOULD IT BE, I SUPPOSE, IS THE ARGUMENT, BUT I DON'T THINK

9   THAT'S STRONG ENOUGH.

10     IT IS, IT IS, YOU KNOW, CREEPY.  IF THE TIME IS CORRECT ON

11  THAT VIDEO, IT'S 2:18, 2:00 IN THE MORNING, AND THERE'S AN

12  INDIVIDUAL WHO IS DRESSED, IT LOOKS LIKE, IN COMPLETE OVERALLS

13  AND THE FACE IS OBSCURED AND COVERED AND THERE ARE GLOVES ON,

14  THAT IS DISTURBING BEHAVIOR, BUT WITHOUT AN IDENTIFICATION, I

15  DO THINK IT WOULD CAUSE A JURY TO SPECULATE EVEN MORE AND MAKE

16  SPECULATIONS ON JUST THE CREEPINESS, PARDON ME, OF THE EVENTS.

17     SO I'M NOT GOING TO ADMIT THE VIDEO.  I DO THINK THAT IT

18  IS MORE PREJUDICIAL THAN PROBATIVE.

19     THE TESTIMONY THAT YOU'RE ASKING THAT THE WITNESS ALSO

20  INDICATED REGARDING THE VIDEO ALSO WOULD NOT BE PERMITTED.  SO

21  HE WOULD NOT BE PERMITTED TO TALK ABOUT THE FACT THAT HE

22  CAPTURED THE IMAGE ON THAT DATE CONCURRENT WITH THAT.

23          MS. PENNA:  OKAY.

24          THE COURT:  ALL RIGHT.  THANK YOU.  AND I WAS TRYING

25  TO REVIEW MY NOTES ABOUT OTHER ISSUES LEFT UNRESOLVED.  LET ME

1    ASK THE ONE, I HAD ASKED YOU TO COLLABORATE IF YOU COULD TO

2    DEVELOP A JOINT NEUTRAL STATEMENT.  I DIDN'T RECEIVE THAT SO

3    THAT IS CIRCUMSTANTIAL EVIDENCE THAT THAT DID NOT OCCUR, I

4    SUPPOSE.

5             MR. ARCHER:  I CAN PROVIDE DIRECT EVIDENCE THAT WE

6    DID MEET AND CONFER, AND WE WERE UNABLE TO REACH A JOINT

7    STATEMENT.

8             MS. PENNA:  I THINK AT THIS TIME WE BOTH HAVE OUR

9    SEPARATE JOINT STATEMENT OR OUR SEPARATE STATEMENT TO SUBMIT TO

10   THE COURT.

11            THE COURT:  WELL, I'M HAPPY TO RECEIVE THOSE AND

12   LOOK AT THEM, AND I WILL READ A STATEMENT.  IT COULD BE THAT

13   I'LL READ THE INDICTMENT TO THEM, TO THE JURY AS WELL, BUT I'M

14   HAPPY TO RECEIVE YOUR SUBMISSIONS FOR CONSIDERATION.  AND YOU

15   CAN GIVE THOSE TO MS. GARCIA AT THE CONCLUSION OF THE

16   PROCEEDINGS TODAY.

17        LET ME ASK THE GOVERNMENT, WHAT OTHER ISSUES?

18            MS. PENNA:  YOUR HONOR, WE HAVE CERTIFICATIONS THAT

19   WE HAVE FOR CERTAIN WITNESSES THAT WE ARE GOING TO CALL TO

20   ADMIT BUSINESS RECORDS.  WE HAVE CERTIFICATION RECORDS AND WE

21   ARE ASKING THE COURT TO ADMIT THOSE UNDER 902(11) AS BUSINESS

22   RECORDS.

23            THE COURT:  OKAY.  IS THERE OBJECTION FROM THE

24   DEFENSE ON THIS?

25            MR. ARCHER:  THE TRIAL HASN'T STARTED, YOUR HONOR.

1    I DON'T KNOW WHAT -- THIS DOESN'T SEEM LIKE AN APPROPRIATE

2    JUNCTURE TO DO THAT.

3              THE COURT:  WELL, I THINK THEY'RE GIVING NOTICE THAT

4    THEY WOULD LIKE TO ADMIT THESE NOW, AND IT SOUNDS LIKE THERE'S

5    QUALIFYING WITNESSES THAT WOULD OTHERWISE HAVE TO BE CALLED.

6              MS. PENNA:  YES, YOUR HONOR.

7              MR. SCHENK:  YOUR HONOR, THE ADVANTAGE TO THE COURT

8    RULING ON THEM NOW, AND IF THERE'S NO OBJECTION, OR EVEN IF

9    THERE'S AN OBJECTION, FRANKLY, I THINK COURT SHOULD DO IT NOW,

10   BUT CERTAINLY WITH NO OBJECTION, THE GOVERNMENT WON'T CALL

11   THESE OUT-OF-TOWN WITNESSES.  THEY WON'T FLY IN.  WE CAN TELL

12   THE COURT MORE ACCURATELY OUR PROJECTED LENGTH OF TRIAL.

13        THERE ARE THREE EXHIBITS ON THE GOVERNMENT'S EXHIBIT LIST

14   THAT ARE BANK RECORDS, AND THEY ALL HAVE ACCOMPANYING

15   CERTIFICATIONS FROM CUSTODIANS THAT WE HAVE PROVIDED TO THE

16   DEFENSE.  THEY'RE KEPT IN THE NORMAL COURSE OF BUSINESS AND AS

17   A RESULT FIT SQUARELY WITHIN THE TYPE OF RECORDS THAT 902(11)

18   ASKS THE COURT TO CONSIDER IF THE GOVERNMENT SEEKS TO OFFER

19   UNDER THAT SECTION ITS ADMISSION AND IT IS APPROPRIATE TO ADMIT

