1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION


UNITED STATES OF AMERICA,

         PLAINTIFF,           CASE NO.  CR-15-00226-EJD

   VS.                 SAN JOSE, CALIFORNIA

DOUGLAS STROMS YORK,        AUGUST 27, 2015

       DEFENDANT.        VOLUME 3

                    PAGES 216 - 240


TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE


A-P-P-E-A-R-A-N-C-E-S


FOR THE PLAINTIFF:   OFFICE OF THE UNITED STATES ATTORNEY
                  BY:   BRIANNA PENNA
                    JEFFREY SCHENK
                50 ALMADEN BOULEVARD, SUITE 900
                SAN JOSE, CALIFORNIA 95113


FOR THE DEFENDANT:   OFFICE OF THE FEDERAL PUBLIC DEFENDER
                  BY:   GRAHAM ARCHER
                    HEATHER ANGOVE
                55 S. MARKET STREET, SUITE 820
                SAN JOSE, CALIFORNIA 95113


OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, RMR, CRR
                      CERTIFICATE NUMBER 8074


    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
TRANSCRIPT PRODUCED WITH COMPUTER.

```
 1        SAN JOSE, CALIFORNIA                    AUGUST 27, 2015

 2                     P R O C E E D I N G S

 3          (COURT CONVENED AT 2:34 P.M.)

 4          THE CLERK:  CALLING CASE NUMBER 15-226, UNITED STATES

 5     VERSUS DOUGLAS YORK.

 6              MS. PENNA:  BRIANNA PENNA FOR THE UNITED STATES.

 7     GOOD AFTERNOON, YOUR HONOR.

 8              THE COURT:  GOOD AFTERNOON.

 9              MR. SCHENK:  AND JEFF SCHENK FOR THE UNITED STATES.

10     GOOD AFTERNOON.

11              THE COURT:  GOOD AFTERNOON.

12              MR. ARCHER:  GOOD AFTERNOON.  GRAHAM ARCHER FOR

13     MR. YORK WHO IS PRESENT OUT OF CUSTODY, AND HEATHER ANGOVE FROM

14     OUR OFFICE HAS ALSO JOINED ME, TOO.

15              THE COURT:  THANK YOU.  GOOD AFTERNOON.  PLEASE BE

16     SEATED.

17          WE ARE OUTSIDE OF THE PRESENCE OF THE JURY.  AND WE

18     RECONVENED TO DISCUSS ADDITIONAL ISSUES REGARDING JURY

19     INSTRUCTIONS.

20          AND LET ME ASK COUNSEL, YOU HAVE A HARD COPY OF THE MODEL

21     NINTH CIRCUIT?

22              MS. PENNA:  YES.

23              THE COURT:  DO YOU NEED A HARD COPY?

24              MR. ARCHER:  AGAIN, YES, YOUR HONOR.

25              THE COURT:  OKAY.  WE'LL GET THAT FOR YOU IN JUST A
```

1    MOMENT.

2         THE YOUTH JUST DON'T READ BOOKS ANYMORE, DO THEY?  THE

3    YOUNG JUST DON'T READ BOOKS.

4         (PAUSE IN PROCEEDINGS.)

