1                  UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
2                         SAN JOSE DIVISION

3

    UNITED STATES OF AMERICA,
4
              PLAINTIFF,              CASE NO.  CR-15-0226-EJD
5
        VS.                           SAN JOSE, CALIFORNIA
6
    DOUGLAS STROMS YORK,              JANUARY 4, 2016
7
              DEFENDANT.              PAGES 1 - 23
8

9
                    TRANSCRIPT OF SENTENCING
10          BEFORE THE HONORABLE EDWARD J. DAVILA
                 UNITED STATES DISTRICT JUDGE
11

12                  A-P-P-E-A-R-A-N-C-E-S

13

    FOR THE PLAINTIFF:    OFFICE OF THE UNITED STATES ATTORNEY
14                        BY:   JEFF SCHENK
                          50 ALMADEN BOULEVARD, SUITE 900
15                        SAN JOSE, CALIFORNIA 95113

16
    FOR THE DEFENDANT:    OFFICE OF THE FEDERAL PUBLIC DEFENDER
17                        BY:   GRAHAM ARCHER
                          55 S. MARKET STREET, SUITE 820
18                        SAN JOSE, CALIFORNIA 95113

19   U.S. PROBATION:       KYLE POLLAK

20    OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                  CERTIFICATE NUMBER 8074
21

22       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
    TRANSCRIPT PRODUCED WITH COMPUTER.
23

24

25

```
 1    SAN JOSE, CALIFORNIA                    JANUARY 4, 2016

 2                    P R O C E E D I N G S

 3        (COURT CONVENED AT 3:30 P.M.)

 4             THE CLERK:  PLEASE BE SEATED.

 5             THE CLERK:  CALLING CASE NUMBER 15-226, UNITED

 6    STATES VERSUS DOUGLAS YORK.

 7             MR. SCHENK:  JEFF SCHENK FOR THE UNITED STATES.

 8    GOOD AFTERNOON.

 9             THE COURT:  GOOD AFTERNOON.

10             MR. ARCHER:  GOOD AFTERNOON, YOUR HONOR.

11    GRAHAM ARCHER FOR MR. YORK WHO APPEARS BEFORE THE COURT OUT OF

12    CUSTODY.

13             THE DEFENDANT:  GOOD AFTERNOON.

14             THE COURT:  GOOD AFTERNOON.

15             PROBATION OFFICER:  GOOD AFTERNOON, YOUR HONOR.

16    KYLE POLLAK FOR U.S. PROBATION.

17             THE COURT:  THIS MATTER APPEARS BEFORE THE COURT FOR

18    SENTENCING.

19        ARE ALL PARTIES READY TO PROCEED?

20             MR. ARCHER:  YES, YOUR HONOR.

21             MR. SCHENK:  YES, YOUR HONOR.

22             THE COURT:  AND I DO HAVE THE PROBATION REPORT.  ARE

23    THERE ANY ADDITIONS, DELETIONS TO THE REPORT?  ANY CHANGES TO

24    THE REPORT?

25             PROBATION OFFICER:  NOT FROM PROBATION, YOUR HONOR.
```

```
1              MR. ARCHER:  OKAY.  I DON'T THINK I HAVE THAT POWER,

2    YOUR HONOR.

3              THE COURT:  OKAY.  I WANT TO REFER US TO PAGE 24,

4    PARAGRAPH 63.  I THINK THERE'S A TYPO.  LET'S SEE.  I GUESS I

5    SHOULD ASK IF THERE'S A TYPO IN THE PARAGRAPH THAT DESCRIBES

6    THE 9-13-2015 OFFENSE, THE THIRD LINE, I THINK THE WORD SHOULD

7    READ "ATTACKED."

8              PROBATION OFFICER:  THAT'S CORRECT, YOUR HONOR.

9              THE COURT:  SO WE'LL CORRECT THAT.

10        LET ME INDICATE THAT I HAVE REVIEWED THE DEFENDANT'S

11   SENTENCING MEMORANDUM, DOCUMENT NUMBER 94; I'VE REVIEWED THE

12   UNITED STATES SENTENCING MEMORANDUM, DOCUMENT NUMBER 95, AS

13   WELL AS THE PRESENTENCE REPORT.

14        ANY OTHER DOCUMENTS THAT I HAVEN'T REFERENCED THAT COUNSEL

15   HAVE SUPPLIED?

16              MR. ARCHER:  NO, YOUR HONOR.

17              MR. ARCHER:  NO, YOUR HONOR.

18              THE COURT:  ALL RIGHT.  THANK YOU.  LET'S GO THROUGH

19   THE GUIDELINE CALCULATIONS.

20        AND, FIRST OF ALL, I THINK THOSE APPEAR ON PAGE 8,

21   BEGINNING ON PAGE 8 OF MR. POLLAK'S REPORT.  THE BASE OFFENSE

22   LEVEL IS 6.  THE TOTAL OFFENSE LEVEL IS 6.  THE CRIMINAL

23   HISTORY CATEGORY IS 6.  THAT YIELDS A GUIDELINE CALCULATION OF

24   12 TO 18 MONTHS.

25              DO COUNSEL AGREE WITH THE GUIDELINE CALCULATION?
```