20   IT PRETRIAL, AND THE GOVERNMENT WILL MOVE IT INTO EVIDENCE

21   DURING THE TRIAL BUT TO KNOW NOW WHETHER THE COURT WILL ADMIT

22   UNDER THIS BASIS PREVENTS US FROM NEEDING TO CALL THESE

23   WITNESSES.

24             THE COURT:  I GUESS THE QUESTION IS, IS THERE A

25   SUFFICIENCY ON THE FOUNDATIONAL PART TO ALLOW THE COURT TO

```
1    ADMIT THEM?  AND I THINK THIS IS PREFATORY TO THEIR ADMISSION,

2    MR. ARCHER.

3              MR. ARCHER:  UNDERSTOOD, YOUR HONOR.  AND I GUESS

4    MY -- THE DEFENSE OBJECTION WOULD BE MORE SORT OF THE -- I

5    MEAN, WE HAVE, FOR INSTANCE, WE HAVE 31 PAGES.  THIS IS

6    GOVERNMENT'S EXHIBIT, PROFFERED EXHIBIT VERIZON WIRELESS

7    RECORDS, AND 31 PAGES OF PHONE RECORDS FROM PAMELA BEALE.

8         I WOULD HAVE SOME OBJECTION TO ALL OF THAT BEING ADMITTED.

9    I DON'T -- I MEAN, WE HAVE IT FOR A NUMBER OF OTHER DATES AND

10   INCLUDING DATES WELL BEYOND THE OFFENSE DATE.

11        SO THE DEFENSE INTENDS TO OBJECT TO CERTAIN PORTIONS OF

12   WHAT THE GOVERNMENT INTENDS TO OFFER BUT IN TERMS OF A

13   CERTIFICATION OF DOCUMENTS, I'D BE HAPPY TO GO THROUGH, IF THE

14   GOVERNMENT WANTS TO GO THROUGH WITH THE COURT WHAT ITS

15   INTENTION IS FOR EACH OF THOSE DOCUMENTS, I'LL BE HAPPY TO

16   DISCUSS THOSE NOW.

17             MR. SCHENK:  YOUR HONOR, THE GOVERNMENT MOVES IN

18   EVIDENCE 2, 3, AND 7 BASED ON THE CERTIFICATIONS.

19        IF MR. ARCHER IS SAYING THAT HE'S GOING TO OBJECT TO THE

20   SCOPE OF THE EXHIBIT, I THINK THAT THAT'S FINE, AND THE COURT

21   CAN ENTERTAIN THAT OBJECTION NOW OR AT THE TIME THE OBJECTION

22   IS MADE.

23        BUT IF THE OBJECTION IS NOT TO THE AUTHENTICITY OF THE

24   EXHIBIT, IT'S NOT TO THE FACT THAT IT IS A BUSINESS RECORD

25   MAINTAINED IN THE ORDINARY COURSE, THE EXHIBIT SHOULD BE
```

```
 1     ADMITTED SUBJECT TO A DIFFERENT TYPE OF OBJECTION.

 2             THE COURT:  WELL, THAT'S WHAT MY QUESTION IS,

 3     MR. ARCHER.  IT SOUNDS LIKE, AND I DON'T MEAN TO PUT WORDS IN

 4     YOUR MOUTH, BUT IT SOUNDS LIKE THERE'S NOT GOING TO BE, FROM

 5     THE DEFENSE, A FOUNDATIONAL OBJECTION BASED ON WHAT YOU

 6     RECEIVED FROM THE GOVERNMENT FOUNDATION.

 7         HOWEVER, YOU DO HAVE AND WOULD RESERVE OBJECTIONS AS TO

 8     THE SCOPE AND EXTENT OF SOME OF THE EXHIBITS REGARDING PHONE

 9     CALLS THAT MIGHT BE TAKEN UP AND IF THE COURT AGREES WITH YOU

10     REDACTED FROM ADMISSION.

11             MR. ARCHER:  I GUESS IF I COULD INQUIRE OF THE

12     GOVERNMENT, AND I THINK IT'S AT THEIR LEISURE TO RESPOND, WHAT

13     WOULD THE EXHIBIT LIST LOOK LIKE WERE THESE TO ALL COME IN

14     WITHOUT DEFENSE OBJECTION?

15         WHAT WOULD THE WITNESS LIST LOOK LIKE WERE THESE TO COME

16     IN?

17             MR. SCHENK:  I'M HAPPY TO ENTERTAIN THE QUESTION.

18     IF THESE THREE EXHIBITS COME IN, THE GOVERNMENT -- AND I THINK

19     THAT'S ANOTHER TOPIC THAT WE SHOULD DISCUSS WITH YOUR HONOR AND

20     IT APPEARED ON THE ONLINE CALENDAR FOR THIS COURT, THE COURT

21     MAY HAVE GIVEN US TIME NOW ON WEDNESDAY, THAT COULD CREATE

22     WITNESS SCHEDULING ISSUES FOR THE GOVERNMENT BECAUSE OF PLANE

23     TRAVEL THAT WE ARRANGED.

24         WE HAVE THREE WITNESSES IF THESE EXHIBITS COME IN, AND WE

25     THINK THAT EVEN IF JURY SELECTION TAKES ALL DAY TOMORROW, AND
```

1    THE COURT GIVES US A FULL DAY FRIDAY, WE WILL REST ON FRIDAY.

2              THE COURT:  SO LOOKING AT DOCUMENT 55, WHICH IS THE

3    AMENDED WITNESS LIST, THE GOVERNMENT'S AMENDED EXHIBIT LIST.

4              MS. PENNA:  YES, YOUR HONOR.

5              THE COURT:  IT HAS SIX WITNESSES NOW.  ARE THOSE 4,

6    5, AND 6 OR 4 AND 5?