5              THE COURT:  ALL RIGHT.  SO I HAVE RECEIVED DOCUMENT

6    NUMBER 69, WHICH WAS FILED BY THE DEFENSE, I THINK, THIS

7    AFTERNOON.

8         HAS THE GOVERNMENT RECEIVED THIS AS WELL?

9              MR. SCHENK:  YES, YOUR HONOR.

10             THE COURT:  ALL RIGHT.  THANK YOU.  SO, MR. ARCHER,

11   DO YOU WANT TO SPEAK TO YOUR DOCUMENT NUMBER 69?

12             MR. ARCHER:  I DO, YOUR HONOR.  AND I WANT TO

13   ACKNOWLEDGE FIRST AND I WANT TO APOLOGIZE FOR THE TIMING OF THE

14   FILING.  WE'RE STILL SORT OF SORTING OUT THE STATUTORY LANGUAGE

15   AS IT HAS COME INTO THE CASE SO FAR, AND I APPRECIATE THE

16   GOVERNMENT'S PATIENCE WITH THE TIMING OF OUR FILING AS WELL.

17        THE DEFENSE'S CONCERN HERE IS THAT THIS IS NOT INTENDED TO

18   BE A STRICT LIABILITY CRIME AND FROM THE NINTH CIRCUIT MODEL

19   INSTRUCTION THERE'S NOT REALLY ANY GUIDANCE FOR THE JURY AS TO

20   WHAT THE MENS REA IS AND SO THAT'S THE PURPOSE OF OUR FILINGS

21   AS TO THE MATERIALITY, THE INTENT TO DECEIVE, ET CETERA.

22        AND WHAT WE PROPOSED AS AN ALTERNATE JURY INSTRUCTION TO

23   THE 2010 MODEL INSTRUCTION IN THE NINTH CIRCUIT IS NOT ONE THAT

24   IS IN CONFLICT WITH NINTH CIRCUIT LAW.  TOMSHA-MIGUEL,

25   T-O-M-S-H-A M-I-G-U-E-L, THE TOMSHA-MIGUEL CASE IS ONE THAT --

1     AND THAT'S AT 766 F.3D 1041, IS A CASE THAT ADDRESSED THE

2     DEFENDANT'S RIGHT TO RAISE AN AFFIRMATIVE DEFENSE AND THE

3     SUFFICIENCY OF AN INDICTMENT THAT DID NOT SPECIFICALLY ALLEGE

4     AN INTENT TO DEFRAUD IN IT.

5         AND IT DID NOT ACTUALLY ADDRESS JURY INSTRUCTIONS.  THE

6     JURY INSTRUCTIONS IN THAT CASE -- MS. TOMSHA-MIGUEL'S COUNSEL

7     STIPULATED TO THE MODEL INSTRUCTIONS IN THAT CASE, AND SO IT

8     WAS NOT SOMETHING THAT WAS RAISED.

9         THE DEFENSE'S PERSPECTIVE HERE IS THAT THE NINTH CIRCUIT

10    MODEL INSTRUCTION, ESPECIALLY IN THIS CASE WHERE WE'RE -- THE

11    BULK OF THE EVIDENCE -- IN FACT, THE TOTALITY OF THE EVIDENCE

12    AS TO THE IMPERSONATION COUNT, OTHER THAN AUTHENTICATING, OTHER

13    THAN THE GOVERNMENT EVIDENCE SUPPORTING THEIR CONTENTION THAT

14    IT WAS MR. YORK THAT MADE THE PHONE CALL, IS THE CONTENT OF A

15    SINGLE VOICEMAIL AROUND 30 SECONDS LONG.

16        IN THIS CASE I THINK IT'S INCREDIBLY IMPORTANT THAT WE

17    HAVE SOME MORE GUIDANCE FOR THE JURY BEYOND WHAT THE MODEL

18    INSTRUCTION IS.  THE ACTING AS SUCH LANGUAGE ALONE IS

19    INSUFFICIENT AND IT DOESN'T -- THE LEOPWITCH CASE,

20    L-E-P-O-W-I-T-C-H, WHICH IS A 1943 CASE, TOMSHA-MIGUEL

21    ACKNOWLEDGES THAT THAT'S STILL GOOD LAW AND ACKNOWLEDGES THE

22    CIRCUITS THAT ARE IN AGREEMENT WITH THE NINTH CIRCUIT AS TO THE

23    INTENT TO DEFRAUD ISSUE BUT ACKNOWLEDGES IN LEPOWITCH THAT

24    THERE IS AN INHERENT ELEMENT OF INTENT TO DECEIVE.

25        AND THAT'S SOMETHING THAT, FROM OUR PERSPECTIVE, IS NOT

1    CONTAINED PROPERLY IN THE 2010 MODEL JURY INSTRUCTION FROM THE

2    NINTH CIRCUIT.

3         OUR CONCERN IS THAT WITHOUT INSTRUCTION TO THE JURY AS TO

4    THE INTENT REQUIRED, THAT IT COULD SEEM AS THOUGH THERE WOULD

5    BE STRICT LIABILITY AND SIMPLY THE UTTERANCE OF THE WORDS BASED

6    ON HOW THE MODEL JURY INSTRUCTION LAYS IT OUT.

7         AND SO WHAT THE DEFENSE HAS OFFERED IS A SLIGHTLY MODIFIED

8    VERSION OF THE EIGHTH CIRCUIT MODEL WHICH THAT DOES NOT INCLUDE

9    ANYTHING THAT WOULD RUN AFOUL OF TOMSHA-MIGUEL SUCH AS A

10   REQUIREMENT OF AN INTENT TO DEFRAUD BUT DOES EXPLAIN TO THE

11   JURY, AS IS ACKNOWLEDGED IN A NUMBER OF OTHER CASES, THAT A

12   REQUIREMENT TO SUSTAIN A CONVICTION UNDER SECTION 912 IS THAT

13   THE PERSON BEING ACCUSED OF DOING SOMETHING IN VIOLATION OF THE

14   STATUTE HAS TO ACTUALLY HAVE TRIED THROUGH DECEIT TO ALTER THE

15   COURSE OF SOMEONE ELSE'S ACTIONS THROUGH THAT DECEIT.

16        AND THAT'S SOMETHING WHICH THE LEPOWITCH CASE -- THE

17   LEPOWITCH CASE EFFECTIVELY SET A FLOOR AS TO THE MINIMUM AMOUNT

18   REQUIRED BY AN INDICTMENT TO PLEAD A VIOLATION OF 912.  SORT OF

19   BIZARRELY CONGRESS REMOVED THE LANGUAGE INTENT TO DEFRAUD BUT

20   NOT BECAUSE IT WAS REMOVING IT FROM THE STATUTE BUT BECAUSE IT

21   FOUND IT TO BE DUPLICATIVE BASED ON THE LEPOWITCH COURT'S

22   FINDING THAT IT WAS NATURALLY WOVEN INTO THE STATUTE ITSELF.

23        SO WITHOUT SOME EXPLANATION TO THE JURY OF A REQUIRED

24   INTENT TO DECEIVE AND TO HAVE SOMETHING ELSE HAPPEN, WE THINK

25   THAT THERE'S A SIGNIFICANT DANGER THAT SOMEONE COULD BE

1    CONVICTED OF THIS COUNT WITHOUT ANY INTENT TO DECEIVE AND BY

2    INTENT TO DECEIVE I MEAN TO THEN ALTER THE COURSE OF SOMEONE'S

3    BEHAVIOR AS IT HAS BEEN DEFINED IN OTHER CIRCUITS AND OTHER

4    CASES ON THE SAME SUBJECT.

5            THE COURT:  ALL RIGHT.  THANK YOU.  DOES THE

6    GOVERNMENT HAVE A POSITION?

7            MS. PENNA:  YES.  THANK YOU, YOUR HONOR.  WE HAVE

8    REVIEWED THE DEFENSE'S MEMORANDUM THIS AFTERNOON AND WE HAVE A

9    FEW BRIEF POINTS OF RESPONSE.

10       IT IS OUR UNDERSTANDING THAT AS DEFENSE HAS DISCUSSED, THE

11   STATUTE BACK IN THE 1940'S DID REQUIRE THIS INTENT TO DEFRAUD.

12       AND THEN WHEN THE LEPOWITCH CASE CAME OUT, IT DEFINED THIS

13   INTENT AND GAVE SOME MORE GUIDANCE ON THAT AS DEFENSE HAS

14   DISCUSSED.  HOWEVER, AFTER THIS CASE CAME OUT, CONGRESS