1          MR. SCHENK:  YES, YOUR HONOR.

2          MR. ARCHER:  YES, YOUR HONOR.

3          THE COURT:  ALL RIGHT.  THANK YOU.  DO EITHER

4     COUNSEL WISH TO BE HEARD?

5          MR. ARCHER:  YES, YOUR HONOR.  AND I DON'T KNOW HOW

6     THE COURT WOULD LIKE TO STRUCTURE IT.  MR. YORK WOULD LIKE TO

7     TALK TO THE COURT BRIEFLY AND HIS MOTHER, PAMELA BEALE, WOULD

8     ALSO LIKE TO TALK TO THE COURT, AND THEN I WILL MAKE SOME

9     ARGUMENTS.

10          THE COURT:  ARE THERE ANY VICTIMS PRESENT?

11          MR. SCHENK:  THERE IS A VICTIM PRESENT, BUT THE

12     VICTIM DOES NOT WISH TO BE HEARD.

13          THE COURT:  SHOULD WE IDENTIFY THE VICTIM FOR THE

14     RECORD?

15          MR. SCHENK:  YOUR HONOR, MR. HESSENFLOW.

16          THE COURT:  ALL RIGHT.  THANK YOU, SIR.  WE'LL NOTE

17     YOUR PRESENCE.  THANK YOU FOR BEING HERE.

18        WELL, LET ME ASK, DOES THE GOVERNMENT WISH TO BE HEARD?

19          MR. SCHENK:  YES, YOUR HONOR, ON THE SENTENCING.

20          THE COURT:  YES.

21          MR. SCHENK:  SURE.  THE GOVERNMENT ASKS THE COURT TO

22     IMPOSE A GUIDELINE SENTENCE OF 12 MONTHS.  PROBATION ASKS FOR

23     12 MONTHS AND 1 DAY.  THE COURT KNOWS THE SIGNIFICANCE OF THE

24     ADDITIONAL DAY.

25        THE REASON THE COURT SHOULD NOT GIVE MR. YORK THAT BENEFIT

1    IS BECAUSE WHEN THE GOVERNMENT CAME UP WITH ITS SENTENCING

2    RECOMMENDATION, IT'S REQUIRED TO, AS THE COURT IS, LOOK AT THE

3    FACTORS IN 3553(A), AND THEY REALLY DIVIDE IT INTO TWO

4    CATEGORIES, SPECIFIC AND GENERAL DETERRENCE.

5        I CAN'T MAKE A VERY GOOD ARGUMENT FOR YOU WHY THE COURT

6    RECEIVES MUCH MARGINAL BENEFIT TO INCREASING THE SENTENCE FOR

7    GENERAL DETERRENCE.

8        MUCH OF THE DEFENDANT'S SENTENCING MEMO, AND, FRANKLY, HIS

9    TREATMENT OF THE CASE IS DISMISSIVE OF THE OFFENSE; RIGHT?

10   THIS IS NOT WHAT THE STATUTE WAS SUPPOSED TO CHARGE.  I CAN'T

11   BELIEVE THAT A FEDERAL CASE WAS MADE OUT OF THIS.  LOOK AT ALL

12   OF THE REALLY BAD CONDUCT THAT COULD STILL FIT IN THIS STATUTE,

13   AND, THEREFORE, RELATIVELY SPEAKING, MR. YORK'S CONDUCT REALLY

14   WASN'T THAT BAD.

15       PEOPLE ARE NOT GOING TO CHOOSE TO COMMIT THIS CRIME 912 OR

16   NOT COMMIT THIS CRIME IF YOUR HONOR IMPOSES A 14 MONTH SENTENCE

17   OR 16 MONTH SENTENCE.  THE PUBLIC IS NOT GOING TO SAY, WELL, I

18   WOULD HAVE IMPERSONATED A FEDERAL OFFICER IF YOU GAVE HIM

19   16 MONTHS BUT BECAUSE YOU GAVE HIM 12 MONTHS, I'M NOT GOING TO

20   DO IT.

21       THIS IS NOT SOMETHING THAT THIS COURT IS CONSIDERING.

22   ANYTHING WITHIN THE GUIDELINES, FRANKLY, EVEN SOMETHING DOWN TO

23   TIME SERVED, SUFFERS FOR GENERAL DETERRENCE.

24       THERE IS SOME DIMINISHING RETURNS TO GENERAL DETERRENCE IF

25   YOU GO AS LONG AS A COUPLE OF MONTHS, THE TIME SERVED REQUEST.

```
 1            BUT REALLY THE REASON -- THE JUSTIFICATION TO IMPOSE A
 2    GUIDELINE SENTENCE AND ONE THAT DOESN'T GIVE THE DEFENDANT THE
 3    BENEFIT OF THE ADDITIONAL 12 MONTHS AND 1 DAY IS BECAUSE OF
 4    SPECIFIC DETERRENCE.
 5            MR. YORK HAS 21 CRIMINAL HISTORY POINTS.  AT 13 YOU'RE IN
 6    CATEGORY 6.  SO ROUGHLY A THIRD OR MORE OF HIS POINTS HE GETS
 7    NO ADDITIONAL PENALTY FOR.
 8            I THINK PAGES 9 THROUGH 25 OF THE PSR SUMMARIZE HIS
 9    CRIMINAL HISTORY.
10            WHEN MR. YORK IS IN PRISON OR IN JAIL, HE CAN'T COMMIT
11    OTHER CRIMES.  WHEN HE'S NOT, IT SEEMS HE'S HAVING INTERACTIONS
12    WITH LAW ENFORCEMENT OR COMMITTING CRIMES FOR WHICH HE'S
13    CONVICTED OF.
14            AND IT'S BECAUSE OF THAT, THAT HE DOESN'T DESERVE THE
15    BENEFIT THAT ADDITIONAL DAY GIVES HIM, THAT'S WHY A SENTENCE AT
16    THE LOW END IS WHERE THE GOVERNMENT HAS GONE RECOGNIZING IT'S
17    NOT THE CRIME OF THE CENTURY.
18            BUT A SENTENCE MIDRANGE OR EVEN HIGH IS REASONABLE BECAUSE
19    WHEN THE GUIDELINES CAME UP WITH RANGES, THEY UNDERSTAND THAT
20    MORE THAN ONE INDIVIDUAL CAN SCORE AT THE SAME INTERSECTION OF
21    2 POINTS.
22            MORE THAN ONE INDIVIDUAL COMES BEFORE THE COURT WITH A 6
23    AND A CRIMINAL HISTORY CATEGORY 6 AND AN OFFENSE LEVEL 6.
24            LOTS OF DIFFERENT OFFENSES CAN RESULT IN THAT YIELDED
25    SCORE, BUT THE DIFFERENCE IS THAT EACH INDIVIDUAL HAS A UNIQUE
```