7              MR. SCHENK:  IT'S 4, 5, AND 6 ARE THE WITNESSES FOR

8    THE EXHIBITS 2, 3, AND 7, ALTHOUGH NOT PROSPECTIVELY.

9         THE GOVERNMENT WILL STILL CALL THE FOURTH WITNESS, NATHAN

10   COOPER, BECAUSE HIS TESTIMONY IS NECESSARY FOR MORE CONTEXT ON

11   WHAT SPOOFCARD IS AND WHAT YOU CAN DO.

12        BUT IT WILL SAVE THE FOUNDATION QUESTIONS OF THE

13   GOVERNMENT TO PUT TO MR. COOPER TO ADMIT THEM UNDER THIS BASIS.

14        SO THE GOVERNMENT WOULD CALL ONLY NUMBER 1, NUMBER 3, AND

15   NUMBER 4.

16             MR. ARCHER:  YOUR HONOR, I THINK RESERVING OBJECTION

17   AS TO THE DOCUMENTS THEMSELVES ON A NUMBER OF GROUNDS, I DON'T

18   THINK WE WOULD HAVE AN OBJECTION TO THE CERTIFICATIONS AND THE

19   ADMISSION BY CERTIFICATION OF THESE DOCUMENTS.

20             THE COURT:  ALL RIGHT.  THANK YOU.  AND WE'RE

21   REFERRING AGAIN TO 2, 3, AND 7, I THINK IT IS.

22             MS. PENNA:  YES.

23             MR. SCHENK:  YES.

24             THE COURT:  ALL RIGHT.  THANK YOU.  ANYTHING

25   FURTHER, THEN ON THIS, MR. ARCHER?

1          MR. ARCHER:  NO.

2          THE COURT:  THEN THANK YOU.  AT THIS TIME AT

3    PRETRIAL I WILL ADMIT 2, 3, AND 7.  THOSE WILL BE ADMITTED FOR

4    PURPOSES OF THE FOUNDATIONAL ISSUE.

5          THE DEFENSE STILL RESERVES THE RIGHT TO DISCUSS AND ARGUE

6    AND STATE ANY OBJECTIONS AS TO CONTENT, SCOPE OF THOSE

7    EXHIBITS, AND WE CAN TAKE THAT UP EITHER THIS MORNING IF YOU'D

8    LIKE OR AT AN APPROPRIATE TIME PRIOR TO THE DOCUMENTS FORMALLY

9    BEING PRESENTED TO THE WITNESS AND TO THE JURY.

10         (GOVERNMENT'S EXHIBITS 2, 3, AND 7 WERE RECEIVED IN

11   EVIDENCE.)

12          THE COURT:  ALL RIGHT.  MS. PENNA, ANYTHING FURTHER

13   FROM THE GOVERNMENT?

14          MR. SCHENK:  JUST THE SCHEDULING ISSUE.  IF THE

15   COURT WOULD INDULGE --

16          THE COURT:  SURE.

17          MR. SCHENK:  -- I THINK IT WOULD BE HELPFUL FOR US

18   TO PLAN.  MR. COOPER IS COMING FROM THE EAST COAST.  HE IS

19   CURRENTLY SCHEDULED TO ARRIVE ON A FLIGHT AT 3:30 P.M. ON

20   THURSDAY.

21         SO WHAT WE ANTICIPATE IS TOMORROW WE WOULD DO JURY

22   SELECTION AND WHATEVER ELSE WE GET TO, AND IF THAT INCLUDES

23   OPENING, WE'RE PREPARED TO DO OPENING.

24          MR. HESSENFLOW WILL BE OUR FIRST WITNESS, AND HE'S LOCAL,

25   AND, THEREFORE, IF WE DO COMPLETE JURY SELECTION AND OPENING,

```
 1        MR. HESSENFLOW WILL BE HERE AND READY TO TESTIFY.

 2           WE WERE STILL ACTING UNDER THE PREMISE THAT WE WERE GOING

 3     TO BE DARK ALL DAY WEDNESDAY, AND THE COURT MENTIONED MAYBE A

 4     COUPLE OF HOURS ON THURSDAY.  THE COURT QUERIED WHETHER IT WAS

 5     WORTH BRINGING A JURY IN IF ALL WE COULD GIVE IS PROBABLY A

 6     COUPLE OF HOURS.

 7           THE GOVERNMENT SUGGESTS IF THAT WOULD BE THE APPROPRIATE

 8     TIME, IF THE COURT HAS A COUPLE OF HOURS, TO DO A JURY

 9     INSTRUCTION CONFERENCE.

10           THE GOVERNMENT WOULD THEN HAVE THURSDAY TO CALL EITHER THE

11     REMAINING TWO, IF MR. HESSENFLOW TESTIFIES ON TUESDAY, OR IF WE

12     DIDN'T GET TO ANY WITNESSES TOMORROW, THE GOVERNMENT CERTAINLY

13     BELIEVES WE COULD COMPLETE THOSE THREE WITNESSES ON FRIDAY, AND

14     OUR CASE WOULD BE COMPLETE NO LATER THAN THE END OF THE COURT

15     DAY ON FRIDAY.

16              THE COURT:  ALL RIGHT.  THANK YOU.

17           AS TO WEDNESDAY THE 26TH, IT IS POSSIBLE THAT WE WILL HAVE

18     THE AFTERNOON AVAILABLE TO US.

19           AND SO SHOULD WE HAVE THAT AFTERNOON AVAILABLE, IT SOUNDS

20     LIKE, MR. SCHENK, THAT YOU WOULD HAVE THE OPPORTUNITY TO FILL

21     THAT AFTERNOON WITH SOME WITNESSES.

22              MR. SCHENCK:  WELL, WE --

23              THE COURT:  OR WOULD YOU -- IS YOUR NEW YORK WITNESS

24     OR THE EAST COAST WITNESS THE ONE THAT YOU'RE RELYING ON FOR

25     THAT?
```