15   SPECIFICALLY DELETED THAT INTENT REQUIREMENT.

16       AND WE'VE REVIEWED THESE CASES THAT HAVE BEEN PROVIDED AND

17   WHAT SEEMS CLEAR IS THAT THERE IS A CIRCUIT SPLIT, BUT THE

18   CIRCUIT SPLIT SEEMS TO DISCUSS A SPLIT IN THE REASONING AS TO

19   THAT REQUIREMENT AND WHY THAT REQUIREMENT WAS REMOVED AND

20   WHETHER THAT WAS REMOVED TO COMPLETELY DELETE THAT INTENT

21   REQUIREMENT OR RATHER THAT THE -- THAT THAT INTENT REQUIREMENT

22   IS INHERENTLY INCLUDED INTO THE ELEMENTS THAT ARE REQUIRED.

23       AND IT'S OUR UNDERSTANDING THAT HERE IN THE NINTH CIRCUIT

24   IT'S BEEN MADE CLEAR THAT THERE IS NOT AN INTENT ELEMENT

25   REQUIRED THAT THE GOVERNMENT HAS TO PROVE.

1        AND I WOULD LIKE TO POINT OUT SPECIFICALLY THE EXHIBITS

2    THAT THE DEFENSE PROVIDED THIS AFTERNOON IN EXHIBIT B THE VERY

3    LAST PAGE THEY PROVIDED SOME, SOME OTHER CIRCUITS THAT DO

4    INCLUDE AN EXTRA ELEMENT IN THE JURY INSTRUCTIONS BUT IN THAT

5    VERY LAST PAGE IT SPECIFICALLY SAYS THAT THE ELEVENTH CIRCUIT,

6    THE THIRD, THE EIGHTH, AND D.C. CIRCUITS IN DETERMINING THAT

7    THE INTENT TO DEFRAUD REMAINED AN ELEMENT, EVEN THOUGH NOT

8    ALLEGED IN THE INDICTMENT.  NOTE, HOWEVER, THAT THE SECOND,

9    FOURTH, SEVENTH, AND NINTH CIRCUITS HAVE HELD THAT THE INTENT

10   TO DEFRAUD IS NO LONGER AN ELEMENT OF THIS OFFENSE.

11       NOW, THIS IS SUPPORTED BY THE TOMSHA-MIGUEL CASE THAT THE

12   DEFENSE HAS DISCUSSED, BUT WHAT THEY HAVE NOT MENTIONED WAS THE

13   HOLDING AND THERE'S AN ENTIRE SECTION OF THIS CASE THAT

14   DISCUSSES THIS EXACT ISSUE WHETHER OR NOT THIS INTENT TO

15   DEFRAUD IS A REQUIRED ELEMENT FOR THE GOVERNMENT TO PROVE.  AND

16   THEY HELD THAT IT'S NOT.

17       THEY DIRECTLY STATE THAT IN RESPONSE TO THE SAME ARGUMENT

18   THAT THERE'S THIS SPLIT IN THE CIRCUIT THAT THEY -- THE COURT

19   HERE SAYS DIRECTLY, TOMSHA-MIGUEL'S ARGUMENT THAT THIS APPROACH

20   IS INCONSISTENT WITH THE CASE LAW OF OUR CIRCUITS IS

21   UNAVAILING.

22       THE MAJORITY OF OUR SISTER CIRCUITS HAVE HELD THAT THE

23   GOVERNMENT NEED NOT ESTABLISH AN INTENT TO DEFRAUD AS A

24   SEPARATE ELEMENT OF SECTION 912 OF A SECTION 912 OFFENSE.

25       WE'RE HERE.  WE'RE IN THE NINTH CIRCUIT, AND IT'S OUR

1    STANCE THAT WE SHOULD GO ALONG WITH THE MODEL -- NINTH CIRCUIT

2    MODEL JURY INSTRUCTION AS IT READS.  THOSE INSTRUCTIONS HAVE

3    NOT BEEN FOUND TO BE OVERTURNED, AND AT THIS POINT IT'S

4    SUPPORTED BY THE CASE LAW THAT WE PROVIDED, AND THAT'S OUR

5    STANCE.

6             THE COURT:  OKAY.

7             MR. ARCHER:  JUST BRIEFLY.  WHAT THE DEFENSE

8    STRUGGLES WITH IN THE TOMSHA-MIGUEL CASE, OTHER THAN THE

9    HOLDING, IS IF I COULD DIRECT TO THIS IS PAGE 4 AT LINE 7

10   THROUGH 10 OF DOCKET 69, THIS IS A QUOTE FROM THE TOMSHA-MIGUEL

11   CASE, AND IT ACKNOWLEDGES THAT 9 -- SECTION 912 STATUTORY

12   ELEMENTS STILL INCORPORATE AN INTENT TO DECEIVE.  AND IT'S,

13   IT'S CERTAINLY -- IT'S A BIT OF A BIZARRE DISTINCTION BECAUSE

14   THEY'RE IN SOME WAYS DISTINGUISHING DEFRAUD AND DECEIT AND

15   OTHER CIRCUITS HAVE, I THINK, THAT THERE'S A DIFFERENCE BETWEEN

16   THE EIGHTH AND THE ELEVENTH CIRCUITS THAT ONE OF THEM HAS THE

17   WORD "DEFRAUD" IN IT AND THE OTHER ONE JUST DEFINES "DECEIVE."

18        AND WE THINK THAT IF -- ALTHOUGH WE THINK TOMSHA-MIGUEL

19   WAS WRONGLY DECIDED AS TO THE FRAUD, WE UNDERSTAND THAT THE

20   COURT WOULD BE FORECLOSED FROM GIVING AN INSTRUCTION THAT

21   INCLUDED DEFRAUD BUT TOMSHA-MIGUEL DRAWS A DISTINCTION BETWEEN

22   THE WORD "DECEIVE" AND THE WORD "DEFRAUD."

23        IT ACKNOWLEDGES THAT LEPOWITCH IS STILL GOOD LAW AND

24   REFERENCING AGAIN THE QUOTE THAT IS INCLUDED ON PAGE 4 OF THE

25   DEFENSE FILING.  IT DISCUSSES WHY IN A STATUTE INVOLVING SPEECH

```
 1        IT'S SO DANGEROUS TO NOT HAVE THE STATUTE DRAWN IN A WAY THAT

 2    NARROWLY TAILORS IT TO ONLY DECEPTIVE SPEECH.

 3        SO THE LEPOWITCH CASE IS STILL GOOD LAW.  IT'S VERY CLEAR

 4    THAT THERE IS AN INTENT TO DECEIVE.  THERE IS THIS UGLY CIRCUIT

 5    SPLIT ABOUT THE DEFRAUD, BUT IN THE NINTH CIRCUIT EVEN HOLDING

 6    THAT DEFRAUD DOESN'T NEED TO BE LISTED AS AN ELEMENT, THERE HAS

 7    TO BE SOME IMPLICATION TO THE JURY THAT THERE HAS TO BE A

 8    DECEPTIVE PURPOSE TO THE COMMUNICATION.  AND I THINK THAT'S

 9    CLEAR FROM THE TOMSHA-MIGUEL LANGUAGE THAT IS QUOTED ON PAGE 4

10    HERE.

11              THE COURT:  ANY COMMENT ON THAT?

12              MS. PENNA:  THANK YOU, YOUR HONOR.  IT'S OUR

13    UNDERSTANDING HERE THAT THIS LANGUAGE IS IN RESPONSE TO A FIRST

14    AMENDMENT CHALLENGE, BUT IN THE NEXT PARAGRAPH IT DIRECTLY

15    RESPONDS TO THE ARGUMENT THAT IS BEING RAISED HERE AND THAT'S

16    WHAT SHOULD BE CONTROLLING.

17        AND EVEN JUST IN RESPONSE THE WAY IT'S WORDED IS THAT

18    THE -- THAT THIS INTENT IS INCORPORATED, NOT THAT IT SHOULD BE

19    ADDED INTO WHAT HAS ALREADY BEEN CLEARLY ESTABLISHED AS THE TWO

20    ELEMENTS OF THIS OFFENSE, WHICH ARE LISTED IN THIS -- THE MODEL

21    JURY INSTRUCTIONS HERE.

22              THE COURT:  THE DEFRAUD INTENT IS INCORPORATED?

23              MS. PENNA:  IT'S INCORPORATED.  WHAT DEFENSE IS

24    ASKING IS TO ADD A SEPARATE ELEMENT OR ADD TO THAT THE ELEMENTS

25    THAT HAS CLEARLY HERE BEEN ADDRESSED BECAUSE IF IT'S BEEN
```