1    HISTORY.  AND MR. YORK'S IS SIGNIFICANT INTERACTIONS WITH LAW

2    ENFORCEMENT AND ONES THAT RESULT IN CRIMINAL CONVICTIONS.

3        THIS IS SOMEONE WHO HAS SIGNIFICANT CONTACTS WITH LAW

4    ENFORCEMENT BUT VERY FEW CONVICTIONS.  HE HAS 21 CRIMINAL

5    HISTORY POINTS.

6        IT'S ACTUALLY DIFFICULT TO SCORE THAT MANY CRIMINAL

7    HISTORY POINTS BECAUSE IF YOU'VE HAD THAT MUCH INTERACTION WITH

8    LAW ENFORCEMENT, OFTEN THEY'RE LONG SENTENCES, AND YOU DON'T

9    RACK UP ADDITIONAL POINTS WHEN YOU'RE IN CUSTODY.

10       MR. YORK HAS MANY, MANY INTERACTIONS WITH LAW ENFORCEMENT,

11   MANY OF THOSE THAT SCORE AND MANY OF THOSE THAT HE DOESN'T GET

12   ANY PUNISHMENT FOR BECAUSE THE CRIMINAL HISTORY SCALE ONLY GOES

13   UP TO 6.

14       TO GIVE HIM 12 MONTHS AND A DAY IS TO GIVE HIM A BENEFIT,

15   IS TO GIVE HIM SOME REWARD, AND MR. YORK'S ACTIONS SUGGESTS

16   THAT HE DOESN'T DESERVE THAT ADDITIONAL AWARD, AND THE COURT'S

17   SENTENCE WOULD RECOGNIZE UNDER 3553(A) THE IMPORTANCE OF

18   SPECIFIC DETERRENCE OF PROTECTING THE COMMUNITY.

19       AND WHILE I AGREE WITH THE ABILITY OF A SENTENCE ANYWHERE

20   IN THE GUIDELINES TO GENERALLY DETER, A SIGNIFICANT SENTENCE

21   HERE, ONE THAT DOES NOT GIVE HIM THE ABILITY TO GET BELOW THE

22   YEAR THROUGH GOOD BEHAVIOR ACHIEVES THE ADDITIONAL BENEFIT OF

23   SPECIFIC DETERRENCE AND THAT REALLY IS NOT ACHIEVED BY GIVING

24   MR. YORK THE SENTENCE THAT THE DEFENSE ASKS FOR.

25           THE COURT:  THANK YOU.

1    MR. ARCHER:  YOUR HONOR, WOULD THE COURT LIKE TO

2    HEAR FROM MS. BEALE PRIOR TO ARGUMENT OR --

3         THE COURT:  YES, MS. BEALE -- IS THAT HIS MOTHER?

4         MR. ARCHER:  IT IS, PAMELA BEALE.  AND I THINK SHE

5    WOULD LIKE TO ADDRESS THE COURT AS TO THE TRANSITION THAT

6    MR. YORK HAS UNDERGONE SINCE THE OFFENSE CONDUCT.

7         THE COURT:  ALL RIGHT.  PLEASE COME FORWARD, MA'AM.

8    AND IF YOU COULD PLEASE STATE AND SPELL YOUR NAME, PLEASE.

9         MS. BEALE:  PAMELA BEALE, P-A-M-E-L-A, B-E-A-L-E.

10        THE COURT:  THANK YOU.  THANK YOU FOR BEING HERE.

11   AND WHAT IS IT THAT YOU WOULD LIKE ME TO KNOW, MA'AM?

12        MS. BEALE:  WELL, OBVIOUSLY I'VE KNOWN MY SON SINCE

13   BIRTH, AND I WILL SAY THAT HE HAD A TENDENCY IN HIS EARLY YEARS

14   TO GET INTO A LOT OF GENERALLY LIGHT WEIGHT TROUBLE, VEHICLE

15   TYPE OF THINGS.

16      BUT DURING THIS TIME, THESE LAST THREE YEARS THAT THE

17   HEAVY DUTY STUFF HAD TO DO WITH STUFF HE WAS GOING THROUGH

18   DURING A VERY, VERY DIFFICULT DIVORCE AND CUSTODY PROCEEDING

19   AND IT SORT OF CULMINATED IN THIS ONE FEDERAL GUIDELINE FOR

20   WHICH HE WAS CONVICTED.

21      HE HAS BEEN WITH ME THE BETTER PART OF THIS YEAR, AND I

22   HAVE SEEN A HUGE CHANGE IN HIM.  AND IT'S -- HE'S JUST -- HE'S

23   A VALUABLE PERSON.  HE'S A VERY TALENTED MAN.  HE'S A

24   CONTRACTOR.  HE'S CREATIVE.  HE'S TOTALLY FOLLOWED THE

25   GUIDELINES THAT HAD TO DO WITH THE CUSTODY AND THE DIVORCE.

1    HE HASN'T VIOLATED ANY OF THOSE IN ANY WAYS.  HE HAS BEEN

2    IN MY HOME WHERE HIS SON ALSO RESIDES.

3            THE COURT:  YOU HAVE CUSTODY, I BELIEVE?

4            MS. BEALE:  WELL, HE'S 18 NOW, BUT I DID HAVE

5    CUSTODY, YEAH.

6        AND HIS SON, I MEAN, HE'S BEEN A GREAT ASSET TO OUR LIFE

7    DURING THESE PAST FEW WEEKS AND MONTHS BEFORE THAT.

8        I REALLY FEEL THAT THIS HAS GONE ON AND HE'S HAD, YOU

9    KNOW, WE'VE ALL SUFFERED FOR SOME EIGHT MONTHS OVER A STUPID

10   THING THAT WAS DONE ALMOST THREE OR FOUR YEARS AGO.

11       AND MY OWN INCLINATION WOULD BE ENOUGH IS ENOUGH, LET THIS

12   MAN GO ON AND RESUME A LIFE, A PRODUCTIVE LIFE, WHICH HE HAS

13   DONE FOR MUCH OF HIS LIFE, AND A CREATIVE LIFE AND, YOU KNOW,

14   HE'S BEEN IN CUSTODY QUITE A BIT JUST WAITING FOR ALL OF THESE

15   VARIOUS TRIALS AND THINGS LIKE THAT.

16       I'M SORRY.  I'M NOT VERY WITH IT TODAY BUT --

17           THE COURT:  NO, NO.  THIS IS, THIS IS --