1      MR. SCHENK:  I THINK IT WOULD DEPEND ON HOW MUCH OF

2   MR. HESSENFLOW'S TESTIMONY WE GOT TO TOMORROW, TUESDAY.

3      OUR WITNESS ORDER IS MR. HESSENFLOW, MR. COOPER, AND

4   MS. AGUIRRE.  SO IT WOULD BE EASY TO FILL IF WE HAVEN'T DONE

5   ANY OF MR. HESSENFLOW'S TESTIMONY.

6      IF OUR JURY SELECTION MOVES QUICKLY, WE OPEN AND COMPLETE

7   MR. HESSENFLOW, IT WOULD BE A CHALLENGE THAT WE WOULD HAVE

8   MR. COOPER TESTIFY.  ALTHOUGH IT'S A CHALLENGE THAT I HAVEN'T

9   TRIED -- I CAN GO BACK TO THE OFFICE AND SEE IF WE CAN FLY HIM

10   OUT.  WE CAN FLY HIM OUT TOMORROW FOR TESTIMONY ON WEDNESDAY.

11      IT REALLY WOULD BE OUR PREFERENCE, IF THE COURT IS ASKING

12   THE QUESTION, THAT WE CONFIRM TRIAL TUESDAY AND FRIDAY AND IF

13   THERE IS TIME AVAILABLE ON THURSDAY, OR MAYBE WEDNESDAY, WE

14   MAKE THAT OUR TIME TO DISCUSS JURY INSTRUCTIONS.

15      THE COURT:  WELL, I WAS JUST THINKING ABOUT THAT,

16   TOO.  I THINK THAT MIGHT BE THE OPTIMUM TIME TO DO IT.  ALBEIT

17   WE'LL BE FRESH INTO THE GOVERNMENT'S CASE AND PROBABLY NO MORE

18   INTO THEIR FIRST WITNESS, BUT WE CAN CERTAINLY BEGIN

19   DISCUSSIONS IN EARNEST ON WEDNESDAY AFTERNOON IF WE HAVE THAT

20   TIME AVAILABLE.

21      MR. ARCHER.

22      MR. ARCHER:  THAT'S FINE, YOUR HONOR.

23      THE COURT:  OKAY.  YOU'VE ALREADY MADE FLIGHT

24   ARRANGEMENTS FOR YOUR WITNESS.  LET'S NOT DISTURB THOSE, AND

25   LET'S KEEP ALL OF THOSE IN PLACE.

1          I APPRECIATE YOU INFORMING US OF THE SCHEDULE.

2          SO LET'S -- WE WON'T BE IN SESSION, THAT IS, ON THE 26TH,

3     WITH THE JURY.  BUT IT MAY BE THAT WE'LL HAVE THE AFTERNOON

4     AVAILABLE TO DISCUSS WITH COUNSEL INSTRUCTIONS AND OTHER

5     MATTERS, INCLUDING PERHAPS VERDICT FORMS, BUT I THINK WE SHOULD

6     HAVE A BRIEF DISCUSSION ABOUT THE VERDICT FORM THIS MORNING AS

7     WELL.

8          OKAY.  ANYTHING ELSE FROM THE GOVERNMENT?

9              MR. SCHENK:  THANK YOU.

10             THE COURT:  MR. ARCHER.

11             MR. ARCHER:  THE ONE THING I DID WANT TO RAISE,

12    SINCE THE PRIOR PRETRIAL CONFERENCE WE RECEIVED THE

13    GOVERNMENT'S ACTUAL EXHIBITS THAT THEY INTEND TO INTRODUCE.

14    EXHIBIT 9, MR. HESSENFLOW'S PERSONAL LOG, THE COURT INDICATED

15    THAT IT WAS INCLINED TO ADMIT THAT.

16         MY UNDERSTANDING OF THAT LOG WAS THAT THE PORTIONS THAT

17    THE GOVERNMENT WAS GOING TO BE OFFERING WERE THE PORTIONS THAT

18    WERE IMMEDIATELY CONTEMPORANEOUS WITH THE CHARGED OFFENSE

19    CONDUCT WHICH THE DEFENSE STILL DOESN'T THINK IS APPROPRIATE

20    AND DOESN'T THINK THERE'S A HEARSAY GROUNDS TO BRING THAT IN.

21         BUT WHAT WE WERE PROVIDED WITH WAS A 19 PAGE LOG FROM

22    MR. HESSENFLOW.

23         AND DOES THE COURT HAVE A COPY?

24             THE COURT:  I DO NOT.

25             MR. ARCHER:  IF I MAY APPROACH, I WILL PROVIDE A

1    COPY OF WHAT THE GOVERNMENT HAS PROVIDED ME AS EXHIBIT 9.

2         AND JUST AS A THRESHOLD MATTER, SOME OF THE THINGS THAT

3    WERE INCLUDED IN THAT, THERE WOULD BE -- THERE ARE A NUMBER OF

4    STATEMENTS FROM MR. HESSENFLOW REPORTING OTHER PEOPLE'S

5    CONVERSATIONS WITH HIM, AND I DON'T SEE HOW THAT WOULD BE

6    REMOTELY ADMISSIBLE.

7         THERE'S A PUBLIC INFORMATION RECORDS REQUEST FOR

8    MR. YORK'S POLICE REPORTS, AND THERE'S A REFERENCE IN ONE

9    PARAGRAPH TO MR. YORK'S RELEASE FROM STATE PRISON.

10        AND SO I THINK JUST AT A FOUNDATIONAL LEVEL -- SORRY -- AS