1      INCORPORATED, THAT'S ALREADY BEEN TAKEN INTO ACCOUNT IN THESE

2      TWO ELEMENTS.

3          BUT WE STAND BY THE -- THIS CASE AND THE OTHER CASES IN

4      THIS DISTRICT SHOW THAT THERE'S NO ADDED INTENT TO DEFRAUD

5      HERE, AND, THEREFORE, WE SHOULD BE GOING WITH THE MODEL JURY

6      INSTRUCTIONS FOR THIS CIRCUIT IN THIS CASE.

7              THE COURT:  ALL RIGHT.  THANK YOU.

8          MR. ARCHER, ANYTHING FURTHER?

9              MR. ARCHER:  NO, YOUR HONOR.  OTHER THAN JUST TO

10     POINT OUT THAT TOMSHA-MIGUEL WAS NOT ADDRESSING A CHALLENGE TO

11     THE JURY INSTRUCTION.  IT WAS NOT RAISED IN THE DISTRICT COURT.

12     AND SO WE'RE AT A PHASE WHERE THERE IS A CHALLENGE TO THE JURY

13     INSTRUCTIONS NOW, AND THE HOLDING I THINK IN TOMSHA-MIGUEL

14     SHOULD BE LIMITED TO COUNTS IN THE INDICTMENT OR AN AFFIRMATIVE

15     DEFENSE.

16             THE COURT:  WELL, IT DID.  TOMSHA-MIGUEL DID SPEAK

17     TO THE DEFENSE EFFORTS TO DISMISS THE INDICTMENT AND ALSO

18     CALLED UPON THE COURT TO REVIEW WHETHER OR NOT IT WAS OVERBROAD

19     AS TO SPEECH.

20         I THINK THE COURT LOOKED AT THOSE ISSUES, AND AS YOU POINT

21     OUT, COUNSEL, THAT WAS NOT A JURY INSTRUCTION TYPE OF A CASE,

22     BUT IT DOES GIVE GUIDANCE TO US, ALBEIT IT'S -- I DON'T THINK

23     IT'S NOT QUITE A YEAR OLD, PERHAPS A LITTLE OVER A YEAR OLD.  I

24     DON'T REMEMBER THE MONTH THAT IT WAS DECIDED.

25         BUT --

1          MR. ARCHER:  I BELIEVE IT WAS NOVEMBER OF 2014.

2          THE COURT:  2014?

3          MR. ARCHER:  I'M SORRY, SEPTEMBER 4TH OF 2014.

4          THE COURT:  SO IT'S NOT QUITE A YEAR, A YEAR OLD AND

5    SO I SUPPOSE IT'S AMBITIOUS TO THINK THAT THE NINTH CIRCUIT

6    WOULD HAVE LOOKED AT THAT CASE, AND, THEREFORE, MADE A DECISION

7    SOME 11 MONTHS LATER AS TO WHETHER OR NOT THE JURY INSTRUCTION

8    FOR 912, THAT IS, THE MODEL INSTRUCTION, SHOULD BE ALTERED OR

9    CHANGED IN SOME MANNER.

10        IT IS AN INTERESTING QUESTION WHETHER OR NOT THIS

11   DECEPTION ISSUE COMES IN.  I DON'T THINK THAT -- AND I'VE

12   LOOKED AT YOUR PAGE 5 OF DOCUMENT 69 OF YOUR PROPOSED 69

13   SUGGESTS AN INSTRUCTION THAT, IN ESSENCE, ADDS THE THIRD

14   PARAGRAPH TO THE ALREADY MODEL INSTRUCTION.  THAT'S ESSENTIALLY

15   WHAT I THINK YOUR OFFER IS TO ADD A NUMBER 3, THE DEFENDANT DID

16   SO KNOWINGLY WITH INTENT TO DECEIVE ANOTHER.

17        AND THEN YOUR MODEL THEN SUGGESTS THE LANGUAGE AS FOLLOWS:

18   FOR THE PURPOSES OF THIS OFFENSE TO ACT, QUOTE, "WITH INTENT TO

19   DECEIVE," END QUOTE, MEANS THAT THE DEFENDANT, WHILE SO

20   PRETENDING, ACTED WITH THE INTENT TO CAUSE A PERSON TO FOLLOW

21   SOME COURSE OF ACTION OR INACTION.

22        THAT LAST LANGUAGE IS SPECIFICALLY, I THINK, A QUOTE FROM

23   THE LEPOWITCH CASE IF I'M NOT MISTAKEN.

24          MR. ARCHER:  IT IS, YOUR HONOR.

25          THE COURT:  RIGHT.  AND THAT'S A 1943 CASE.

227

```
 1              MR. ARCHER:  IT IS.

 2              THE COURT:  RIGHT.  AND I'M JUST CURIOUS WHY YOU

 3      THINK THAT LANGUAGE IS NECESSARY, RECOGNIZING THAT IT'S IN

 4      LEPOWITCH AND YOU THINK IT SHOULD FOLLOW HERE, BUT WHY IS IT

 5      NECESSARY HERE GIVEN THE FACTS AND CIRCUMSTANCES OF THIS CASE

 6      WHICH ARE VASTLY DIFFERENT, OF COURSE, FROM TOMSHA-MIGUEL AND

 7      LEPOWITCH?

 8              MR. ARCHER:  IN THIS CASE, YOUR HONOR, I THINK IT'S

 9      ESSENTIAL BECAUSE THE DEFENSE'S PERSPECTIVE IS THAT YOU HAVE IA

10      SINGLE VOICEMAIL HERE AND THAT THERE IS -- THAT THERE'S A

11      DANGER -- A REAL DANGER HERE THAT THE JURY COULD, WITHOUT THIS

12      SORT OF ADDITIONAL INFORMATION ABOUT INTENT.

13          BECAUSE REALLY WHAT THIS SPEAKS TO IS THE INTENT.  AND, I

14      MEAN, THAT LANGUAGE SPECIFICALLY SAYS THAT THIS IS WHAT THE

15      INTENT TO DECEIVE MEANS.

16          WITHOUT EVEN -- AND SO WITHOUT THAT LANGUAGE ABOUT INTENT,

17      AS THE INSTRUCTION STANDS, COULD A JURY NOT FIND SOMEONE GUILTY

18      OF THIS OFFENSE SIMPLY FOR UTTERING THOSE WORDS WITHOUT ANY --

19      WITHOUT HAVING TO DECIDE WHAT THE PERSON'S INTENT WAS?

20          AND I MEAN, SO THAT, THAT SEEMS TO RUN AFOUL OF WHAT THE

21      LEPOWITCH CASE SAYS.

22          LEPOWITCH -- I DON'T THINK THERE'S ANY -- IT IS AN OLD

23      CASE, BUT THERE'S NOT A LOT OF LAW OUT THERE ON THESE CASES AND

24      IT'S ACKNOWLEDGED BY TOMSHA-MIGUEL AS THE STANDARD.  I THINK

25      IT'S, UNLESS I'M MISTAKEN, IT WAS THE LAST TIME THAT THE UNITED
```

1    STATES SUPREME COURT RULED ON THIS.  IN FACT, THE CIRCUIT SPLIT

2    HAS BEEN FLOURISHING, I THINK, SINCE THE LATE '60S OR EARLY

3    '70S.