18           MS. BEALE:  BUT MY POINT IS THAT THERE'S NOTHING TO

19   BE GAINED FROM THE GOVERNMENT FOR HIM.  HE'S NOT GOING TO GO

20   MAKE ANOTHER PRANK PHONE CALL IF HE IS ALLOWED TO BE DONE WITH

21   CREDIT FOR TIME SERVED, YOU KNOW, JUST BE DONE WITH THIS.

22           THE COURT:  OKAY.

23           MS. BEALE:  THANK YOU.

24           THE COURT:  THANK YOU VERY MUCH FOR BEING HERE,

25   MA'AM.

1          MR. ARCHER:  YOUR HONOR, I WANT TO START OFF BY

2    SAYING THAT WE DON'T INTEND IN ANY WAY TO BE DISMISSIVE OF THE

3    UNDERLYING OFFENSE CONDUCT.  I DO THINK THAT IT IS ACCURATE

4    THAT THIS IS AT THE LOW END OF WHAT IS ENCOMPASSED BY THE

5    STATUTE.  HOWEVER, THIS WAS CERTAINLY PART OF A PATTERN OF

6    CONDUCT THAT MR. YORK WAS ENGAGED IN DURING HIS CUSTODY

7    DISPUTE.

8          HE RECOGNIZES THAT HE WAS BEHAVING POORLY.  HE -- THE

9    REASON HE TOOK IT TO TRIAL WAS BECAUSE THE INTENT SIMPLY WAS

10   NOT THERE TO IMPERSONATE A FEDERAL EMPLOYEE, BUT HE

11   ACKNOWLEDGES THAT THIS IS A PATTERN OF CONDUCT THAT HE ENGAGED

12   IN DURING THIS TIME THAT WAS HARMFUL TO BOTH ANDREA YORK AND TO

13   MR. HESSENFLOW.

14         HE HAS, SINCE THIS TIME, AND THIS IS, OF COURSE,

15   FEBRUARY 23RD OF 2012, HE DID NOT ENGAGE IN ANY FURTHER

16   HARASSMENT, HE DID NOT VIOLATE THE PROTECTIVE ORDER THAT WAS IN

17   PLACE.  HE WAS IN PRISON FOR SOME OF THAT, BUT HE DID NOT

18   ATTEMPT TO CONTACT MR. HESSENFLOW OR MS. YORK.

19         HIS MOTHER, I UNDERSTAND, HAS BEEN IN CONTACT WITH

20   MS. YORK AND HAS SEEN THE CHILDREN, AND MR. YORK HAS NOT

21   ATTEMPTED TO DO ANYTHING OUTSIDE OF THE BOUNDS OF WHAT HE IS

22   PERMITTED TO DO AND A BIG PART OF THAT IS THAT HIS INTENT IS TO

23   PUT HIS LIFE BACK ON TRACK.

24         THIS WAS A VERY NASTY PERIOD FROM ABOUT 2009 TO 2012 IN

25   HIS LIFE.  HE'S HOPEFUL THAT WITH THE PERMISSION OF

1    ANDREA YORK, AND HE'S NOT APPROACHED HER ABOUT THIS, OF COURSE,

2    BUT AT SOME POINT HE WILL BE ABLE TO WIN HER RESPECT TO THE

3    EXTENT THAT HE'LL BE PERMITTED TO HAVE A RELATIONSHIP WITH HIS

4    DAUGHTERS AND CONTRIBUTE TO THEIR LIFE IN A MEANINGFUL WAY.

5              THE COURT:  THEY ARE HIS MINOR DAUGHTERS?

6              MR. ARCHER:  THEY ARE, CORRECT.

7              THE COURT:  AND THE COURT HAS JURISDICTION, HAS

8    JURISDICTION OR THE FAMILY COURT HAS JURISDICTION OVER --

9              MR. ARCHER:  CORRECT.  HE HAD CUSTODY OF THE

10   CHILDREN FOR ABOUT TWO YEARS, AND I WON'T GET INTO THE REASONS,

11   AND THERE WERE PERSONAL REASONS ON BOTH SIDES, AND HE WAS

12   DEEMED TO BE A BETTER GUARDIAN FOR A COUPLE OF YEARS, BUT,

13   FRANKLY, HIS MELTDOWN CONTINUED TO OCCUR, AND HE LOST CUSTODY

14   OF THE CHILDREN AND EVENTUALLY ENDED UP IN PRISON.

15     I THINK THAT --

16             THE COURT:  DOES HE HAVE -- I'M SORRY TO INTERRUPT

17   YOU.  DOES HE HAVE ANY VISITATION?  WHAT ARE HIS VISITATION

18   RIGHTS?

19             MR. ARCHER:  RIGHT NOW HE HAS NO VISITATION RIGHTS,

20   AND HE HAS NOT PETITIONED FOR ANY SINCE HIS RELEASE FROM

21   PRISON.

22             THE COURT:  OKAY.

23             MR. ARCHER:  SO THE -- I UNDERSTAND THE GOVERNMENT'S

24   POINT ABOUT THE CRIMINAL HISTORY POINTS AND I THINK THAT ONE

25   THING TO NOTE IS THAT IT'S -- THE NUMBERS -- THE HIGH CRIMINAL

1    HISTORY COUNTS TEND TO BE PEOPLE WHO ARE RELATIVELY MINOR

2    INFRACTIONS, AND I DON'T WANT TO DOWNPLAY.  THERE ARE DOMESTIC

3    VIOLENCE INCIDENTS WHICH I UNDERSTAND TO BE TROUBLING.  BUT THE

4    FELONY CONDUCT AND HIS PRISON SENTENCE, IT'S THE ONLY TIME HE'S

5    BEEN SENT TO PRISON.  THEY WERE FELONIES FOR RECEIVING STOLEN

6    PROPERTY AND EVADING THAT RESULTED IN THE PROBATION VIOLATION

7    AND HIS, HIS INCARCERATION IN PRISON.

8            THE COURT:  IT'S INTERESTING BECAUSE THAT OFFENSE

9    OCCURRED WHEN HE WAS 42 YEARS YOUNG.

10           MR. ARCHER:  CORRECT.

11           THE COURT:  AND HE'S 46 NOW.

12           MR. ARCHER:  YES.

13           THE COURT:  AND THE CRIMINAL HISTORY RECORD THAT WE