11   AN INITIAL LEVEL THERE ARE A NUMBER OF HEARSAY AND

12   CONFRONTATION CLAUSE ISSUES THAT ARE RAISED BY THIS DOCUMENT.

13        WHEN WE HAVE A LIVE WITNESS WHO IS GOING TO COME IN AND

14   TESTIFY, OF COURSE HIS RECOLLECTION COULD BE REFRESHED AS TO

15   THESE OFFENSES, BUT TO INTRODUCE A 26 PAGE DOCUMENT WHICH

16   INCLUDES, YOU KNOW, A REFERENCE TO CRIMINAL CASES, A REFERENCE

17   TO RESTRAINING ORDERS, A REFERENCE TO POLICE REPORTS, ALL OF

18   THESE THINGS ARE HEARSAY.  THERE'S NO INDICATION THAT THESE

19   WERE SUBJECT TO ANY HEARSAY EXCEPTION AND A NUMBER OF THEM RUN

20   AFOUL OF THE COURT'S OTHER IN LIMINE RULINGS.

21        SO I THINK THE WHOLE DOCUMENT SHOULD BE EXCLUDED BUT

22   BARRING THAT, THERE ARE A NUMBER OF CONSTITUTIONAL ISSUES

23   RAISED BY AND ACTUALLY ISSUES THAT, AS I SAID, ARE DIRECTLY IN

24   CONTRADICTION TO THE COURT'S ALREADY ISSUED IN LIMINE RULINGS

25   REGARDING SORT OF THE NASTY DRAWN-OUT HISTORY OF THE

```
1     INTERACTIONS.

2              MR. SCHENK:  YOU KNOW, WE AGREE WITH MR. ARCHER.  WE

3     PROVIDED TO HIM THE FULL LOG.  IT'S THE GOVERNMENT'S INTENT,

4     THOUGH, AND I BELIEVE THE PAGE NUMBER IS EITHER 11 OR 12.  I

5     DON'T HAVE A COPY WITH ME NOW, BUT IT'S AROUND THAT PAGE THAT

6     THE COURT WILL SEE THE FORMAT CHANGES AND IT BEGINS WITH AN

7     E-MAIL FROM MR. HESSENFLOW TO THE CASE AGENT AND THEN PASTED

8     INTO THAT E-MAIL IS ADDITIONAL LOG.  IT'S AT THAT POINT THAT

9     THE GOVERNMENT WILL INTRODUCE NOTHING AFTER.

10         PAGE 1 THROUGH PAGE 11.

11             THE COURT:  THE ONES I HAVE IS PAGINATED ON THE

12    BOTTOM STARTING WITH IT SAYS PAGE HANDWRITTEN 20 AND THEN IT

13    HAS 9-1 ON THE BOTTOM.

14             MR. ARCHER:  YES, YOUR HONOR.  AND THEN -- SO I

15    THINK WHAT THE GOVERNMENT IS REFERENCING IS PAGE 9-15 AS THE

16    START.

17             THE COURT:  OKAY.  THANK YOU.

18             MR. SCHENK:  YES.  THAT'S THE E-MAIL THAT

19    MR. HESSENFLOW WROTE TO THE CASE AGENT.  THE GOVERNMENT WILL

20    MAKE THE EXHIBIT SHORTER, THOUGH.  WE'LL TAKE PAGES OUT EVEN IN

21    ADVANCE -- IT'S EXHIBIT 9, THE 15TH PAGE IS THE SYSTEM.

22         SO EXHIBIT 9 STARTING AT PAGE 12 THROUGH THE END THE

23    GOVERNMENT WON'T OFFER WITH THIS EXHIBIT.  SO TO PUT IT ANOTHER

24    WAY, WHAT THE GOVERNMENT INTENDS TO OFFER IS 9-1 THROUGH 9-11.

25             AND THERE'S A REFERENCE EVEN WITHIN THOSE PAGES TO THE
```

1    RESTRAINING ORDER THAT THE GOVERNMENT WILL REDACT.

2              MR. ARCHER:  I, FRANKLY, DON'T EVEN KNOW WHERE TO

3    START IN TERMS OF WHAT THE HEARSAY OBJECTION WOULD BE FOR

4    ADMITTING THIS.

5              THE COURT:  9-1 THROUGH 9-11?

6              MR. SCHENK:  YES, YOUR HONOR.

7              THE COURT:  9-1 THAT I HAVE -- IT HAS

8    ALLAN HESSENFLOW IN THE UPPER LEFT-HAND CORNER AND THEN IT HAS

9    20.10.11 AND THEN 115 AND THEN IT HAS DIFFERENT NARRATIONS.

10             MR. SCHENK:  THAT IS THE FORMAT OF THE LOG THAT HE

11   KEPT, YES, YOUR HONOR.

12             THE COURT:  SO YOU'RE SEEKING TO ADMIT THOSE PAGES?

13             MR. SCHENK:  9-1 THROUGH 9-11.

14             THE COURT:  OKAY.  WELL -- AND YOU'RE ASKING THAT

15   THIS BE ADMITTED IN ADDITION TO HIM, THE WITNESS, HE, THE

16   WITNESS, HESSENFLOW, TESTIFYING ABOUT EACH OF THESE THINGS?

17             MR. SCHENK:  ONE MINUTE, YOUR HONOR.

18             THE COURT:  SURE.  GO RIGHT AHEAD.

19        (DISCUSSION OFF THE RECORD.)