4         SO I'M FAIRLY CERTAIN THAT 1943 WAS THE LAST TIME THAT

5    THIS WAS WEIGHED IN ON.  SO IT REMAINS GOOD LAW, AND IT HAS NOT

6    BEEN OVERTURNED.  AND THAT'S OUR REAL FEAR IS THAT THERE'S

7    GOING TO BE SOME PERCEPTION BY THE JURY THAT JUST THE UTTERANCE

8    OF THESE WORDS WITHOUT AN ACCOMPANYING INTENT TO DECEIVE COULD

9    SUSTAIN A CONVICTION AND THAT APPROACH IS REALLY SETTING ASIDE

10   ANY KIND OF FRAUDULENT INTENT.  AN APPROACH IS A STRICT

11   LIABILITY STANDARD WHICH IS CERTAINLY NOT WHAT THE LEPOWITCH

12   COURT IS PUTTING FORTH WHEN IT DISCUSSES HOW INTERWOVEN THE

13   INTENT TO DECEIVE IS IN THE STATUTE.

14        AND SO I DON'T SEE ANYTHING FROM THE PROPOSED MODEL NINTH

15   CIRCUIT JURY INSTRUCTION THAT WOULD TELL THE JURY, HEY, THIS IS

16   NOT STRICT LIABILITY.  SIMPLY UTTERING THESE WORDS IS NOT

17   ENOUGH TO SUSTAIN THIS CRIME.

18        AND THAT'S THE DEFENSE'S CONCERN, AND THAT'S WHY

19   SPECIFICALLY IN THIS CASE THE DEFENSE THINKS IT'S A

20   PARTICULARLY DANGEROUS SITUATION BECAUSE YOU COULD HAVE THE

21   LANGUAGE IN THE VOICEMAIL AND YOU CAN PUT IT IN ALMOST ANY

22   CONTEXT AND WITHOUT SOME ADDITIONAL INSTRUCTION TO THE JURY,

23   HOW ARE THEY TO DETERMINE WHETHER THAT LANGUAGE -- WHETHER THAT

24   LANGUAGE CONSTITUTES A CRIME IN ANY CONTEXT.

25             THE COURT:  WELL, IS THE LANGUAGE OFFENSIVE LANGUAGE

1    WHERE AN INDIVIDUAL -- WHERE THE RECORDING STATES I'M WITH THE

2    I.R.S., ISN'T THAT THE OFFENSE, THE REPRESENTATION, THE

3    IMPERSONATION OF A GOVERNMENT OFFICIAL?  ISN'T THAT THE DECEIT?

4            MR. ARCHER:  BUT THE DECEIT HAS TO BE, ACCORDING TO

5    LEPOWITCH, THE DECEIT HAS TO BE TAILORED TO ACCOMPLISH SOME

6    OTHER GOAL, SOME OTHER -- I MEAN, IT HAS TO BE -- THE DECEIT

7    ITSELF HAS TO BE -- IT'S NOT, YOUR HONOR.  THAT'S THE

8    IMPERSONATION.

9            THE COURT:  RIGHT.

10           MR. ARCHER:  BUT THE LANGUAGE FROM LEPOWITCH, WHICH

11   IS INCLUDED IN OUR PROPOSED INSTRUCTION, MAKES IT VERY CLEAR

12   THAT IT'S NOT JUST TELLING AN UNTRUTH.  IN FACT, THERE'S

13   SEVERAL CASES AND IT'S ACKNOWLEDGED IN TOMSHA-MIGUEL THAT MERE

14   BRAVADO IS NOT.

15       SO IF I GO TO A DINNER PARTY AND I BRAG THAT I'M AN AGENT

16   OF THE I.R.S., AND THAT IS -- IN FACT, I AM NOT.  I MEAN, AS A

17   MATTER OF LAW THAT'S NOT A CRIME.  THE ACTING AS SUCH, THE JURY

18   HAS TO HAVE SOME GUIDANCE AS TO WHAT THE ACTING AS SUCH IS AND

19   WHAT THE PURPOSE OF THE STATEMENT IS.

20       BECAUSE AS THE JURY INSTRUCTION STANDS, THERE'S NOTHING IN

21   THERE THAT WARNS THE JURY THAT MERE BRAVADO, AS HAS BEEN HELD

22   PREVIOUSLY, IS NOT SUFFICIENT TO BE A CRIME.

23           THE COURT:  SO DO THE FACTS AS WE KNOW THEM SO FAR,

24   WE'RE STILL MID TRIAL, BUT DO THE FACTS OF THIS CASE SUPPORT

25   GIVING THAT LAST PARAGRAPH THAT YOU'VE SUPPLIED WITH THE INTENT

1     TO CAUSE A PERSON TO FOLLOW SOME COURSE OF ACTION OR INACTION?

2           MR. ARCHER:  I THINK THEY DO.  WELL, THEY'RE THE

3     GOVERNMENT'S --

4           THE COURT:  WHAT IS THAT?

5           MR. ARCHER:  WELL, I THINK IT'S NOT MET FROM THE

6     DEFENSE'S PERSPECTIVE BUT IT DOESN'T -- IT'S, IT'S SOMETHING

7     THAT IS --

8           THE COURT:  I MEAN, AREN'T YOU CREATING ADDITIONAL

9     ELEMENTS BY INSTRUCTING THE JURY, THEN?

10          MR. ARCHER:  NO, NOT THE ELEMENTS BEYOND WHAT ARE

11    CONSTITUTIONALLY REQUIRED BY THE STATUTE AND FOUND TO BE PART

12    OF THE STATUTE BY THE LEPOWITCH CASE AND THE UNITED STATES

13    SUPREME COURT.

14       I DON'T THINK THAT IT'S -- THERE DOESN'T HAVE TO BE A

15    SHOWING OF PROOF TO ADD -- TO MAKE SURE THAT WE HAVE THE

16    CORRECT LANGUAGE IN THERE; RIGHT?

17       IT'S NOT THAT THE JURY IS GOING TO BE MISLED AND NEEDS TO

18    BE CORRECTED.

19       THESE -- THIS DEFINES THE OFFENSE.  I DON'T -- I'M NOT

20    SURE I QUITE UNDERSTAND THE COURT'S QUESTION BECAUSE I THINK

21    THAT --

22          THE COURT:  WELL, YOU HAVE ADDED TO THE MODEL 912,

23    YOUR PARAGRAPH 3, DID SO KNOWINGLY WITH INTENT TO DECEIVE

24    ANOTHER.

25          AND THEN YOU HAVE BELOW ENUMERATED 3 A SENTENCE.

1          MR. ARCHER:  YES.

2          THE COURT:  AND I'M ASKING WHY IS THAT SENTENCE