14   LOOK AT, I MEAN, YOU'RE RIGHT, AND I THINK COUNSEL IS CORRECT,

15   THIS SPANS MANY YEARS AND A LOT OF CONDUCT.  SOME OF IT IS NOT

16   SCORED BECAUSE IT'S TOO OLD, OF COURSE, AND I UNDERSTAND, AND I

17   THINK I UNDERSTAND YOUR POINT OF HOW SOMEONE COLLECTS

18   CATEGORY 6, HOW IS THAT POSSIBLE BECAUSE YOU THINK SOMEBODY

19   GETS EXTENDED AMOUNTS OF TIME AND THEY WILL BE 80 YEARS YOUNG

20   WHEN THEY GET OUT OF PRISON AND IT'S JUST -- THAT'S ONE THING,

21   I'LL TELL YOU AND I'LL COMMENT IT'S NOTEWORTHY THAT THE

22   CRIMINAL HISTORY POINT TOTAL HERE WAS IMPRESSIVE IN ONE WAY.

23       I WAS IMPRESSED -- HOW DOES ANYONE ACCUMULATE THAT MANY

24   POINTS LIKE YOU SAY?

25           MR. ARCHER:  WHAT TENDS TO HAPPEN, AND I'VE SEEN

1    THIS, NOT THAT I'M AN EXPERT ON IT, BUT I'VE SEEN THIS IN CASES

2    WHERE PEOPLE ARE PLACED ON PROBATION FOR RELATIVELY MINOR

3    OFFENSES AND THEN SUFFER PROBATION VIOLATIONS WHEN, FOR

4    INSTANCE, DRIVING ON A SUSPENDED LICENSE COMPOUNDS ITSELF AND

5    THEN THEY ALL GET RESOLVED IN ONE DAY WITH INTERVENING ARREST

6    DATES AND YOU END UP WITH 8 OR 10 POINTS FOR WHAT ENDS UP BEING

7    A 120 DAY OVERALL SENTENCE, ET CETERA.

8            THE COURT:  YES, HE HAS A NUMBER OF THESE, 120 DAY,

9    140 DAY.  HE HAS 21 ALIASES THAT HE USED ACCORDING TO THE

10   PRESENTENCE REPORT.

11           MR. ARCHER:  UNDERSTOOD.  ONE THING I DO WANT TO

12   CLARIFY IN THE PRESENTENCE REPORT, THERE WAS A COMMENT, WHICH I

13   CAN UNDERSTAND IF THE COURT FOUND DISTASTEFUL, WHICH WAS THAT

14   MR. YORK IS INTERESTED IN PARTICIPATING IN THERAPY TO FIND OUT

15   WHY HE ENGAGES IN RELATIONSHIPS WITH TOXIC WOMEN, AND I THINK

16   MR. YORK WILL ADDRESS THIS BRIEFLY.

17       BUT THAT COMMENT WAS NOT DIRECTED AT MR. YORK BY ANY

18   MEANS.  THE CONTEXT OF THAT COMMENT WAS THAT HE WAS SITTING IN

19   CUSTODY HAVING BEEN FALSELY ACCUSED OF COMMITTING DOMESTIC

20   VIOLENCE AGAINST HIS THEN EX-GIRLFRIEND BUT THE INVESTIGATION

21   OF THE DEFENSE REVEALED THAT SHE HAD ACTUALLY ASSAULTED HIM AT

22   AN NA MEETING A COUPLE OF DAYS BEFOREHAND, AND SHE WAS PLACED

23   ON A PSYCHIATRIC HOLD, AND SHE CAME BACK TO THE HOUSE.  AND THE

24   INTERVIEW OF THE FAMILY WHO WITNESSED THIS INDICATED THERE WAS

25   NO DOMESTIC VIOLENCE.  THE CASE WAS, IN FACT, DISMISSED.  AND

1    THAT WAS THE OFFENSE CONDUCT THAT WAS THE RESULT OF THE MOST

2    RECENT ARREST.

3        SO I THINK THAT MR. YORK CAN SPEAK TO THAT AS WELL, BUT WE

4    DID NOT WANT THAT TO BE TAKEN IN THE CONTEXT THAT HE WAS

5    BLAMING MS. YORK FOR ANY OF THIS CONDUCT BUT THAT HE WAS

6    SITTING IN JAIL AT THE MOMENT BECAUSE OF A WOMAN THAT HE SHOULD

7    NOT HAVE HAD ANY CONTACT WITH.

8            THE COURT:  ALL RIGHT.  THANK YOU.

9            MR. ARCHER:  AND I UNDERSTAND THE COURT'S CONCERNS

10   ABOUT MR. YORK'S CRIMINAL HISTORY POINTS, BUT THE ACTUAL

11   OFFENSE CONDUCT AND WHEN I REFER TO THAT AS A PRANK CALL, I

12   DON'T MEAN THAT IT SHOULD BE COMPLETELY DISMISSED BY THE COURT.

13   IT'S NOT AN APPROPRIATE THING TO DO.  IT WAS NOT IN GOOD TASTE

14   AND ESPECIALLY IN THE CONTEXT OF A LARGER CUSTODY DISPUTE IT'S,

15   FRANKLY, AN OBNOXIOUS THING TO DO TO SOMEBODY ELSE.

16       BUT IT WAS A SINGLE VOICEMAIL LEFT.  THERE WAS NO

17   FOLLOWUP.  THERE WAS NO FRAUDULENT ATTEMPT.  THE COURT IS WELL

18   AWARE OF IT, AND IT WAS DONE WITH SORT OF A RIDICULOUS VOICE

19   CHANGER.

20           THE COURT:  YOU KNOW, I DID NOT HEAR OF A SPOOF OR

21   CARD OR WHATEVER IT WAS CALLED, I DIDN'T KNOW ABOUT THAT.  AND

22   MAYBE IT'S NOT TERRIBLY -- I LOOKED AT IT AND I THOUGHT, WELL,

23   THIS EXPRESSES A SOPHISTICATION THAT SOMEONE WOULD CONTACT A

24   PLACE LIKE THIS AND CHANGE THE VOICE AND GIVE THEM A CREDIT

25   CARD WHICH SUGGESTS THAT, YOU KNOW, I'LL DO IT AGAIN BECAUSE I

1    WANT TO OPEN AN ACCOUNT HERE SO THAT I CAN CONTINUE TO MAKE

2    THESE TYPES OF CALLS.