20             MR. SCHENK:  YES, YOUR HONOR.  OUR RECOLLECTION IS

21   THAT AT OUR PRETRIAL, I BELIEVE ON AUGUST 4TH, WE DISCUSSED

22   THIS ISSUE.  THE GOVERNMENT INDICATED THAT IT INTENDED TO ADMIT

23   HIS LOG, MR. HESSENFLOW'S LOG, AS HIS PRESENT SENSE IMPRESSION.

24        HE KEPT THIS LOG SIMULTANEOUS TO THE EVENTS OCCURRING.

25   IN FACT, WHAT HIS TESTIMONY WOULD BE WAS I WOULD BE OUT DURING

1    THE DAY.  IF I HAD SOME KIND OF INTERACTION WITH MR. YORK, I

2    WENT BACK TO MY HOME AND WOULD TYPE THIS UP OR ADD TO IT AND IT

3    WAS, THEREFORE, ALMOST ALWAYS, MAYBE ALWAYS, SIMULTANEOUS TO

4    THE EVENT OCCURRING.

5        AND HE WOULD TESTIFY TO THE CREATION OF THE LOG BUT ALSO

6    THE GOVERNMENT DOES SEEK TO ADMIT THE LOG AND PART OF THE

7    REASON FOR IT AND PART OF THE REASON THAT THE GOVERNMENT WAS

8    ARGUING EARLIER, WE UNDERSTAND THE COURT'S RULING, ABOUT THE

9    VIDEO, IS THAT THE NUMEROUS INTERACTIONS THAT MR. HESSENFLOW

10   HAD WITH MR. YORK, INDEPENDENTLY, EACH ON THEIR OWN, MAY NOT

11   HAVE CAUSED MR. HESSENFLOW TO ASSUME THAT MR. YORK WAS THE

12   CULPRIT THE NEXT TIME SOMETHING HAPPENED.

13       BUT DURING THIS PERIOD OF TIME IN MR. HESSENFLOW'S LIFE HE

14   KNEW THAT IF SOMEONE WAS CALLING HIM AND PRETENDING TO BE AN

15   I.R.S. AGENT OR LURKING ON HIS FRONT PORCH, IT HAD TO BE

16   MR. YORK.  AND THE REASON IT MADE SUCH AN IMPRESSION ON HIM WAS

17   BECAUSE OF THE REPETITIVE NATURE OF THIS.  AND ONE THING HE DID

18   BECAUSE IT WAS SO SIGNIFICANT BECAUSE IT WAS SO -- IT WAS -- IN

19   HIS LIFE WAS THAT HE KEPT A LOG AND THAT'S WHAT EXHIBIT 9 IS.

20       THE COURT:  I APPRECIATE THAT.  AND LET ME JUST

21   RAISE A COUPLE OF ISSUES AND ASK YOUR THOUGHTS ON IT.

22       I HAVEN'T LOOKED AT THIS, AND THIS IS THE FIRST TIME THAT

23   I'VE SEEN IT.  I MAY HAVE SOME CONCERNS ABOUT THIS FOR THE

24   GOVERNMENT.

25       FOR EXAMPLE, LET'S LOOK AT I THINK IT'S PAGE 9-2 IN THE

1   MIDDLE OF THE PAGE THE FEBRUARY 17, 11:30 P.M. MORGAN HILL

2   POLICE DEPARTMENT, MHPD, CLAIM THE COURT ORDERED CUSTODY

3   AGREEMENT IS INVALID DUE TO JUDGE HAVING STAMPED HER NAME, ET

4   CETERA, THOSE TYPES OF THINGS MIGHT BE PROBLEMATIC.

5        FEBRUARY 16TH, IN THAT SAME PAGE WE GOT TO, LET'S SEE,

6   SHERIFF CAUGHT HIM NEARBY.  TOWED CAR FOR DRIVING ON A

7   SUSPENDED LICENSE.

8        THERE'S SOME THINGS IN HERE THAT ARE PROBLEMATIC, I THINK.

9            MR. SCHENK:  YES, YOUR HONOR, WE AGREE.  WE THINK TO

10   ADMIT THE DOCUMENT, THERE NEEDS TO BE REDACTIONS BECAUSE OF THE

11   COURT'S PRIOR RULINGS REGARDING 404(B) AND THE 403 NATURE OF

12   SOME OF THE 404(B).

13        WE WOULD AGREE TO REDACT VIRTUALLY ANYTHING THAT HAS BEEN

14   RAISED BECAUSE IT'S THE EXISTENCE OF THIS RECORD, NOT JUST

15   TELLING THE JURY ABOUT IT BUT THEM BEING ABLE TO SEE THAT THE

16   DEFENDANTS ARE THE VICTIMS AND WAS SO CONCERNED ABOUT THIS HE

17   WENT TO THE STEP OF CREATING THE LOG.

18        SO I'M NOT SURE THAT REDACTING IT WOULDN'T SOLVE THE

19   PROBLEM.  IT DOES.  IT PREVENTS THE JURY FROM LEARNING ISSUES

20   THAT THE COURT AND THE GOVERNMENT HAVE CONCERN ABOUT THEM

21   LEARNING BUT IT DOESN'T SUGGEST THE EXHIBIT ITSELF.

22            THE COURT:  SO THANK YOU.  PAGE 9-8, MARCH 17TH,

23   1:03 A.M., "I RECEIVED A CALL FROM ANDREA.  DOUG HAD JUST BEEN

24   THERE AT WHITE OAKS.  HE POUNDED ON HER BEDROOM WINDOW HARD

25   ENOUGH THAT SHE WAS SURPRISED IT DIDN'T BREAK AND THEN SPED OFF

1    IN THE WHITE CAMARO.  THIS WAS WITH THE GIRLS IN ANDREA'S ROOM

2    WITH HER.  HE OBVIOUSLY DOESN'T MIND TERRORIZING THEM AS WELL

3    AS ANDREA."

4         MR. ARCHER, YOU HAVE NO OBJECTION TO THAT; RIGHT?

5              MR. ARCHER:  QUITE THE OPPOSITE.  AND, YOUR HONOR,

6    ACTUALLY EVEN DIRECTING THE COURT BACK TO, AND THIS IS, AGAIN,

7    FEBRUARY 17TH, 11:30 P.M., I HAD THE SAME CONCERNS ABOUT THE

8    MHPD AND THIS IS BACK ON PAGE 9-2.

9         BUT, OF COURSE, IF YOU LOOK AT THE BEGINNING OF THE

10   PARAGRAPH IN PARENTHESIS IT SAYS PER ANDREA AND SHERRY.  SO THE

11   INFORMATION THAT HE'S INCLUDING IN HERE IS RELAYED TO HIM BY

12   SOMEONE ELSE.  HOW ANY OF THAT WOULD POSSIBLY COME IN LET ALONE

13   THE CONTENT IS BEYOND ME.

14        I DON'T UNDERSTAND -- AND THEN A NUMBER OF THESE THINGS IN

15   HERE WOULD BE OBJECTIONABLE IF THEY WERE TESTIFIED TO DIRECTLY.