3    NECESSARY?  I GUESS THAT'S MY QUESTION.

4          MR. ARCHER:  THAT SENTENCE IS NECESSARY BECAUSE

5    IT'S, IT'S -- THAT'S WHAT THE SUPREME COURT HAS INTERPRETED 912

6    TO INCLUDE.

7        I MEAN, THAT IS THAT THE INTENT TO DECEIVE INCLUDES AN

8    ATTEMPT TO STEER SOMEONE ON A COURSE EITHER TO ACTION OR

9    INACTION.

10        AND SO IT'S NOT -- IF THERE IS NO EVIDENCE OF THAT IN THE

11   CASE, THEN THE ELEMENT HASN'T BEEN MET.  IT'S NOT THAT IT IS

12   SORT OF A -- FROM THE DEFENSE'S PERSPECTIVE AN OPTIONAL PORTION

13   OF AN INSTRUCTION WHERE, YOU KNOW, SOMETHING IN THE CASE MIGHT

14   TRIGGER GIVING OF THAT PORTION OF THE INSTRUCTION.  IT'S AT THE

15   CORE OF 912.  IT'S THE CORE OF DECEIT THAT LEPOWITCH REQUIRES.

16        AND IT SHOULD BE GIVEN IN EVERY CASE.  AND THE DEFENSE'S

17   PARTICULAR CONCERN ABOUT THIS CASE IS THAT FROM A SINGLE

18   VOICEMAIL WITHOUT GUIDANCE, THAT THE JURY COULD THINK THAT THE

19   MERE UTTERANCE OF THE WORDS COULD SUSTAIN A CONVICTION.

20        BUT I DON'T THINK THERE NEEDS TO BE ANY CASE SPECIFIC TO

21   TRIGGER GIVING IT, AND I DON'T THINK IT IS SUPERFLUOUS.  AND I

22   THINK IT IS ESSENTIAL TO THE CORE OF THE ELEMENTS OF 912.

23        OTHER CIRCUITS CERTAINLY DISAGREE WITH THE NINTH CIRCUIT

24   AS TO THEIR MODEL INSTRUCTION AND THIS LANGUAGE IS INCLUDED IN

25   BOTH THE EIGHTH OR THE ELEVENTH OR SOME CLOSE VERSION OF THAT.

1          THE COURT:  OKAY.  ANYTHING FURTHER?

2          MS. PENNA:  NOTHING FURTHER.

3          THE COURT:  WELL, THANK YOU FOR THE CONVERSATION.  I

4    APPRECIATE THE INSIGHT, AND I APPRECIATE THE HELP ON THAT.  I

5    THINK WHAT YOU'RE SUGGESTING THE COURT TO DO IS TO DEPART FROM

6    FIDELITY FROM THE NINTH CIRCUIT MODEL INSTRUCTION AND ADOPT THE

7    NOT JUST THE EIGHTH OR THE ELEVENTH CIRCUIT BUT A HYBRID OF

8    BOTH OF THOSE.  I THINK THAT'S WHAT YOUR SUGGESTED

9    INSTRUCTION HAS.

10          MR. ARCHER:  YOUR HONOR, BUT ONLY IN CONCERT.  AND

11   THE DEFENSE'S POSITION IS THAT IT IS NOT -- THAT WHILE IT

12   CONFLICTS WITH THE NONBINDING MODEL INSTRUCTION FROM THE 2010

13   NINTH CIRCUIT INSTRUCTIONS, BUT IT DOES NOT IN EFFECT COMPORT

14   WITH THE ACKNOWLEDGED LAW OF THE LAND UNDER TOMSHA-MIGUEL

15   ACKNOWLEDGING LEPOWITCH BEING GOOD LAW AND THE OTHER STANDARDS

16   REQUIRING AN INTENT TO DECEIVE WOVEN INTO THE STATUTE ITSELF.

17          THE COURT:  OKAY.  ALL RIGHT.  WELL, THANK YOU VERY

18   MUCH.

19          I'M GOING TO USE THE -- I AM GOING TO OWE FIDELITY TO THE

20   NINTH CIRCUIT MODEL, AND I BELIEVE THE NINTH CIRCUIT MODEL DOES

21   PROVIDE SUFFICIENT GUIDANCE TO THE JURY AND SO OVER YOUR

22   OBJECTION I'M GOING TO GIVE THE MODEL 8.50 AND PRESERVE THE

23   ARGUMENT OBVIOUSLY FOR THE RECORD.

24          I WANT TO TURN TO 223 AND I DIDN'T PRINT OUT -- I THINK WE

25   RECEIVED FROM THE GOVERNMENT COPIES OF SAMPLE INSTRUCTIONS, AND

1    I DON'T REMEMBER WHAT NUMBER IT IS.  BUT THIS IS FOR COUNT 2.

2              MR. ARCHER:  MAY I ASK A QUICK PROCEDURAL QUESTION,

3    YOUR HONOR?

4              THE COURT:  YES, YES.

5              MR. ARCHER:  AS TO PRESERVING THE OBJECTIONS FROM

6    THE JURY INSTRUCTIONS, MY UNDERSTANDING FROM THE BRAIN TRUSTS

7    AT OUR OFFICE IS THAT I SHOULD PRESERVE THE INSTRUCTION BY --

8    OR PRESERVE THE OBJECTION BUT OBJECT CONTEMPORANEOUSLY AND SO

9    IS IT POSSIBLE THAT WE CAN BREAK AT SOME POINT PRIOR TO THE

10   INSTRUCTION OUTSIDE OF THE PRESENCE OF THE JURY FOR ME TO RENEW

11   MY OBJECTION TO THE PARTICULAR?

12             THE COURT:  SURE, WE CAN DO THAT.  WE'LL ACCOMPLISH

13   THAT.

14        (PAUSE IN PROCEEDINGS.)

15             MR. ARCHER:  YOUR HONOR, IF I MAY, ONE FURTHER THING

16   AS TO COUNT 1.

17             THE COURT:  YES.

18             MR. ARCHER:  THE DEFENSE HAD FILED YESTERDAY

19   PROPOSED INSTRUCTIONS REGARDING INTENT AND MATERIALITY AS WELL

20   AS THE REQUIREMENT OF AN INITIAL ACT.  THOSE ARE COROLLARY

21   INSTRUCTIONS TO COUNT 1.

22        IS IT THE COURT'S INTENT TO DENY THE DEFENSE REQUEST FOR

23   THE --

24             THE COURT:  WHAT DOCUMENT WAS THAT?

25             MR. ARCHER:  THAT WAS DOCUMENT 67, YOUR HONOR.

1        (PAUSE IN PROCEEDINGS.)