3         THERE'S NO SUGGESTION THAT THAT'S WHAT HE WAS GOING TO DO,

4    AND I JUST WANT TO SAY THAT.  I'M NOT SUGGESTING THAT IN ANY

5    WAY THAT HE DID THAT.  I'M JUST GUESSING THAT IT WAS AN

6    EDUCATION FOR THE COURT TO FIND OUT THAT THERE ARE THESE

7    COMPANIES AND I SUPPOSE IT EXPRESSES A CERTAIN LEVEL OF

8    SOPHISTICATION TO PURSUE THAT AS OPPOSED TO THE AGE OLD METHOD

9    OF PUTTING A TOWEL OVER THE PHONE AND CRACKING YOUR VOICE IN

10   SOME MANNER LIKE HIGH SCHOOL KIDS DID WHEN THEY CALLED NANCY TO

11   SEE IF NANCY LIKES BILL WHEN IT'S REALLY BILL CALLING.  THAT

12   SOMETIMES HAPPENED IN A JUVENILE MANNER.

13        MR. ARCHER:  I DON'T THINK THAT -- AND WITH THE

14   POSSIBLE PENDENCY OF AN APPEAL, I DON'T WANT MR. YORK TO

15   COMMENT, BUT I DON'T THINK IT WAS NECESSARILY HIS IDEA THAT THE

16   TECHNICAL MEANS THAT HE'S NOT, I'M SORRY, HE'S NOT THE MOST

17   TECHNICALLY SAVVY GUY.  I DON'T THINK THAT YOU HAVE TO -- I

18   THINK YOU HAVE TO USE YOUR CREDIT CARD TO PURCHASE.

19        THE COURT:  THAT'S RIGHT, YOU USE THE CREDIT CARD

20   AND OPEN THE ACCOUNT AND WE'RE GOING TO FOOL SOMEBODY AND

21   THEY'RE GOING TO FIND OUT WHO I AM.  IT'S A CERTAIN LEVEL OF

22   SOPHISTICATION, I SHOULD SAY, OR CONSCIOUSNESS OF GUILT OF

23   USING SOMEONE'S VOICE AS OPPOSED TO YOUR OWN.

24        MR. ARCHER:  UNDERSTOOD.  BUT I THINK THAT THIS CALL

25   JUST DOESN'T, TO ME, STRIKE AT THE HEART OF WHAT SECTION 912 IS

1    DESIGNED TO PUNISH, TO PREVENT PEOPLE FROM BEING DEFRAUDED

2    UNDER COLOR OF THE UNITED STATES AND THEN EITHER SECONDARILY OR

3    A SEPARATE GROUNDS WITH EQUAL INTEREST OF THE GOVERNMENT IS

4    THAT WE DON'T WANT TO UNDERMINE PEOPLE'S TRUST IN THE

5    REPRESENTATIONS THAT SOMEONE IS A GOVERNMENT REPRESENTATIVE SO,

6    FOR INSTANCE, FAKING A SEAL.

7         SO WHEN SOMEONE RECEIVES A LETTER FROM THE I.R.S. THAT HAS

8    AN I.R.S. SEAL ON IT, AND THEY SHOULD BE ABLE TO TRUST THAT IT

9    ACTUALLY CAME FROM THE I.R.S., AND IF NOT, THEY SHOULD BE

10   PUNISHED AS SUCH.

11        MY POINT IN THE SENTENCING MEMO WAS THAT THIS WAS

12   SOMETHING THAT WAS APPARENT ON THE FACE THAT THIS WAS NOT

13   LEGITIMATE CONTACT FROM THE I.R.S. AND WHILE IT WAS OBNOXIOUS,

14   IT IS NOT WHAT IS AT THE CORE OF WHAT 912 PUNISHES.

15        THE COURT:  I THINK WE DISCUSSED CASES THAT TALKED

16   ABOUT THE DIFFERENCE OF CONDUCT USING A SEAL AND MAKING A

17   REPRESENTATION AND --

18        MR. ARCHER:  IT ALL FALLS UNDER THE SAME OFFENSE

19   LEVEL, AND THAT'S MY POINT IS THAT IT'S NOT TO BE DISMISSIVE OF

20   THE OFFENSE CONDUCT.

21        MR. YORK IS HERE TO OFFER NOTHING BUT AN APOLOGY FOR THIS

22   COURSE OF CONDUCT OVER THAT PERIOD OF TIME BUT RELATIVE THE

23   GUIDELINE OFFENSE LEVEL 6 DOES NOT VARY WHETHER IT'S THE SEAL,

24   OR ET CETERA, TO MY KNOWLEDGE.

25        THE COURT:  ALL RIGHT.  THANK YOU.

1          SIR, DO YOU WISH TO MAKE A STATEMENT, OR IS THERE ANYTHING

2     YOU WOULD LIKE ME TO KNOW BEFORE I IMPOSE A JUDGMENT?

3               THE DEFENDANT:  I'M A LITTLE BIT NERVOUS.  I'D SAY

4     2008 TO 2012 WERE SOME OF THE WORST YEARS, WORST EMOTIONAL

5     THINGS I HAVE EVER GONE THROUGH DEALING WITH THE KIDS' CUSTODY,

6     THE DIVORCE, AND I HANDLED IT BADLY, YOU KNOW.

7          I WISH I COULD GO BACK AND CHANGE THINGS, BUT I JUST

8     CAN'T.  SO IT IS WHAT IT IS.  THANK YOU.

9               THE COURT:  THANK YOU.  ANYTHING FURTHER?

10              PROBATION OFFICER:  NO, YOUR HONOR.

11              MR. SCHENK:  NO.

12              MR. ARCHER:  NO, YOUR HONOR.

13              THE COURT:  ALL RIGHT.  THANK YOU.  I DO THINK

14     THAT -- AND THANK YOU, COUNSEL, AND I APPRECIATE YOUR COMMENTS.

15          ONE THING, MR. POLLAK, I THINK AS A CONDITION OF PROBATION

16     I ALSO THINK THAT THERE SHOULD BE, AND MAYBE IT'S IN HERE AND I

17     DIDN'T READ IT, BUT I THINK THERE SHOULD ALSO BE SOME MENTAL

18     HEALTH COUNSELLING, A COMPONENT THAT WE SHOULD ADD TO ALLOW