16   I MEAN, FOR INSTANCE, IF WE'RE LOOKING AT PAGE 9-1, AND THIS IS

17   2012 JANUARY 1ST, AT THE BOTTOM OF THE PARAGRAPH HERE IT SAYS

18   ANDREA AND EVERYONE ELSE NORMALLY AT MARA'S FAMILY PROPERTY

19   WERE OUT OF TOWN.  MY THEORY IS DOUG SAW MARA'S PLACE WAS ALL

20   DARK AND TRIED TO DETERMINE IF ANDREA WAS THERE.

21        IF THAT WAS PERMISSIBLE TESTIMONY, THAT WOULD BE

22   IMPERMISSIBLE SPECULATION AND WHAT IS THE RELEVANCE OF IT AND

23   WHY IS HE PERMITTED TO SPECULATE ABOUT THESE THINGS AND WHY

24   WOULD SOMETHING IN JANUARY BE RELEVANT?

25        AND I JUST DON'T -- TO GIVE THE JURY A DOCUMENT THAT, FROM

1    MY STANDPOINT, SHOULD BE 100 PERCENT BLACKED OUT BUT HAS

2    SIGNIFICANT REDACTIONS, AND THAT'S GOING TO BE CONFUSING TO

3    THEM AND THEY ARE GOING TO WANT TO KNOW WHAT THE HECK IS GOING

4    ON AND SO A LOT OF THESE ARE JUST TRANSCRIPTIONS THAT --

5    ALLAN HESSENFLOW'S TRANSCRIPTIONS OF VOICEMAILS THAT HE HAS

6    RECEIVED.

7              THE COURT:  WELL, ON PAGE 9-2, THE FIRST ENTRY ON

8    FEBRUARY 16TH, 2013, IS DOUG LEFT MESSAGES ON MY HOME PHONE AND

9    THEN HE QUOTES THE PHONE CALL, THE MESSAGE.  THAT SEEMS LIKE

10   THAT SHOULD BE ADMISSIBLE AND HE SHOULD BE ABLE TO TESTIFY

11   ABOUT THAT PHONE CALL RECEIVED.

12        THE SAME DATE ON 11:10 P.M., I ANSWERED, HELLO, GARBLED

13   VOICE, IT COULD BE DOUG SAYS IS MS. YORK THERE.  THOSE TYPES OF

14   THINGS HE SHOULD BE ALLOWED TO TESTIFY TO.  I GUESS MY POINT IS

15   THAT THERE ARE SOME PROBLEMATICAL ISSUES WITH THIS ENTIRE

16   DOCUMENT, AND I'M LOOKING AT THE GOVERNMENT NOW THAT I THINK

17   NEED PERHAPS TO BE SCRUTINIZED.  WE CAN DO THAT OURSELVES OR I

18   CAN INVITE YOU TO SIT DOWN, AND I'M SURE YOU'LL COME TO

19   AGREEMENT IN SHORT ORDER AS TO WHAT SHOULD COME IN OR NOT, BUT

20   I DO HAVE SOME PROBLEMS WITH SOME OF THESE.

21              MR. ARCHER:  YOUR HONOR, EVEN THOUGH -- I DON'T

22   UNDERSTAND HOW HE -- I UNDERSTAND HE WOULD BE ABLE TO TESTIFY

23   ON DIRECT LIVE TESTIMONY, NONHEARSAY, THAT HE RECEIVED PHONE

24   CALLS ON CERTAIN DATES AND IF HE HAS TROUBLE REMEMBERING WHAT

25   THE MESSAGES WERE, HE'S WELCOME TO BE -- HIS MEMORY CAN BE

 1       REFRESHED WITH ANYTHING, OBVIOUSLY INCLUDING HIS OWN LOGS.

 2           NOW, IF I, ON CROSS, TRIED TO INTRODUCE SOME PRIOR

 3       INCONSISTENT STATEMENT, HE COULD POTENTIALLY BE REHABILITATED

 4       THROUGH THE ENTRY OF THIS DOCUMENT BUT TO JUST OUT OF THE GATE

 5       DROP THIS IN, IT'S HEARSAY, AND IT'S NOT SUBJECT TO AN

 6       EXCEPTION AND THE PRESENT SENSE IMPRESSION, HIM DESCRIBING A

 7       VOICEMAIL, I DON'T UNDERSTAND THAT TO BE A PRESENT SENSE

 8       IMPRESSION.

 9           IF HE'S GOING TO BACK TO HIS HOUSE AND KEEPING A JOURNAL

10       OF THE DAY'S EVENTS, I DON'T UNDERSTAND HOW THAT WOULD BE A

11       PRESENT SENSE IMPRESSION.  IT'S NOT SIMULTANEOUS IF HE'S GOING

12       AND DOING IT LATER ON.

13           IT -- WHAT IT DOES IS SERVING TO IMPROPERLY BOLSTER HIS

14       TESTIMONY.  BECAUSE IF HE WROTE IT DOWN, YOU KNOW, IT COULD BE

15       PERCEIVED, WHETHER CORRECTLY OR NOT, BY THE JURY AS LENDING

16       SUPPORT TO HIS TESTIMONY ABOUT THE EVENTS OF THAT DAY.  HE CAN

17       TESTIFY TO ALL OF THESE EVENTS ON DIRECT WITHOUT RUNNING ACROSS

18       HEARSAY ISSUES WITHOUT HAVING TO REDACT A GIANT DOCUMENT THAT

19       RAISES A NUMBER OF IMPERMISSIBLE HEARSAY ISSUES.

20           THERE ARE FOUNDATIONAL ISSUES THROUGHOUT THIS WHERE HE'S

21       RELYING ON OTHER PEOPLE.  YOU KNOW, OVER AND OVER AGAIN HE'S

22       SAYING I WAS TOLD BY SOMEONE ELSE.  IT JUST DOESN'T -- I DON'T

23       EVEN UNDERSTAND WHY WE BEGIN TO INTRODUCE THIS.

24               THE COURT:  WELL, IT HAS SOME PROBATIVE VALUE.  I

25       MEAN, SOME OF THESE HAVE PROBATIVE VALUE TO THE ISSUES AND I

1    UNDERSTAND THE GOVERNMENT'S ARGUMENT ALSO ON FEBRUARY 20TH AT

2    11:20 A.M., IT'S DOCUMENTED HERE THAT THIS WITNESS RECEIVED A

3    TEXT MESSAGE FROM DOUG WHICH WAS A WHOLE PARAGRAPH IT TALKS

4    ABOUT CPS CASES AND THEN AT 11:59 A.M. A TEXT MESSAGE FROM

5    DOUG.

6        THOSE THINGS ARE ASSUMING THAT HE CAN GET UP AND TESTIFY

7    THAT I DID RECEIVE THIS TEXT MESSAGE.  THAT HAS SOME PROBATIVE

8    VALUE.

9        FEBRUARY 23RD, 10:38 A.M., DOUG CALLS CELL.  CALL FROM

10   DOUG AT 10:51 A.M., AT 10:56 A.M.  THIS IS ALL ON

11   FEBRUARY 23RD.  SO THOSE MIGHT BE ADMISSIBLE, MIGHT HAVE A