2            THE COURT:  THIS IS PAGE 2 AND 3 OF DOCUMENT 67, I

3    THINK, MR. ARCHER.

4            MR. ARCHER:  YES, YOUR HONOR.

5            THE COURT:  AND I THINK WE TALKED ABOUT THIS

6    YESTERDAY.  DOES THE GOVERNMENT WISH TO ADD ANYTHING?

7            MS. PENNA:  YOUR HONOR, IT WAS OUR UNDERSTANDING

8    THAT WE HAD DECIDED ON THE -- NOTHING FURTHER ON THIS, YOUR

9    HONOR.

10           THE COURT:  ALL RIGHT.  THANK YOU.  YES.  SO I'M NOT

11   GOING TO GIVE THOSE, MR. ARCHER.  WE MAY HAVE TALKED ABOUT THAT

12   YESTERDAY.  I THOUGHT WE DID.  IF WE HADN'T, LET ME JUST

13   CLARIFY THAT NOW.

14       YOUR DOCUMENT 67, PAGE 2 AND PAGE 3, INTENT AND

15   MATERIALITY REQUIREMENT, REQUIREMENT OF ADDITIONAL ACT.  IF YOU

16   WOULD POSE THOSE AS JURY INSTRUCTIONS, ADDITIONAL INSTRUCTIONS

17   AS TO THE 912, I'M NOT GOING TO GIVE THOSE, AND AGAIN, PRESERVE

18   YOUR OBJECTION FOR THE RECORD.

19           MR. ARCHER:  THANK YOU, YOUR HONOR.

20           THE COURT:  ALL RIGHT.  SO IN THE SAMPLE

21   INSTRUCTIONS THAT WERE SENT VIA E-MAIL, JURY INSTRUCTION NUMBER

22   12 AND JURY INSTRUCTION NUMBER 13 BOTH RELATE TO 912 AND SO AS

23   TO NUMBER, I'M NOT GOING TO GIVE 13 IF THAT MAKES SENSE.  I

24   JUST WANTED TO GIVE GUIDANCE TO THE GOVERNMENT.

25           AND THEN AS TO THE REMAINING INSTRUCTIONS WE WILL WAIT TO

1    SEE WHAT -- WHETHER OR NOT ADDITIONAL INSTRUCTIONS WILL BE

2    NECESSARY.

3         I WILL TOMORROW READ 2.7 TO THE JURY WHEN I ASSUME THAT

4    THERE'S GOING TO BE ANOTHER PLAYING OF THE TAPE.

5         MR. SCHENK:  YES, YOUR HONOR.

6         THE COURT:  AND I'LL TRY AND INCORPORATE BY

7    REFERENCE TOMORROW'S READING TO TUESDAY'S READING.

8         ANYTHING ELSE WE NEED TO DO TODAY?

9         MS. PENNA:  NOTHING FURTHER.

10        MR. SCHENK:  OH, THE -- MY RECOLLECTION IS THAT THE

11   COURT GRANTED A GOVERNMENT PRETRIAL MOTION IN LIMINE REGARDING

12   NULLIFICATION ARGUMENTS.

13        AND INSTEAD OF JUMPING UP IN CLOSING AND OBJECTING, I

14   PREVIEWED FOR THE COURT AN ARGUMENT THAT MR. ARCHER'S OPENING

15   MAKES ME WONDER IF IT WILL BE MADE IN CLOSING, AND, THAT IS,

16   THE IMPRESSION THAT I GOT FROM THE OPENING, MR. ARCHER'S

17   ARGUMENT IN OPENING, WERE THAT WE'RE IN FEDERAL COURT FOR A

18   SILLY REASON.  JUST ONE VOICEMAIL, THAT'S NOT A FEDERAL CRIME

19   OR SOMETHING TO THAT EFFECT.

20        AND IT'S THE GOVERNMENT'S POSITION THAT THAT DOES BEG THE

21   JURY TO SAY COURT'S INSTRUCTIONS ASIDE, MR. ARCHER IS RIGHT,

22   THIS IS CRAZY, IT'S SILLY FOR US TO BE IN FEDERAL COURT WASTING

23   OUR TIME OVER A SILLY CASE AND THAT'S THE HEARTLAND OF

24   NULLIFICATION AND, IN FACT, THE REASON THE GOVERNMENT FILED, WE

25   DON'T FILE IN EVERY CASE A NULLIFICATION MOTION IN LIMINE, BUT

1    TO DISCOURAGE THE JURY TO IGNORE ITS DUTY BUT RATHER TO SAY WE

2    HAVE BETTER IDEAS THAN THE WAY COURTS AND RESOURCES SHOULD BE

3    SPENT, AND WE'RE GOING TO EXERCISE OUR VOTE HERE IN AN ATTEMPT

4    TO DEMONSTRATE OUR BELIEFS ABOUT THAT ISSUE.

5         AND REALLY THE HEART OF IT IS THAT IT'S A QUESTION OF

6    PUNISHMENT, YOU KNOW, A MEASUREMENT OF THE SERIOUSNESS OF THE

7    OFFENSE IS A MEASUREMENT THAT THE COURT MAKES SHOULD WE GET TO

8    THAT STAGE.  IT'S WHAT THE COURT TAKES OUT AND MAKES THAT

9    MEASUREMENT AT THAT POINT BUT TO ASK THE JURY TO EVALUATE THE

10   SERIOUSNESS OF THE OFFENSE AND WHY WE WOULD BE IN FEDERAL COURT

11   ON SUCH FACTS REALLY BEGS THEM TO EITHER VIEW PUNISHMENT AND/OR

12   TO NULLIFY OR IGNORE WHAT THE COURT INSTRUCTS THEM ON.

13        AND SO I RAISE IT NOW BECAUSE I DON'T WANT TO HAVE SUCH A

14   LONG SPEAKING OBJECTION IN THE MIDDLE OF CLOSING.

15             THE COURT:  ALL RIGHT.  THANK YOU.

16        MR. ARCHER.

17             MR. ARCHER:  YOUR HONOR, WITHOUT HAVING SEEN THE

18   BALANCE OF THE GOVERNMENT'S EVIDENCE, I HAVE NO INTENTION OF

19   ARGUING IN CLOSING THAT THE JURY SHOULD IGNORE THE LAW AS GIVEN

20   TO THEM BY THE COURT.

21        COMMENTING ON THE PAUCITY OF THE EVIDENCE IS SOMETHING

22   THAT I THINK DEFENSE COUNSEL DOES IN MOST EVERY TRIAL.

23             THE COURT:  THAT'S VERY DIFFERENT.

24             MR. ARCHER:  UNDERSTOOD.  AND THE -- HE'S CHARGED

25   WITH A FEDERAL CRIME AND THE FEDERAL CRIME HAS CERTAIN ELEMENTS

1    TO IT.  I DON'T THINK THERE'S ANYTHING THAT SUGGESTS THAT BY

2    REFERRING TO IT AS A FEDERAL CRIME AND PERHAPS NOT BEING

3    PARTICULARLY RESPECTFUL OF THE PARTICULAR CASE THAT IS BEING

4    BROUGHT HERE, SHY OF INSTRUCTING THE JURORS NOT -- YOU KNOW,

5    THAT THEY SHOULD IGNORE THE LAW AND DO SOMETHING ELSE, I DON'T

6    THINK I'M GOING TO COME ANYWHERE CLOSE TO JURY NULLIFICATION

7    SO.

8             THE COURT:  OKAY.  WELL, THAT COMES UP IN SITUATIONS

9    WHERE SOMEONE MIGHT SAY COMPARED TO THIS OFFENSE, THIS IS A

10   MINOR OFFENSE AND WE SHOULDN'T -- WE SHOULD CONSIDER IT AS SUCH

11   AND SOMEHOW DEVALUE IN SOME MANNER THE NATURE OF THE CHARGES AS

12   OPPOSED TO SPEAKING TO THE STRENGTHS AND WEAKNESSES OF THE