19     MR. YORK TO PARTICIPATE IN SOME COUNSELLING.

20              MR. ARCHER:  ABSOLUTELY NO OBJECTION, YOUR HONOR.

21              THE COURT:  MR. YORK BY HIS OWN COMMENT THIS

22     AFTERNOON TOLD US ABOUT THAT TROUBLING FOUR-YEAR PERIOD OF TIME

23     WITH CUSTODY AND HE STILL HAD SOME ISSUES OF CUSTODY WITH HIS

24     DAUGHTERS THAT I'M CERTAIN ARE GOING TO PROBABLY BE ADDRESSED.

25     IT SOUNDS LIKE HE WILL GO TO COURT TO TRY TO GET LEAVE OF COURT

1    TO ENGAGE IN SOME TYPE OF SUPERVISED VISITATION OR SOMETHING.

2         AND I THINK SOME MENTAL HEALTH COMPONENT OR COUNSELLING

3    COMPONENT WOULD BE HELPFUL TO AND FOR HIM.

4         MR. ARCHER:  WE WOULD WELCOME THAT, YOUR HONOR.

5    THANK YOU.

6         THE COURT:  OKAY.  IN THIS MATTER THE COURT WILL --

7    I HAVE HEARD THE COMMENTS, AND I THINK WE ALL LOOK AT THIS AND

8    WE THINK, OH, YEAH, I DIDN'T MEAN TO MAKE LIGHT OF IT WHEN I

9    SAY, YOU KNOW, IT'S BILL CALLING NANCY TO SEE -- PRETENDING TO

10   BE SOMEBODY ELSE TO SEE IF NANCY REALLY LIKES BILL.  THOSE

11   KINDS OF CALLS ARE JUVENILE AND THAT TYPE OF THING.

12        THIS WAS MORE SERIOUS, OF COURSE.  IT CAUSED AND IMPACTED

13   INDIVIDUALS IN A MORE SERIOUS WAY THAN THAT TYPE OF CALL AND I

14   THINK THAT YOUR CLIENT, MR. YORK, UNDERSTANDS THAT NOW.

15        I'M SURE HE WAS QUITE SURPRISED WHEN HE WAS CONTACTED BY

16   THE FEDERAL GOVERNMENT TO ENGAGE IN A PROSECUTION AGAINST HIM

17   AND HE WAS GOING TO GO TO THE FEDERAL COURT AND BE PROSECUTED

18   IN THAT MANNER.

19        BUT IT IS A SERIOUS THING WHEN ONE REPRESENTS A GOVERNMENT

20   OFFICIAL IN SOME CAPACITY.  THE JURY FOUND THAT.  THE JURY

21   HEARD THE EVIDENCE.  THEY HEARD FROM THE VICTIM.  HE KEPT

22   RECORDS AND SHARED THOSE, SOME OF THOSE WITH THE JURY, AND THE

23   JURY FOUND IT SUFFICIENT TO MAKE THE FINDING THAT THEY DID.

24        SO I DON'T WANT MR. YORK TO LEAVE HERE THINKING, OH, YEAH,

25   IT WAS JUST A CRANK CALL AND, GEE, WHAT IS THIS ALL ABOUT?  I

1        KNOW HIS MOTHER DIDN'T SUGGEST THAT IN HER COMMENTS ALSO.

2              YOU KNOW, A MOTHER'S WORK IS NEVER DONE, AS THEY SAY.

3              AND, MR. YORK, YOUR MOTHER HAS STOOD BY YOU FOR ALL OF

4        THESE YEARS AND SHE'S GOING TO STAND BY YOU, AND I THINK IN

5        YOUR TENDER YEARS OF 46, AND IT'S PROBABLY TIME, AND IF YOU'LL

6        PARDON MY PRESUMPTION, I THINK IT'S TIME THAT YOU DID GROW UP A

7        LITTLE BIT --

8              THE DEFENDANT:  I AGREE.

9              THE COURT:  -- AND GET SOME EMOTIONAL STRENGTH,

10       STRENGTH THAT YOUR SON, WHO IS PRESENT HERE TODAY, I THINK,

11       WILL GAIN FOR HIMSELF AND FROM YOUR CONDUCT.

12           I KNOW YOU WANT YOUR SON -- AND I UNDERSTAND HE'S IN

13       COLLEGE AND HE'S ALSO WORKING.

14              THE DEFENDANT:  UH-HUH.

15              THE COURT:  I KNOW YOU WILL CONTINUE TO BE PROUD OF

16       HIM AS YOUR MOTHER IS PROUD OF YOU.

17              AND YOU ARE, FROM EVERYTHING I READ IN THE PROBATION

18       REPORT SUGGESTS THAT YOU'RE A SMART INDIVIDUAL.  YOU HAVE

19       CREATIVE IDEAS.  YOU'VE DONE BUSINESSES AND YOU KNOW HOW TO RUN

20       A SMALL BUSINESS AND MAYBE YOU'LL DO THAT AGAIN, BUT I'M GOING

21       TO TELL YOU THIS, AND I MEAN NO DISRESPECT TO YOU, BUT I'M

22       CERTAIN PART OF THE STRESS AND PERHAPS DISAPPOINTMENT IN

23       YOURSELF THAT YOU FEEL IS THAT HERE YOU ARE STANDING IN FEDERAL

24       COURT IN FRONT OF A FEDERAL JUDGE WITH A LAWYER AT YOUR RIGHT

25       SIDE AND YOUR SON IS WITNESSING YOU BEING SENTENCED.

1    AND I'M SURE YOU HAVE -- AND I'M SURE YOU'RE NOT PROUD OF

2    THAT, AND I HOPE THIS PROVIDES YOU SOME TALKING POINTS GOING

3    FORWARD WITH YOUR SON.

4        I THINK, AND MY SENSE IS THAT WHEN I READ NOT TOO FAR

5    BETWEEN THE LINES HERE IS THAT THERE ARE REDEEMING, MANY

6    REDEEMING FACTORS IN YOUR PERSONAL LIFE THAT YOUR SON WILL AND

7    SHOULD BE PROUD OF.

8        AND I THINK IT'S YOUR TASK ON GOING TO SHOW HIM --