12   STRONGER CASE FOR ADMISSIBILITY.  IF YOU TURN THE PAGES TO

13   FEBRUARY 23RD, IT CONTINUES.  DOUG CALLED AT 5:30 AND I THINK

14   DOWN ON FEBRUARY 26TH, 2:15 A.M., THAT'S HIS NOTE ABOUT

15   REFERENCING THE PORCH VIDEO.

16       SO I GUESS WHAT I'M SUGGESTING IS THAT THERE ARE MATERIALS

17   HERE THAT I THINK THE WITNESS SHOULD BE ABLE TO TESTIFY ABOUT

18   THAT HE RECEIVED THINGS.  WHETHER OR NOT THEY, THEY, THE JURY,

19   RECEIVE THE ENTIRE DOCUMENT, I THINK, IS A DIFFERENT QUESTION.

20           MR. SCHENK:  I THINK THAT WE WILL CONFER AND IF WE

21   CAN ELIMINATE MANY OF THE ISSUES AND JUST PROVIDE A FEW FOR THE

22   COURT'S CONSIDERATION, WE WILL DO OUR BEST TO DO SO.

23           THE COURT:  I THINK YOU CAN DO THAT.  HE WOULD BE

24   ABLE -- HE, THIS WITNESS, WILL BE ABLE TO TESTIFY THAT HE KEPT

25   A LOG.  THAT'S FAIR GAME.  I KEPT A LOG, AND HERE'S AN EXAMPLE

1    OF SOME OF THE THINGS THAT I KEPT IN THE LOG.  IT SOUNDS LIKE

2    YOU'RE GOING TO MEET AND CONFER AND TALK ABOUT SOME OF THE

3    THOSE THINGS THAT ARE REPRESENTED HERE IN EXHIBIT I.

4              MR. ARCHER:  I WOULD BE HAPPY TO, YOUR HONOR.  I

5    JUST THINK WE'RE TALKING ABOUT TWO DIFFERENT THINGS TO SOME

6    EXTENT.  THERE'S THE ONE ISSUE ABOUT WHETHER HE CAN TESTIFY

7    ABOUT THE EVENTS WHICH HE REMEMBERS FROM THIS WHICH IS SUBJECT

8    TO OTHER OBJECTIONS, YOU KNOW, THAT'S DIRECT TESTIMONY.  THAT'S

9    WHAT THE WITNESSES ARE HERE FOR.

10             BUT THE IDEA OF INTRODUCING THESE -- ANY PORTION OF THIS

11   LOG, IT IS INADMISSIBLE HEARSAY AND NOT SUBJECT TO ANY

12   EXCEPTION AND NONE OF THEM RAISE CONFRONTATION ISSUES.

13             SO I SUPPOSE BEYOND THAT WE'LL RESERVE OUR RIGHT TO OBJECT

14   AS IT COMES UP.

15             THE COURT:  WELL, SURE.  AND IF THE QUESTION TO THE

16   WITNESS IS ON FEBRUARY 27TH AT 11:35 A.M., DID SOMETHING

17   UNUSUAL HAPPEN?  I GOT A CALL FROM DOUG.  WHAT DID HE SAY?

18             MR. ARCHER:  SURE.

19             THE COURT:  I DON'T REMEMBER, BUT LET ME REFRESH MY

20   RECOLLECTION FROM THE LOG I KEPT OR IS THIS THE LOG AND DOES

21   THIS REFRESH YOUR RECOLLECTION?  ALL RIGHT.  I'LL LET YOU MEET

22   AND CONFER ABOUT THAT.  THANK YOU.

23             WHAT ABOUT 9-15, THE E-MAIL ITSELF?

24             MR. SCHENK:  THE GOVERNMENT IS NOT GOING TO OFFER

25   THAT.

```
 1                    THE COURT:  OKAY.  THANK YOU.  ANYTHING FURTHER ON

 2        THE LOG?

 3                    MR. ARCHER:  NO, YOUR HONOR.

 4                    THE COURT:  OKAY.  FROM THE DEFENSE, ANYTHING

 5        FURTHER THAT WE NEED TO DISCUSS?

 6                    MR. ARCHER:  NO, YOUR HONOR.

 7                    THE COURT:  OKAY.  THEN I'LL RECEIVE YOUR PROPOSED

 8        SUBMITTED STATEMENTS, AND I'LL LOOK AT THOSE, AND I'LL PREPARE

 9        SOMETHING THAT I'LL READ TO THE JURY.

10            IN REGARDS TO THE SUBMITTED JURY INSTRUCTIONS AND VERDICT

11        FORM, I THINK WE CAN TALK ABOUT THOSE ON WEDNESDAY, PROBABLY,

12        THAT'S A GOOD TIME TO REVIEW THOSE.

13                    MS. PENNA:  YES, YOUR HONOR.

14                    THE COURT:  SO FOR TOMORROW, ASSUMING WE GET -- WE

15        HAVE A JURY BY NOON, THEN YOU SHOULD BE PREPARED FOR OPENING

16        STATEMENTS AFTER LUNCH, AND THEN FIRST WITNESS AFTER.

17                    MR. SCHENK:  YES.  THANK YOU.

18                    MR. ARCHER:  THANK YOU, YOUR HONOR.

19                    MS. PENNA:  THANK YOU, YOUR HONOR.

20                    THE COURT:  AND I WILL PRE-INSTRUCT.  THERE WILL BE

21        PRE-INSTRUCTIONS AND THAT, AS YOU KNOW, WILL BE ABOUT 20

22        MINUTES.

23                    MR. ARCHER:  OKAY.  UNDERSTOOD.

24                    THE COURT:  ALL RIGHT.  THANK YOU.

25                (COURT CONCLUDED AT 10:53 A.M.)
```

1
2
3                        CERTIFICATE OF REPORTER
4
5
6
7           I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED
8      STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
9      280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY
10     CERTIFY:
11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12     A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13     ABOVE-ENTITLED MATTER.
14
15
16          IRENE RODRIGUEZ, CSR, RMR, CRR
            CERTIFICATE NUMBER 8074
17
18          DATED:  FEBRUARY 12, 2016
19
20
21
22
23
24
25