13   EVIDENCE.

14            MR. ARCHER:  WELL, I THINK -- I DO WANT TO CLARIFY,

15   YOUR HONOR, BECAUSE I DO THINK IT WOULD BE APPROPRIATE TO

16   COMPARE THE FACTS OF THIS CASE TO FACTS THAT DO CONSTITUTE A

17   CRIME BECAUSE IT'S THE DEFENSE'S PERSPECTIVE, OF COURSE, THAT

18   THESE TWO NOT -- THAT THE OFFENSE HERE, THAT THE EVIDENCE THAT

19   IS GOING TO BE INTRODUCED IS NOT GOING TO FIT THE ELEMENTS, AND

20   THERE ARE CERTAIN CRIMES THAT DO.  AND I THINK THAT DRAWING A

21   CONTRAST BETWEEN THAT AND THE EVIDENCE HERE WOULD BE

22   APPROPRIATE.

23       I DON'T THINK THAT'S JURY NULLIFICATION AND SO I DON'T

24   WANT TO BE FORECLOSED FROM GIVING EXAMPLES OF WHAT THE PURPOSE

25   OF THE STATUTE IS.

1           THE COURT:  NO.  YOU CAN ARGUE THAT.  BUT TALKING

2     ABOUT OTHER CRIMES AND SAYING THAT THIS CASE DOESN'T MEET THE

3     ELEMENTS OF SOME OTHER OFFENSE IS NOT RELEVANT, NUMBER ONE.

4           MR. ARCHER:  SURE.  I CERTAINLY WAS NOT GOING TO

5     COMPARE THIS TO, YOU KNOW, A MURDER OR A -- ANYTHING LIKE THAT.

6     I MEAN WITHIN THE CONFINES OF 912, YOU KNOW, PERHAPS AN

7     ARGUMENT -- I WANT TO MAKE SURE THAT I WAS NOT FORECLOSED FROM

8     GIVING AN ARGUMENT THAT HERE ARE THE SET OF FACTS THAT WOULD

9     MEET THESE ELEMENTS, AND THIS IS A SET OF FACTS THAT DOES NOT.

10    I THINK THAT'S A COMPLETELY APPROPRIATE ARGUMENT.

11          THE COURT:  I DON'T KNOW WHAT TO TELL YOU OTHER THAN

12    WE'LL SEE.

13          MR. ARCHER:  OKAY.

14          THE COURT:  BUT I APPRECIATE THE DISCUSSION ANYHOW

15    AND FRAMING IT.

16       SO I GUESS THE GOVERNMENT WITH THESE CHANGES TODAY, YOU

17    CAN JUST ROLL ANOTHER SAMPLE SERIES OF INSTRUCTIONS.

18          MR. SCHENK:  YES.  AND I THINK OUR INTENT WAS TO

19    ALSO E-FILE A COPY.  WE WANTED TO HAVE THIS DISCUSSION BEFORE

20    SO WE DON'T HAVE MULTIPLE VERSIONS THAT ARE EDITED.  BUT

21    RENUMBERING -- REMOVING THE TWO VERSIONS AND THEN RENUMBERING

22    THEM AFTER THAT, IF THE COURT WANTS WE'LL E-FILE TODAY AND THE

23    ONLY QUESTION IS THAT THERE IS STILL INSTRUCTIONS TO BE PULLED,

24    FOR INSTANCE, THE FORK IN THE ROAD AT DECISION -- DEFENDANT'S

25    DECISION TO TESTIFY OR NOT.  WE WILL HAVE TO MAKE THAT LATER

1    AND SO WE'RE ALSO HAPPY TO WAIT AND E-FILE JUST ONE COPY AT THE

2    VERY END, ALTHOUGH WE MAY NOT BE ABLE TO DO IT BEFORE THE

3    INSTRUCTIONS ARE GIVEN DEPENDING ON HOW QUICKLY.

4            THE COURT:  WELL, I THINK WE CAN -- IF YOU WANT TO

5    PREPARE AND SEND AN E-MAIL OUT TODAY WITH JUST WHAT WE HAVE,

6    OUR WORKING PRODUCT NOW, IT SHOULD BE RELATIVELY EASY TO PULL

7    WHAT WE DON'T NEED AND ADD SOMETHING ALSO, FOR EXAMPLE, THE

8    LIMITING INSTRUCTIONS, IF THERE IS ONE.  WE CAN ADD THAT AS

9    NECESSARY.

10        IT WOULD BE NICE TO HAVE KIND OF A ROLLING WORKING COPY.

11            MR. SCHENK:  WE WILL, YOUR HONOR.

12            THE COURT:  YOU DON'T HAVE TO E-FILE IT.

13            MR. SCHENK:  OKAY.

14            THE COURT:  BUT WE'LL GET THAT TO COUNSEL JUST FOR

15    CONVENIENCE SO WE HAVE A WORKING.

16            MR. SCHENK:  THE SAME WITH THE VERDICT FORM OR

17    SHOULD WE -- I DON'T KNOW THAT WE'VE MADE ANY CHANGES TO WHAT

18    WE SENT YESTERDAY.  SO WE CAN E-FILE THAT ONE?

19            THE COURT:  RIGHT.  I THINK THAT CAN BE E-FILED.

20            MR. SCHENK:  YES, SIR.

21            THE COURT:  WHAT TIME IS YOUR WITNESS GOING TO BE

22    HERE, 9:00?

23            MR. SCHENK:  YES, SIR.

24            THE COURT:  9:00 O'CLOCK.  AND THEN WHAT I HEARD IS

25    THAT THE WITNESS -- WHAT I REMEMBER IS THAT THE WITNESS IS

1   GOING TO TAKE ALL OF AN HOUR?

2           MR. SCHENK:  YES.  I THINK THAT OUR REMAINING TWO

3   WITNESSES WILL -- 90 MINUTES AT MOST FOR BOTH, NOT

4   INDIVIDUALLY.

5           THE COURT:  IS THAT DIRECT OR --

6           MR. SCHENK:  NO.  I WAS PREDICTING THE LENGTH OF

7   CROSS.

8           THE COURT:  OKAY.

9           MR. SCHENK:  ALTHOUGH I MIGHT BE POOR AT THAT.

10          THE COURT:  SO THAT GIVES ME PAUSE TO THINK TOMORROW

11   ARE WE GOING TO HAVE CLOSINGS AND THEN INSTRUCTION TOMORROW?

12          MR. ARCHER:  SHOULD THERE BE NO DEFENSE CASE IT

13   WOULD SEEM THAT WE WOULD BE CLOSING TOMORROW AND INSTRUCTING

14   TOMORROW I WOULD THINK.

15          THE COURT:  OKAY.  GREAT.  ALL RIGHT.  THANK YOU

16   VERY MUCH.

17          MR. SCHENK:  THANK YOU.

18          MR. ARCHER:  THANK YOU, YOUR HONOR.

19       (COURT CONCLUDED AT 3:13 P.M.)

20

21

22

23

24

25

1
2
3                        CERTIFICATE OF REPORTER
4
5
6
7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED
8      STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,
9      280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY
10     CERTIFY:
11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12     A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13     ABOVE-ENTITLED MATTER.
14
15
16         IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074
17
18
           DATED:  FEBRUARY 12, 2016
19
20
21
22
23
24
25