9            THE DEFENDANT:  AGREED.

10           THE COURT:  -- TO SHOW HIM WHAT YOU CAN DO IN A

11   POSITIVE WAY.  NOT A FLIP WAY.

12           THE DEFENDANT:  RIGHT.

13           THE COURT:  BUT A MEANINGFUL, SINCERE, SINCERE WAY,

14   SERIOUS WAY.

15       AND I HOPE YOU TAKE SOME OPPORTUNITY DURING THIS PERIOD OF

16   SUPERVISED RELEASE WITH PROBATION THAT I'M GOING TO IMPOSE TO

17   DO JUST THAT.

18       I AM GOING TO IMPOSE A PRISON SENTENCE OF 12 MONTHS AND

19   1 DAY, AND I DO THINK THAT'S THE APPROPRIATE SENTENCE IN THIS

20   MATTER.  AND I THINK THAT THE REHABILITATIVE NATURE SOMETIMES

21   WITH THE SENTENCING PROCESS IS THE SENTENCING HEARING ITSELF

22   AND BY THAT I POINT OUT THE FACT THAT MR. YORK'S FAMILY IS

23   HERE.  HIS MOTHER IS HERE, AND HIS SON IS HERE.

24       THAT IS SIGNIFICANT TO SEE A SON AND A PARENT WITNESS THE

25   SENTENCING BY A PARENT, AND I THINK THAT'S SIGNIFICANT AND THAT

1        IN AND OF ITSELF HAS SOME REHABILITATING ASPECT TO IT.

2            AND I HOPE, I HOPE YOU TAKE THAT SINCERELY.  YOU SHOULD

3        KNOW THAT THE COURT COULD OR THE COURT COULD IMPOSE WHAT IT

4        WANTS IN THE MATTER.

5                MR. ARCHER:  YEAH.

6                THE COURT:  AND I DON'T TAKE IT LIGHTLY.  I AGREE

7        WITH THE JURY'S VERDICT.  I THINK THEY HEARD THE CASE, AND I

8        THINK YOU GOT A FAIR TRIAL, AND THEY RENDERED, THE COMMUNITY

9        RENDERED THE VERDICT THAT THE COMMUNITY FELT WAS APPROPRIATE IN

10       THIS CASE.

11           I DO FIND THAT A YEAR AND A DAY, 12 MONTHS AND 1 DAY, IS

12       THE APPROPRIATE SENTENCE.

13           I'LL ADOPT THE RECOMMENDATIONS, MR. POLLAK, INCLUDING THE

14       RECOMMENDATION OF MENTAL HEALTH COUNSELLING UNDER THE

15       SUPERVISION OF PROBATION, AND THE PROBATION OFFICER CAN

16       DETERMINE THE NATURE AND THE SCOPE AND LENGTH OF THAT.

17           BUT I DO, MR. YORK, WANT YOU TO, AS A CONDITION OF

18       PROBATION, TO ALSO ENGAGE IN SOME COUNSELLING AS WELL.

19           I'LL ALSO ORDER A SPECIAL ASSESSMENT OF $100 IN THIS

20       MATTER.

21           AS TO THE SURRENDER DATE --

22               MR. ARCHER:  YES, YOUR HONOR.  I THINK HE'LL BE

23       DESIGNATED WITHIN A MONTH'S TIME SO THE SUGGESTION WAS GOING TO

24       BE IF HE COULD SURRENDER BY WEDNESDAY, FEBRUARY THE 3RD?

25               THE COURT:  IS THAT ENOUGH TIME?

1          MR. ARCHER:  I UNDERSTAND IN TALKING WITH

2     MR. CARRANZA, OFFICER CARRANZA, THEY HAVE BEEN -- AND I'VE

3     SPOKEN WITH THE GOVERNMENT AND IF HE'S NOT DESIGNATED BY THAT

4     TIME, I WOULD ASK THAT PERHAPS IF THE COURT WOULD CONSIDER A

5     STIPULATED REQUEST TO POSTPONE THAT BY MAYBE 15 OR 20 DAYS.

6          MR. YORK ON THE ONE HAND DOES NOT WANT TO HAVE TO SIT IN

7     THE COUNTY JAIL PRIOR TO GOING TO A FACILITY.  ON THE OTHER

8     HAND, HE'S ON FAIRLY RESTRICTIVE TERMS OF RELEASE RIGHT NOW.

9          THE COURT:  OKAY.

10          MR. ARCHER:  SO IF WE COULD START WITH A MONTH AND

11     MAYBE BEG THE COURT FOR AN EXTENSION.

12          THE COURT:  OKAY.  SO FEBRUARY 3RD, FEBRUARY 3RD BY

13     2:00 P.M.

14          SO A ONE-YEAR TERM OF SUPERVISED RELEASE WITH THE

15     CONDITIONS INDICATED.  THERE'S NO FINE.  THE COURT FINDS THAT

16     MR. YORK DOES NOT HAVE THE FINANCIAL ABILITY TO PAY A FINE.  A

17     $100 SPECIAL ASSESSMENT.

18          SIR, YOU HAVE THE RIGHT TO FILE AN APPEAL IN THIS MATTER.

19     ANY APPEAL MUST BE FILED WITHIN 14 DAYS OF TODAY'S DATE.

20          DO YOU UNDERSTAND THAT, SIR?

21          THE DEFENDANT:  YEAH.

22          THE COURT:  OKAY.  ANYTHING FURTHER?

23          THE DEFENDANT:  I DO.

24          MR. ARCHER:  NO, YOUR HONOR.  THANK YOU.

25          MR. SCHENK:  THANK YOU.

1            PROBATION OFFICER:  THANK YOU.

2            THE COURT:  OKAY.

3      (COURT CONCLUDED AT 4:00 P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074
17

18
           DATED:  FEBRUARY 12, 2016
19

20

21

22

23

24

25